UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| ) | No. 1:21cv02232 |
| v. ) | |
| ) | Hon. Judge Tharp |
| U.S. IMMIGRATION AND CUSTOMS ) | |
| ENFORCEMENT et al. ) | |
| ) | |
| Defendants ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

  Plaintiff Stevens hereby responds to Defendants' Motion for Summary Judgment to address Defendants' deficient searches and unreasonable, overly broad, and impermissible withholding of responsive documents. Attached to this response are a memorandum of law, a response to Defendant's statement of undisputed material facts and Plaintiff's additional statement of facts, the declaration of Plaintiff Stevens, and exhibits annexed thereto. Plaintiff respectfully requests that the Court deny Defendants' motion for summary judgment and order them to conduct an adequate search and to produce all responsive documents.

              Respectfully Submitted by
              _____/s/ *Nicolette Glazer*_____
              Nicolette Glazer Esq. CSB209713
              Law Offices of Larry R Glazer
              1999 Avenue of the Stars #1100
              Century City, CA 90067
              T:310-407-5353
              F:310-407-5354
              nicolette@glazerandglazer.com

## MEMORANDUM OF POINTS AND AUTHORITIES

The Freedom of Information Act (FOIA) mandates that government agencies make requested records available to any person unless one of nine narrow exemptions applies. 5 U.S.C. §552(a)(3)(A). The Act places the burden on the agency to demonstrate that it has conducted a good faith and reasonable search for the 'agency records' requested and to justify any withholding or redaction in the production. *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 220 (D.C. Cir. 2013). While government agencies are permitted to withhold from disclosure certain information that falls within one of the FOIA's nine exemptions, these exemptions are to be narrowly construed to promote the statute's broad disclosure policy. *In re Wade*, 969 F.2d 241, 246 (7th Cir. 1992). Furthermore, federal courts may review agency action to determine whether the agency properly withheld the information, 5 U.S.C. §552(a)(4)(B), not blindly afford deference to the agency reasoning, *City of Chicago v. A.T.F.*, 423 F.3d 777 (7th Cir. 2005). To justify summary judgment, Defendants have the burden to make two showings: (1) that each search was adequate and (2) that any withheld document falls within an exemption to FOIA. Defendants have failed to carry their burden on either issue; summary judgment should be denied.

I. **Defendants' Searches are Inadequate as a Matter of Law and Fact.**

An agency bears the burden to "show beyond material doubt that it has conducted a search reasonably calculated to uncover **all** relevant documents." *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012) (citation omitted, and emphasis added). In a Rule 56 adjudication in the FOIA context, at all times the burden is on the agency –not on the requester-- to establish the adequacy of the search. *Patterson v. IRS*, 56 F.3d 832, 840 (7th Cir. 1995). To determine whether the search in response to a FOIA request was done in good faith and the agency had used methods reasonably calculated to produce *all* responsive documents, this Court must consider: (1) the search terms and the type of search performed; (2) the nature of the system(s) or database(s) searched; and (3) whether the search was "logically organized". *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (It is an agency's

2

"burden to show that its search efforts were reasonable and logically organized to uncover relevant documents.")

### A. Search Locations

To satisfy its FOIA obligations, an agency need not search every place-responsive records might exist; rather, an agency needs to craft and focus its search to those places that are reasonably likely to yield *all* relevant records. *Oglesby v. U.S. Dep't of Army* , 920 F.2d 57, 68 (D.C. Cir. 1990). Here each Defendant agency has failed to describe their respective databases and search methods in reasonable detail to allow the Court to perform a *de novo* review.

When an agency relies on sworn declarations to establish the adequacy of its search, those declarations "must be 'relatively detailed and non-conclusory.'" *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 240-41 (D. Conn. 2012) (quoting *SafeCard*, 926 F.2d at 1200). The agency's declarations "must detail files searched and the general scheme of the agency file system," *id*. at 245, and they must "describe in reasonable detail the scope of the search and the search terms or methods employed," *id*. at 241. The declarations in this case are insufficient to support summary judgment because each fails to describe the respective agency's general file system and fails to provide remotely reasonable detail about the scope and methods of their searches. (Response to Defendants' Statement of Facts ['RDSOF'] at Facts 5, 10, 13, 18, 22, 32, 37, 43, 80, 86, 88). Defendants' failure to describe each of their recordkeeping scheme and the specific databases in which information is stored makes it impossible to determine whether each Defendant has searched the specific databases within each component likely to contain all responsive records. For example, ICE searched the records of ERO but did not search or task the Office of the Principal Legal Advisor (OPLA)[1] to search its own database(s) even though Plaintiff had specifically requested that search me performed and records housed in PLAnet produced. (RDSOF at Facts 9, 12, 17). *Second*, ICE while searching solely in EARM in response to the

---

[1]According to its website"[b]y statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings before the Executive Office for Immigration Review, litigating all removal cases including those against criminal aliens, terrorists, and human rights abusers." See https://www.ice.gov/about-ice/opla [last visited 8-1-22].

Valdez-Soto request, RDSOF at Fact 10, elected to search EARM, ENFORCE and CIS in the Afinson and Valencia requests, RDSOF at 13&18. *Third*, for the Valencia request ICE searched EAGLE and Outlook but did not do so for the other two requests; no explanation was provided. (RDSOF at Fact 7, 18; Plaintiff's Additional Facts (PAF) at 3). *Fourth*, no explanation was provided as to why ICE elected not to search ENFORCE in response to the Valencia request. *Id*. *Fifth*, Defendants conducted unduly restrictive searches. (RDSOF at Fact 5, 10, 13, 18, 32, 38, 71, 88; PAF at 4, 5, 6, 11-14).

Passing references to 'personal files', 'shared drives, and 'email files', RDSOF at Fact 5, 6 & 7, do not fulfill Defendants' obligation *to explain* what databases each maintains, how it selected the ones that were searched in response to Plaintiff's requests, and what type of documents the searched databases contain. Several out-of-circuit district courts have rejected as insufficiently detailed agency declarations that tracked the declarations presented regarding the searched databases. In *Vietnam Veterans*, the Court determined that a FOIA officer's declaration was inadequate because she "state[d] that computer hard drives, shared drives, and email accounts were searched," but did not explain "whether there are other electronic files which were not searched, and if there are, why they were not searched." *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def*., 193 F. Supp. 3d 95, 109 (D. Conn. 2016) (agency declaration was inadequate where declarant stated that he "searched electronic databases with Share Drives on the Non-secure Internet Protocol Router Network (NIPRNET) allocated to" his office but failed to "explain how his office's files are organized into the NIPRNET, identify the names or number of databases he searched, or describe the types of files kept in or fields used by the databases he searched."). The *El Badrawi* court explained that a FOIA declarant must "attempt to describe the general scheme of [an agency's] file system" and provide "for example, a list of databases to which [the agency] has access and a delineation of what types of records each database contains." *El Badrawi v. DHS*, 583 F. Supp. 2d 285, 300 (D. Conn. 2008) ("The lack of such disclosure stymies El Badrawi's ability to advocate his position and does not meet the 'relatively detailed and nonconclusory' standard adopted by the Second Circuit."). This Court

4

should adopt this approach to promote and accomplish the Act's remedial nature and the Congressional mandate of broad disclosures. Here, Defendants' failure to describe their respective recordkeeping schemes makes it impossible to determine whether each Defendant searched all databases likely to contain responsive records. *Campbell*, 164 F.3d at 28 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)) ("[A]n agency 'cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'").

Defendants may argue in reply that agency action is presumed valid and may attempt to provide additional declarations to overcome the deficiencies identified by Plaintiff. Allowing such factual supplementation and presentation of new facts by the party with the Rule 56 burden in reply is impermissible[2]. "Reply affidavits are appropriate only when necessary to address factual claims of the responding party that were not reasonably anticipated." *Buffets, Inc. v. Leischow*, 732 F.3d 889, 895 (8th Cir. 2013); *Sims v. Mulcahy,* 902 F.2d 524, 536 n. 5 (7th Cir. 1990) (a party may not present new facts for the first time in reply.)

B. **Search Process**

Defendants have also failed to meet their burden regarding the propriety of the search process they used: "To prevail on summary judgment in this type of FOIA claim, the agency must show that there is no genuine issue of material fact about the adequacy of its records search. " *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 387 (7th Cir. 2015). *First,* for several of the FOIA requests the agency alleges that no records were found, DSOF ¶¶14, 24, 33-34, 38. Yet Defendants have provided no information how each reached the decision as the declarations do not identify the search terms used. *Morley v. CIA,* 508 F.3d 1108, 1122 (D.C.Cir.2007) (a FOIA affidavit is insufficient to allow courts to determine the adequacy of a search if it "merely identifies the three directorates that were responsible for finding responsive documents without identifying the terms searched or explaining how the search was conducted"

---

[2] Former Fed.R.Civ.P. 56(e) explicitly allowed courts to "permit affidavits to be supplemented" by "further affidavits"; the language was repealed.

(internal quotation marks and alterations omitted); *Debrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015) (same). *Second*, except for the USDA affidavit, Defendants have either not identified the search terms, the process of using them, nor offer any way for the Court and Plaintiff to ascertain how the personal identifiers were used to search. (RDSOF at Fact 10, 13, 18, 23, 33, 38, 88, 90, 91, but compare Fact 43, 82-84, 92). The issue is whether at the time the searches are conducted the search methodology was proper. *Morley v. CIA,* 508 F.3d at 1122 (explaining a declaration is insufficient to allow us to determine the adequacy of a search if it "merely identifies the three directorates that were responsible for finding responsive documents without identifying the terms searched or explaining how the search was conducted" (internal quotation marks and alterations omitted)); *Debrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015)(same). *Third*, *post hoc* rationalizations are not properly credited even in deferential APA review. *LLPs v. U.S. Army Corps of Engineers*, CIVIL ACTION 06-0587-WS-C, at *40 n.44 (S.D. Ala. Aug. 29, 2008). They have no place in a FOIA adjudication. *Fourth*, although an agency possesses discretion in fashioning the search criteria, this discretion is not unfettered. "It is clear beyond cavil that 'an agency has a duty to construe a FOIA request liberally,' and that it must 'select the interpretation that would likely yield the greatest number of responsive documents.'" *Rodriguez*, 236 F. Supp. 3d at 36; *Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 102 (D.D.C. 2013)). Consistent with this longstanding obligation, "an agency is not permitted to deny requesters information by narrowing the scope of its search to exclude relevant information." *Nat'l Sec. Counselors v. CIA*, 849 F. Supp. 2d 6, 12 (D.D.C. 2012). Defendants have ignored these obligations altogether: they failed to complete good faith searches and by providing deficient declarations are now attempting the prevent this Court from performing a judicial review of their actions. (RDSOF at Fact 10, 13, 18, 23, 33, 38, 88, 90, 91).

II.     **FOIA alleged exhaustion requirements are not jurisdictional.**

Defendants CBP and USCIS argue that because Plaintiff has not appealed some of the purported FOIA "determinations" summary judgment is warranted. Motion at 5 (CBP), 7 (USCIS). *First*, the Act permits, but does not require, a person who has made a FOIA request to file an appeal of adverse "determinations" prior to filing suit. 5 U.S.C. § 552(a)(6)(A). The Act, however, specifically requires that an individual making a FOIA request shall be deemed to have constructively exhausted his administrative remedies if the agency fails to respond within the statutory time limitations. 5 U.S.C. § 552(a)(6)(C)(i). To the extent that Defendants appear to argue that exhaustion under the Act is jurisdictional, such argument is inconsistent with *Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145 (2013) and its progeny. Jurisdictional requirements address a "court's adjudicatory authority." *Kontrick v. Ryan*, 540 U. S. 443, 455 (2004). The Supreme Court has repeatedly emphasized that a procedural requirement is jurisdictional only if Congress "clearly states" that it is. *Arbaugh v. Y & H Corp.*, 546 U. S. 500, 515 (2006). Congress need not "incant magic words," *Auburn*, 568 U. S., at 153, but the "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences," *United States v. Kwai Fun Wong*, 575 U. S. 402, 410 (2015). Nothing in FOIA limits the court's authority to hear a case in which administrative appeal has not been exhausted. The Supreme Court has repeatedly admonished that jurisdictional dismissals be limited to statutes that speak in jurisdictional terms. *See, e.g., Boechler, P.C. v. CIR*, No. 20–1472, ––– U.S. ––––, 142 S.Ct. 1493, ––– L.Ed. 2d ––– (U.S. Apr. 21, 2022) (collecting authority).

*Second*, because most exhaustion requirements do not affect a court's subject-matter jurisdiction, *I.A.M. Nat'l Pension Fund Benefit Plan C. v. Stockton TRI Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984) ), the "usual practice ... is to regard exhaustion as an affirmative defense." *Jones v. Bock*, 549 U.S. 199, 212 (2007). To the extent that exhaustion under FOIA is an affirmative defense, Defendants failed to plead such affirmative defense in their answer. (Dkt. 9). Without leave to file an amended answer, Defendants CBP and USCIS cannot resort to an unpleaded affirmative defense. *See, e.g., Venters v. City of Delphi,* 123 F.3d 956, 967-68 (7th

7

Cir. 1997); *Atlantic Casualty Insurance Co. v. Adam Harris, Inc.*, No. 08-cv-647-DRH, at *13-14 (S.D. Ill. Feb. 18, 2010).

*Third*, non-jurisdictional or jurisprudential exhaustion "is a judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court." *Avocados Plus*, 370 F.3d 1243, 1247 (D.C. Cir. 2004); *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975) (stating that an exhaustion requirement not bearing on a court's subject-matter jurisdiction is "simply a codification of the judicially developed doctrine of exhaustion"). The doctrine prevents "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Salfi*, 422 U.S. at 765. As such, exhaustion as a jurisprudential defect is subject to waiver, forfeiture, and excuse. Here, Defendants have waived or forfeited the affirmative defense by not pleading it in their answer and thus have not placed Plaintiff on notice: this has severely prejudiced Plaintiff. In the alternative, a district court may exercise its discretion and excuse a party's failure to exhaust a non-jurisdictional requirement "if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992); *see also McKart v. United States*, 395 U.S. 185, 193 1969) (stating exhaustion is "subject to numerous exceptions" (footnote omitted)). In light, of the severe and pervasive delays and arbitrary and capricious processing of FOIA requests that have burdened Plaintiff (Stevens Decl. ¶¶ 16, 17, 26, 33, 38, 39, 43, 51, 55, 63-67), the pattern of deficient FOIA searches, and the harm to Plaintiff's interest in timely access to government records, the Court should exercise favorable discretion.

*Fourth*, factual disputes exist as to whether for some of the FOIA requests Defendant made a "determination" or even "released" the record to trigger the administrative exhaustion requirement. (RDSOF at Fact 45, 56; PAF at 7-10, 15-17).

### III. Defendants have not Discharged their Burden to Justify Withholding Responsive Records and Redacting the Produced Records under FOIA exemptions.

An agency may only withhold records responsive to a FOIA request if the withheld information is exempt under FOIA. 5 U.S.C. § 552(b). To justifiably withhold responsive records, an agency must provide "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812. While a *Vaughn* index is a common device used by agencies to meet this burden of proof, *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), a court may also award summary judgment on the basis of information provided in affidavits. Such affidavits must, however, "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [may not be] controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981)

#### 1. Exemption 3 was improperly invoked.

USCIS's *Vaughn* index states that "upon closer examination" the agency has now withdrawn its b(3) exemption to records pdf #244, 260, 268, 278, 283, and 296. (Dkt 31 at PAGE ID288). Yet, the records have not been reprocessed and released to Plaintiff. Plaintiff does not challenge the withholding of Pdf # 241 described as a Fax Cover Sheet, Afinson Vaughn Index at page 5, Dkt 31 at PAGE ID 280.

#### 2. Exemption 4 was improperly invoked.

ICE has asserted that discount terms, contract totals, contract grand total, unit prices, annual licenses amounts and total amount of a contract award –all pertaining to an old prime labor contract -- have been properly withheld because the information is protected from disclosure by FOIA Exemption 4, which "shields from mandatory disclosure [trade secrets and] commercial or financial information obtained from a person and [that is] privileged and confidential.'" *Argus Leader*, 139 S. Ct. at 2362 (quoting 5 U.S.C. § 552(b)(4) ). Exemption 4 involves a tripartite test: (1) the information for which exemption is sought must be a trade secret or commercial or financial in character; (2) it must be obtained from a person; and (3) it must be privileged or confidential." *Id.* No assertion of trade secrets has been made, thus at issue is whether the

9

information in the records is (a) obtained from a person and (b) is confidential or privileged. It is not. *First*, the records pertain to finalized contract terms, not records or information obtained from a person. Information generated by the federal government itself is not "obtained from a person" and is therefore excluded from Exemption 4's coverage. *Board of Trade v. Commodity Futures Trading Commission*, 627 F.2d 392, 404 (D.C. Cir. 1980) (concluding that scope of Exemption 4 is "restrict[ed]" to information that has "not been generated within the Government"); *Allnet Communication Servs. v. FCC*, 800 F. Supp. 984, 988 (D.D.C. 1992) (declaring that "person" under Exemption 4 "refers to a wide range of entities including corporations, associations and public or private organizations other than agencies"), aff'd, No. 92-5351 (D.C. Cir. May 27, 1994). Here, the *Vaughn* index does not provide enough information for the Court to ascertain whether (b)(4) has been properly applied and should review the record *in camera*. *Second*, old prime labor contracts are neither confidential nor privileged; they pertain to the historical working of the government and should be subject to disclosure.

   3. **Exemption 5 was improperly invoked.**

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Not all agency records, however, are memorandums or letters. Consideration of the scope of Exemption 5 starts with its text. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019). In contrast to Exemption 5, other FOIA exemptions do apply more broadly to "records or information," 5 U.S.C. §552(b)(7), or to "information and data," id. §552(b)(9). If Congress intended any agency record or information to be eligible for potential withholding under Exemption 5, it clearly knew how to so specify. *Rojas v. Fed. Aviation Admin.*, 927 F.3d 1046, 1055 (9th Cir. 2019) ("[I]f Congress intended Exemption 5 to extend to all 'agency records,' it would have used that term, 5 U.S.C. §552(f)(1), (2), rather than the narrower 'inter-agency or intra-agency memorandums or letters,' §552(b)(5)."). In addition, the Supreme Court has interpreted this provision to "exempt those documents, and only those documents that are normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

The deliberative process privilege protects records that are **both** predecisional and deliberative. *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 7 (D.C. Cir. 2014). A document is predecisional if it is "generated before the adoption of an agency policy." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). Here, none of the documents were pre-decisional as they do not pertain to the formation or adoption of an official agency policy. (PAGE ID 375-76; PSAF 7, 19) Rather, the EOIR bond notes appear to reflect the decision reached by IJs and the conditions imposed and routine communications regarding regular agency activities. "[I]t is clear bond hearings are separate and apart from deportation hearings. The considerations taken into account in a bond hearing do not form part of the record in the deportation proceeding." *Gornicka v. I. N. S*, 681 F.2d 501, 505 (7th Cir. 1982)

A document is deliberative if "it reflects the give-and-take of the consultative process. The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" on policy matters. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980). Here, the challenged documents appear to be ordinary intra-agency correspondence divorced from any deliberative process tending to the agency's policy-making or adjudicative functions. To the extent that any document withheld is a communication *after* an announcement of a final decision on any of the underlying issue, those records would not be considered pre-decisional. *Nat'l Council of La Raza*, 411 F.3d at 356-57 (2d Cir. 2005).

The question for attorney-client privilege assertions "is always whether the 'primary' or 'predominant purpose' of the communication is to render or solicit legal advice." *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 181 (N.D. Ill. 2018). Here Defendants' invocation of the attorney-client is misplaced because: (1) rendering/receiving legal advice is not the primary purpose of the withheld communications; and (2) those communications were not kept confidential. (Dkt 31 at PAGE ID 312, RDSOF 58) It is well settled that documents are not automatically privileged just because an attorney is a recipient or author, here the ICE *Vaughn* index descriptions are too vague to meet the government's burden. OPLA not ICE is

tasked to formulate removal litigation strategy and make the determination whether a prima facie case of US citizenship is present. It is obvious that what ICE had withheld under exemption 5 are factual narratives and "messaging communications." *New York v. U.S. Dep't of Commerce*, No. 18-CV-2921 (JMF), 2018 WL 4853891, at *2 (S.D.N.Y. Oct. 5, 2018) (ordering disclosure of draft responses to Congress and the *Washington Post*); *Am. Civil Liberties Union of Mass., Inc. v. U.S. Immigration & Customs Enf't*, No. CV 19-10690-LTS, 2020 WL 1429882, at *6–7 (D. Mass. Mar. 24, 2020) (ordering disclosure of draft talking points, email communications, and a draft agenda).

4. **Exemption 6 was improperly invoked.**

Exemption 6 generally protects personal information contained within government records pertaining to individuals whose private information is not a public concern. The threshold requirement for nondisclosure under Exemption 6 is that the withheld information must be contained in "personnel and medical files and similar files." 5 U.S.C. §552(b)(6). Courts have refined the types of information that are considered "similar files," excluding from its scope records that are predominantly related to the business of government. *Aguirre v. SEC*, 551 F. Supp. 2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees."). Here, The EOIR *Vaughn* index asserts in conclusory fashion that b(6) was invoked for "personal privacy" but does not describe the nature of the PII involved, rather it asserts that PPI "may" be have been inputted. (PAGE ID 375-76). Plaintiff also challenges ICE and other Defendants' withholding of email's domains and names of individuals to whom emails are sent directly or when copied and the names of government employees. (RDSOF 28). Neither the domain identifier of an employee's email address nor the names of ICE employees or contractors are deserving of protection under Exemption 6. *Hopkins v. Department of the Navy*, Civil No. 84-1868, slip op. at 4 (D.D.C. Feb. 5, 1985) (release of names and official duty addresses of Marines stationed at Quantico, Virginia would not constitute invasions of personal privacy because it "would disclose nothing about any of the individuals listed other than the fact that they are members of the armed services, which is itself a matter of public record"); *National Western Life Insurance Co. v. United States*, 512 F. Supp. 454, 461 (N.D. Tex. 1980) ("It cannot be

seriously contended that postal employees have an expectation of privacy with respect to their names and duty stations."); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (finding that employee names and work telephone numbers are dissimilar to personnel or medical files, but also note that the information is publicly available through the Office of Personnel Management, thus abrogating any invasion of privacy). Furthermore, information about federal employees not employed in law enforcement, including their names, present and past titles, grades, salaries, and job descriptions, is considered public information by regulation. *See* 5 C.F.R. §293.311 (providing that the name, title, and position of a federal employee is public record); *see also J v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763-65 (1989). A fortiori exemption 6 cannot be used to redact the titles of employees and contractors. Where, as here, there is no valid expectation of privacy in the information, there will be no privacy interests at stake for the purposes of Exemption 6.

Moreover, here Plaintiff is not seeking the information for the 'sake' of just having it. *See Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 158 (2004). Rather, Stevens is seeking the information to determine and analyze the extent to which US citizens are routinely detained and deported. (Stevens Decl.) Under the "significance" test, courts have allowed the disclosure of details regarding government misconduct by high-ranking officials. *Dobrowski v. FCC*, 17 F.3d 275, 280 n.4 (9th Cir. 1994) (noting that "lower level officials . . . generally have a stronger interest in personal privacy than do senior officials"); *Trentadue*, 501 F.3d at 1234 ("The public interest in learning of a government employee's misconduct increases as one moves up an agency's hierarchical ladder."); *Perlman v. DOJ*, 312 F.3d 100, 107 (2d Cir. 2002) (finding that investigation of INS General Counsel for preferential treatment was of significant public interest due to his high status in the agency); *Am. Immigration Lawyers Ass'n v. EOIR*, 830 F.3d 667, 674-76 (D.C. Cir. 2016)(rejected a blanket redaction of the names of immigration judges who have had complaints filed against them). In sum, the names and email domains redacted here are not akin to personnel or medical files. The emails at issue are mostly "mundane interoffice communications

that do not contain any detailed personal information." *Families for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 287, 301 (S.D.N.Y. 2011).

### 5. Exemption 7 was improperly invoked.

Under Exemption 7 agencies are permitted to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" would create certain statutorily enumerated harms. 5 U.S.C. § 552(b)(7). To properly invoke this exemption, an agency should satisfy a two-part test announced by the D.C. Circuit to show that the records are law enforcement records: first, the agency must identify the person or incident that is the focus of the investigation and specify the "connection between that individual or incident and a possible security risk or violation of federal law[,]" and second, the agency must show that its "investigatory activities are realistically based on a legitimate concern that federal laws have been or may be violated or that national security may be breached." *Shapiro v. DOJ*, 37 F. Supp. 3d 7, 28 (D.D.C. 2014) (quoting *King v. DOJ*, 830 F.2d 210, 229–30 (D.C. Cir. 1987)) (internal quotation marks omitted); *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982. "This inquiry, while necessarily deferential, is not vacuous." *Shapiro,* 37 F. Supp. 3d at 28 (quoting King, 830 F.2d at 229–30). Defendants have failed to do so here. The requests pertain to individuals who claim derivative U.S. citizenship. Specifically, FOIA Exemption 7(E) authorizes agencies to withhold "records or information compiled for law enforcement purposes [that] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Satisfying the exemption is a 'relatively low bar' but it is not automatic." *Bigwood v. Dep't of Defense*, 132 F. Supp. 3d 124, 152 (D.D.C. 2015). An agency need only "demonstrate logically how the release of the requested information [may] create" a risk of circumvention. Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011)). And "where an agency specializes in law enforcement, its decision to invoke Exemption 7 is entitled to deference." *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 14 (D.D.C. 2009). It is undisputed that ICE is a law enforcement agency; State Department is not.

ICE here applied Exemption 7(E) in a categorical fashion based on the type of information it was redacting without connecting it a specific incident or that it relates to techniques still in use by ICE and/or State Department.

As to the State Department, no *Vaughn* index has been filed. The Declaration refers to attachment 5, Dkt 31 at PAGE ID 402 (paragraph 9) but no such attachment is included. The DOS declaration states that six documents were withheld but addresses only "document 00002". *Id*. at PAGE ID 409. Plaintiff declares that she did not receive a production from the State Department at all. (PAF at 16).

## IV. Segregation

When documents contain information subject to exemptions, the agency must segregate out and release any portions of those documents that consist of "purely factual material . . . in a form that is severable without compromising the private remainder of the documents." *E.P.A. v. Mink*, 410 U.S. 73, 91 (1973) superseded in part on other grounds by 1974 amendments to FOIA. Even if Defendants had adequately identified these documents and established that they contain material subject to Exemption 3,4 5, & 7 that would not end the matter, because Defendants has not shown that these documents contained no non-exempt factual material that could have been segregated and released. *Mink*, 410 U.S. at 91. With the exception of the USCIS declaration, no other Defendant even addressed segregation much less provided details for this Court to conclude that a segregation analysis was conducted at all. Thus, there is a genuine dispute as to whether Defendants are using Exemptions to withhold entire documents that should be fully or partially released. Additionally, some of the partial withholdings that Defendants do list in the Vaughn indexes lack sufficiently detailed explanations to establish that these withholdings are proper and non-segregatable.

CONCLUSION

The Court should deny Defendants' motion and order a bench trial.

15

Respectfully Submitted by
_____/s/ *Nicolette Glazer*_____
Nicolette Glazer Esq. CSB209713
Law Offices of Larry R Glazer
1999 Avenue of the Stars #1100
Century City, CA 90067
T:310-407-5353
F:310-407-5354
nicolette@glazerandglazer.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 1 August 2022 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all parties' registrants by operation of the Court's electronic filing system.
LAW OFFICES OF LARRY R. GLAZER
_____*s/ Nicolette Glazer Esq.*_____
Nicolette Glazer