JACQUELINE STEVENS,
Plaintiff,

v.                                                    No. 21 C 2232
                                                      Judge Tharp

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,
Defendants.

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS' L.R. 56.1 STATEMENT OF
MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND ADDITIONAL UNDISPUTED FACTS**

Plaintiff, Jacqueline Stevens, submits the following Response to Defendants' statement of

material facts and additional disputed and undisputed facts pursuant to Local Rule 56.1 of the

United States District Court for the Northern District of Illinois.


**<u>Jurisdiction and Venue</u>**
1. This is an action brought under the Freedom of Information Act (FOIA), and the
court has subject matter jurisdiction under 5 U.S.C. § 552 and 28 U.S.C. § 1331. Dkt. 9 (Answer)
¶¶ 1, 3.

**RESPONSE:** Undisputed.

2. Venue is proper in this district because plaintiff Jacqueline Stevens resides in this
district. Dkt. 9 (Answer) ¶ 4.

**RESPONSE:** Undisputed.

**<u>Parties</u>**

3. Plaintiff Jacqueline Stevens is a professor at Northwestern University. Dkt. 9
(Answer) ¶ 5.

**RESPONSE:** Undisputed.

4. Defendants U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and
Border Protection (CBP), U.S. Citizenship and Immigration Services (USCIS), Executive Office
for Immigration Review (EOIR), U.S. Navy, U.S. Department of Agriculture (USDA), and U.S.
Department of State are components of the federal government from whom Stevens has sought

information via FOIA. Dkt. 9 (Answer) ¶ 17.

**RESPONSE:** Undisputed.

## **FOIA Requests to ICE**

5. When ICE receives a proper FOIA request, ICE's FOIA office identifies which program offices are reasonably likely to possess responsive records and initiates searches within those offices. Ex. A (Schurkamp Decl.) ¶ 8-11. The individuals in each office are directed to search the file systems—both paper and electronic—that in their judgment are reasonably likely to contain responsive records. Id. ¶ 11. The offices then provide any potentially responsive records to ICE's FOIA office, which reviews the records for responsiveness. Id.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 5 are contained in the Schurkamp Declaration.[1] **Disputed in all other respects.** Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendant's failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def*., 193 F. Supp. 3d 95, 109 (D. Conn. 2016); *see also* Stevens Decl ¶8-9. Defendant describes a restrictive and arbitrary and capricious process where as soon as a FOIA request is received an unidentified agency employee unilaterally decides whether "the requested information is under the purview of a DHS component other than ICE", Schurkamp Decl. ¶9-10, which is inconsistent with the unambiguous language of the statute which mandates that "Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), *each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person*, 5 U.S.C. § 553(a)(3)(A) (emphasis added), and do so after a proper "search."

6. ICE employees maintain records in several ways and may store electronic records on their individual computer hard drives, on their office's shared drive if available, or on storage devices like DVDs, CDs, and USB drives. Ex. A (Schurkamp Decl.) ¶ 12.

**RESPONSE**: See response to Fact No. 5

7. ICE employees also have access to email, and each employee stores their email in the way that works best for that employee: archiving by time period, archiving by subject, or creating PST files and storing them on a hard drive or shared drive. Ex. A (Schurkamp Decl.) ¶ 13.

---

[1]    Plaintiff has raised objections in her response as to the legal sufficiency of some of the declarations. To the extent certain of Defendants' facts are supported by Plaintiff's own complaint and/or the attached records to the declarations in support of the Motion for Summary Judgment, Plaintiff will designate them as undisputed. Plaintiff does not waive the arguments going to the legal sufficiency of the declarations themselves.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 7 are contained in the Schurkamp Declaration. The Declaration does not dispute that "outlook" was searched only in the one of the request. (Schurkamp Decl. ¶23b). No explanation is provided why emails and "outlook were not searched for the remaining FOIA requests submitted by Plaintiff.

8. Stevens submitted a FOIA request to ICE in March 2017, seeking records regarding a person named Manuel Valdez Soto. Ex. A (Schurkamp Decl.) ¶ 6a. She filed this lawsuit before ICE responded. Id. ¶ 6b.

**RESPONSE:** Undisputed.

9. ICE determined that its Enforcement Removal Operations office was the office that was reasonably likely to possess responsive records and tasked that office to search for responsive records. Ex. A (Schurkamp Decl.) ¶ 19.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 9 are contained in the Schurkamp Declaration. **Disputed otherwise**. Defendant does not explain on what basis it determined that the Office of the Principle Legal Advisor, ICE (hereinafter OPLA) should not be tasked to search its own records and databases. *Compare* Appeal decision reproduced as Exhibit to Defendants' Rule 56.1 Statement, Dkt 31 at PAGE ID229. The operative request here requested specifically records and communications "by the office of DHS trial attorneys*" and USCIS. Stevens Decl.¶29 and Exh 3 to said declaration.

10. The Enforcement Removal Operations office searched for records using Manuel Valdez-Soto's name and alien number. Ex. A (Schurkamp Decl.) ¶ 22b. The office searched the Immigration and Enforcement Operational Records System Alien Removal Module, which is a system used to book, detain, and remove encountered noncitizens. Id. ¶¶ 20c, 22b. The search yielded one responsive page, which ICE produced. Ex. A (Schurkamp Decl.) ¶ 22c.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 10 are contained in the Schurkamp Declaration and undisputed as to the last sentence. **Disputed in all other respects**. Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendant's failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016). Without such information the Court and Plaintiff cannot ascertain whether EARM was the location likely to contain responsive records. Compare Schurkamp Decl at paragraph 20c explaining that search for a similarly situated non-citizen was conducted in both EARM and ENFORCE. Paragraph 22b declares that ERO IDU conducted a "routine record search" but provides no details what such "routine record search" entails. The Declaration states in summary fashion that the search was performed "using the detained person's name." but it is not clear whether the unnamed employee used for example "Manuel" AND "Soto", or "Manuel Soto", or only for "Manuel Valdez Soto". Compare search performed by USDA, DSOF at Facts 82-84.

11. Stevens submitted another FOIA request to ICE in November 2018, seeking records regarding a person named Nathan Anfinson. Ex. A (Schurkamp Decl.) ¶ 4a.

**RESPONSE:** Undisputed.

12. ICE determined that its Enforcement Removal Operations office was the office that was reasonably likely to possess responsive records and tasked that office to search for responsive records. Ex. A (Schurkamp Decl.) ¶¶ 19-20.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 12 are contained in the Schurkamp Declaration. **Disputed otherwise**. Defendant does not explain on what basis it determined that the Office of the Principle Legal Advisor, ICE (hereinafter OPLA) should not be tasked to search its own records and databases. *Compare* Appeal decision reproduced as Exhibit to Defendants' Rule 56.1 Statement, Dkt 31 at PAGE ID229. The operative request here requested specifically "4) Screen shots of all tabs for interfaces to databases consulted for responsive records, including but not limited to PLAnet", OPLA main database. Stevens Decl.¶14, 18 and Attachment A to Schurkamp Decl., DSOMF, p. 46. No explanation is provided and none exists for Defendant's failure to search for responsive records in GEMS or NFTS or why those databases/document repository are not reasonably likely to contain responsive documents. Stevens Decl ¶19-20.

13. The Enforcement Removal Operations office searched for records using Nathan Anfinson's name, date of birth, country of birth, alias, and alien number. Ex. A (Schurkamp Decl.) ¶ 20c. The office searched the Alien Removal Module mentioned above, and the Central Index System, which is a database containing information on the status of 57 million applicants or petitioners seeking immigration benefits, including lawful permanent residents, naturalized citizens, U.S. border crosses, noncitizens who illegally entered the U.S., noncitizens who have been issued employment authorization documents, individuals who petitioned for benefits on behalf of family members, and other individuals subject to the provisions of the Immigration and Nationality Act. Id. ¶¶ 20c-d.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 13 are contained in the Schurkamp Declaration. **Disputed in all other respects**. Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendant's failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016). Without such information the Court and Plaintiff cannot ascertain whether EARM, ENFORCE, AND CIS were the locations likely to contain responsive records. Paragraph 20c declares that ERO IDU conducted a "routine record search" but provides no details what such "routine record search" entails. The Declaration states in summary fashion that the search was performed "using the detained person's name, date of birth, country of birth, and alien number" but it is not clear whether the unnamed employee used for example all criteria at once or tailored the search to retrieve all responsive documents by conducting sequential searches starting with the name or alien number. Compare search performed by Compare search

performed by USDA, DSOF at Facts 82-84. Furthermore, there is no indication that Defendant searched by the provided alias Alfonso Chavez.

14. ICE produced responsive records in December 2018. Ex. A (Schurkamp Decl.) ¶¶ 4c, 20e. Stevens appealed, and after further processing ICE reported to Stevens that it had found no additional responsive records. Id. ¶¶ 4d-g, 20f-h.

**RESPONSE: Disputed**. The assertions are misleading and distort that undisputed administrative record. On December 21, 2018 Defendant produced two pages, under the caption "EARM Case Summary" in response to for 2019-ICFO-23635. Stevens Decl ¶13. After the administrative appeal was filed ICE sent Plaintiff a response, stating in part, "Upon a complete review of the administrative record, ICE has determined that new search(s) or modifications to the existing search(s) should be made." Stevens Decl. ¶16. The letter also stated, "...records originating from the Denver Contract Facility must be requested directly from the facility." Id.; see also Letter from Shiraz Panthaky ("Panthaky") to Jacqueline Stevens, 2019-ICAP-00216/2019-ICFO-23635, February 27, 2019. No records have been produced following this directed second search and no details are present in the Declaration.[2] The Declaration provides no facts as to (1) what locations were search during the "second search"; (2) what terms were used in said alleged search; and why ICE failed to task the Denver Field Office with searching for responsive records.

15. After Stevens filed this lawsuit, ICE's FOIA office tasked the Enforcement Removal Operations office to conduct a third search, but the ERO office noted the two previously conducted searches and concluded that a third search was unlikely to uncover any additional potentially responsive records. Ex. A (Schurkamp Decl.) ¶ 20i.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 15 are contained in the Schurkamp Declaration. See Response to Fact no 14 above.

16. Stevens submitted another FOIA request to ICE in August 2019, seeking records regarding a person named Juan Hurtado-Valencia. Ex. A (Schurkamp Decl.) ¶ 5a.

**RESPONSE:** Undisputed.

17. ICE determined that its Enforcement Removal Operations office was the office that was reasonably likely to possess responsive records and tasked that office to search for responsive records. Ex. A (Schurkamp Decl.) ¶ 19.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 17 are contained in the Schurkamp Declaration. **Disputed otherwise**. Defendant does not explain on what basis it determined that the OPLA should not be tasked to search its own records and databases.

---

[2]     To the extent that Defendant(s) may attempt to provide additional declarations in their replies attempting to overcome the glaring deficiencies of their initial declaration, Plaintiff objects. Such a belated supplementation of the Rule 56 record by the party with the burden of proof and persuasion is impermissible and deprives Plaintiff of notice and opportunity to respond.

*Compare* Appeal decision reproduced as Exhibit to Defendants' Rule 56.1 Statement, Dkt 31 at PAGE ID229. The operative request here requested specifically "2) Screen shots of all tabs or interfaces to databases consulted for responsive records, including but not limited to PLAnet", OPLA main database. Stevens Decl.¶14, 22. No explanation is provided, and none exists for Defendant's failure to search for responsive records in GEMS or NFTS or why those databases/document repositories are not reasonably likely to contain responsive documents. Stevens Decl ¶19-20, 23.

18. The Enforcement Removal Operations office searched for records using Juan Hurtado Valencia's name, date of birth, country of birth, alias, and alien number. Ex. A (Schurkamp Decl.) ¶ 21c. The office used the booking application called the EID Arrest Guide for Law Enforcement to retrieve information from the Enforcement Integrated Database. Id. ¶ 21d. The Guide is used to process biometric and biographic information of individuals arrested for violation of immigration laws. Id. The office also searched Outlook, the Central Index System, and the Alien Removal Module for responsive records. Id.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 18 are contained in the Schurkamp Declaration. **Disputed in all other respect**.s Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendant's failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def*., 193 F. Supp. 3d 95, 109 (D. Conn. 2016). Without such information the Court and Plaintiff cannot ascertain whether EARM, EAGLE, CIS, and Outlook but not ENFORCE were the locations likely to contain responsive records. Paragraph 21c declares that ERO IDU conducted a "routine record search" but provides no details what such "routine record search" entails. The Declaration states in summary fashion that the search was performed "using the detained person's name, date of birth, country of birth, and alien number" but it is not clear whether the unnamed employee used for example all criteria at once or tailored the search to retrieve all responsive documents by conducting sequential searches starting with the name or alien number. Compare search performed by USDA, DSOF at Facts 82-84**.** Also, it is not clear whether the search was done by using solely the full name "Juan Hurtado-Valencia", especially since the FOIA request identified the U.S. citizen's name as "Juan Guillermo Hurtado Valencia". Compare Schurkamp ¶20-21 and exhibit to said declaration reproduced in Dkt 31 at PAGE ID 230. This is not a trivial matter.

19. ICE produced responsive records in December 2019. Ex. A (Schurkamp Decl.) ¶¶ 5c, 21f. Stevens appealed, and on administrative review ICE affirmed the adequacy of the initial search. Id. ¶¶ 5d-f, 21g-i.

**RESPONSE:** Undisputed.

20. After Stevens filed this lawsuit, ICE's FOIA office tasked the Enforcement Removal Operations office to conduct a second search for responsive records, but based on the previous search the ERO office determined that it was unlikely to possess any additional

responsive records. Ex. A (Schurkamp Decl.) ¶ 21j.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 20 are contained in the Schurkamp Declaration.

21. Stevens submitted a fourth FOIA request to ICE in March 2021, seeking.

> All records on which ICE officials rely for creating agency statements of FOIA expenditures and budgets in ICE annual requests to Congress for funding in FOIA operations, e.g., http://www.dhs.gov/sites/default/files/publications/7_u.s._immigration_and_customs_enforcement.pdf, ICE – O&S - 3 (pdfp. 29), ICE – O&S - 23 (p. 49), ICE – O&S - 51 (p. 77), ICE – O&S - 61 (p. 87), ICE – O&S - 73 (p. 99), ICE – O&S - 76 (p. 102).
> This includes but is not limited to:
> (a) All information received from contractors informing FOIA operation Requests for Information, Requests for Proposals, and all current work performed. If a contractor is trying to justify a renewal, extension, or addition to an existing contract, all of these communications in any form are responsive to this request. This includes device text messages, information stored in the cloud, email, notes, and communications responsive to current or past contracts, such as documentation of expenditures on subcontracts, infrastructure, or software outlays.
> (b) Information on FOIA operations and expenditures on which the report relies for its representations in ICE budgets about its use of financial resources, including but not limited to salaries, contracts, and database investments. All related communications tied to these budget requests based on FOIA operations are responsive to this request.
> (c) Screenshots of all databases on which ICE relies for its fiscal year budget requests for funding FOIA operations.

Ex. A (Schurkamp Decl.) ¶ 7a; see also attachment M to Schurkamp Decl. Stevens filed this lawsuit before ICE responded. Ex. A (Schurkamp Decl.) ¶ 7b.

**RESPONSE:** Undisputed.

22. ICE determined that its Office of Acquisition Management, Office of the Chief Information Officer, and Strategic Resourcing Alignment Division were the offices that were reasonably likely to possess responsive records and tasked those offices to search for responsive records. Ex. A (Schurkamp Decl.) ¶ 19.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 22 are contained in the Schurkamp Declaration. Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendants' failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each

component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016).

23. A point-of-contact in the Office of Acquisition Management determined that Outlook should be searched for responsive records, based on the person's subject matter expertise and knowledge of the office's activities. Ex. A (Schurkamp Decl.) ¶ 23b. The person searched by business name, contract number, and point-of-contact name, and located 64 responsive records, which ICE produced. Id. ¶¶ 23b-c.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 23 are contained in the Schurkamp Declaration. The declaration does not state the actual search terms used and why they were selected. Neither the "business name" or the contract number or the point-of-contact were stated although the request seeks records pertaining to ICE "contractors" not a specific business.

24. A point-of-contact in the Office of the Chief Information Officer determined that the office would not have any responsive records, based on the person's subject matter expertise and knowledge of the office's activities. Ex. A (Schurkamp Decl.) ¶ 23d. The office can search email accounts only if they end in "ice.dhs.gov," and the request sought information relating to accounts not ending in "ice.dhs.gov." Id.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 24 are contained in the Schurkamp Declaration. See Response to Fact. 23 above.

25. A point-of-contact in the Strategic Resourcing Alignment Division determined that the Federal Financial Management System should be searched for responsive records, based on the person's subject matter expertise and knowledge of the division's activities. Ex. A (Schurkamp Decl.) ¶ 23e. The Federal Financial Management System is a web-based workflow management and financial transaction system that is used to create and maintain a record of each allocation, commitment, obligation, travel advance, and accounts receivable issued. Id. ¶ 23f. 26. The point-of-contact located two responsive Excel spreadsheets, and ICE produced them. Ex. A (Schurkamp Decl.) ¶¶ 23g-i.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 25 are contained in the Schurkamp Declaration.

27. In producing responsive records, ICE withheld information under FOIA exemption (b)(4) to protect trade secrets and commercial or financial information. Ex. A (Schurkamp Decl.) ¶ 28. For example, ICE redacted contract pricing information from an order for services and supplies. Id. at Vaughn index entry 2.

**RESPONSE:** Undisputed. The question of whether the withholdings were proper is a legal question and the ultimate issue to be decided by the Court, not Defendant.

28. ICE also withheld information under FOIA exemptions (b)(6) and (b)(7)(C), to

protect the names, identification codes, phone numbers, and signatures of federal law enforcement officers and other government employees. Ex. A (Schurkamp Decl.) ¶ 30. Under those same exemptions, ICE also withheld personally identifiable information of third parties, including names, case numbers, social security numbers, alien numbers, addresses, email addresses, and phone numbers. Id.

**RESPONSE:** Undisputed. See Response to Fact. No. 27 above.

29. ICE also withheld information under FOIA exemption (b)(7)(E), to protect from disclosure law-enforcement-sensitive numbers and codes to various law-enforcement-sensitive databases and case management systems. Ex. A (Schurkamp Decl.) ¶ 31b. The information could be used by persons seeking improper access to law enforcement databases, and releasing the information could reasonably be expected to allow a person to breach the systems and potentially circumvent detection. Id.

**RESPONSE:** Undisputed at to the first sentence. See Response to Fact. No 27 above.

**FOIA Requests to CBP**
30. Stevens submitted a FOIA request to CBP in October 2015, seeking:
> I write under the Freedom of Information Act for all records maintained for Lazaro Palma, now deceased. His date of birth [redacted]. His place of birth was [redacted]. He was issued a "manifest" by a border guard at the Hidalgo border on February 11, 1950 and thus may have other crossing records on file with Customs and Border Protection. I am a writer, a professor, and blogger; as I plan to use the information responsive to this request for public education, and not for commercial benefit. I request a waiver of fees. Please note that Lazaro Palma's son[,] Lorenzo Palma, is in ICE custody and the contents of this file may assist in proving his claim to U.S. citizenship. Please note as well that there is strong public interest in the detention and deportation of U.S. citizens. This request therefore meets both prongs contemplated by the FOIA provisions for an expedited response: public interest and immediate harm (ICE detaining US citizen is false imprisonment.) Please note as evidence of my claims above articles referenced on the Deportation Research Clinic website at http://northwestern.edu/programs/deportationresearch. Please note that the death certificate is attached. If you have any questions please feel free to contact me at [redacted]. Thank you for your assistance with this matter.

Ex. B (Howard Decl.) ¶¶ 8-9.

**RESPONSE:** Undisputed.

31. When a FOIA request seeks "all records," as Stevens's request did, CBP's standard practice is to search for all travel and encounter records at the border. Ex. B (Howard Decl.) ¶¶

12-13.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 31 are contained in the Howard Declaration. **Disputed otherwise**. Stevens Decl.¶¶35-37.

32. CBP determined that the only location that could contain responsive records was "TECS," which is an information-sharing platform that allows users to access different databases, including enforcement, inspection, and operational records relevant to CBP's mission of antiterrorism and law enforcement. Ex. B (Howard Decl.) ¶¶ 14-15. TECS is the principal system used by officers at the border to assist with screening and determining the admissibility of arriving persons. Id.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 32 are contained in the Howard Declaration. Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendants' failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016).

33. CBP searched TECS for crossing records, secondary inspections, and any border encounters, using the name and the date of birth that Stevens provided, and found no responsive records. Ex. B (Howard Decl.) ¶ 16.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 33 are contained in the Howard Declaration. The Declaration does not provide any information as to whether the search was conducted using all filters/criteria at the same time or a sequential search was completed by using the name Lozaro Palma, followed by search for the provided date of birth which would have retrieved all responsive legacy records. The search was unduly restrictive.

34. In January 2016, CBP sent Stevens a letter stating that it had found no records responsive to the request. Ex. B (Howard Decl.) ¶ 17.

**RESPONSE:** Undisputed.

35. CBP has no record of Stevens's having filed any administrative appeal of the disposition of her October 2015 FOIA request. Ex. B (Howard Decl.) ¶ 27.

**RESPONSE:** Undisputed.

36. Stevens submitted another FOIA request to CBP in January 2019, seeking:

> This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for all system records pertaining to Nathan Afinson aka Alfonso Chavez who may be a U.S. citizen. Mr. Afinson was a legal resident he was assigned the alien number [redacted]. He was born in [redacted], Mexico on [redacted]. I am

> interested in any documentation Customs and Border Patrol has on
> Mr. Anfinson. Additionally, I am interested in any paperwork
> addressing Mr. Anfinson's legal permanent resident status.

Ex. B (Howard Decl.) ¶¶ 19-20.

**RESPONSE:** Undisputed.

37. CBP determined that the only systems that could contain responsive records were
TECS and the "E3/Enforce" system. Ex. B (Howard Decl.) ¶ 22. The E3/Enforce system is a
portal that CBP uses to collect and transmit biographic, encounter, and biometric data of
individuals for identification and verification of individuals encountered at the border and
checkpoints for CBP's law enforcement and immigration mission. Id. ¶ 23.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 37 are contained in the
Howard Declaration. Defendant fails to describe the agency's general file system and the type of
records maintained in the various databases. Defendants' failure to describe each of their
recordkeeping schemes and the specific databases in which information is stored makes it
impossible to determine whether Defendant has searched the specific databases within each
component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188,
221 (D. Conn. 2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016).

38. CBP searched TECS and the E3/Enforce system for responsive records by using
the name, date of birth, and "A-File" number that Stevens provided, and found no responsive
records. Ex. B (Howard Decl.) ¶ 24.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 38 are contained in the
Howard Declaration. The Declaration does not provide any information as to whether the search
was conducted using all filters/criteria at the same time or a sequential search was completed by
using the name Nathan Afinson, followed by search for the provided Alien number which would
have retrieved the responsive legacy records. The Declaration provides no details whether a
search was conducted for the provided alias "Alfonso Chavez". The search was unduly
restrictive.

39. CBP issued a final response in April 2019, explaining to Stevens that it had found
no responsive records and informing Stevens that records of apprehensions made by border
patrol agents before 2000 could be available in the A-File maintained by USCIS. Ex. B (Howard
Decl.) ¶ 25.

**RESPONSE:** Undisputed.

40. CBP has no record of Stevens's having filed any administrative appeal of the disposition of
her January 2019 FOIA request. Ex. B (Howard Decl.) ¶ 27.

**RESPONSE:** Undisputed.

**FOIA Request to <u>USCIS</u>**

41. Stevens submitted a FOIA request to USCIS in November 2018, seeking:

> All system records and all other materials in any medium,
> maintained, received or distributed by USCIS pertaining to Nathan
> Anfinson, aka Alfonso Chavez. His date of birth is August 10, 1983.
> His country of birth is Mexico. His "alien" number is 026917282.
> Mr. Anfinson appears to have a claim of US citizenship and yet was
> deported. I am specifically interested in finding a copy of Mr.
> Anfinson's certificate of citizenship and any underlying documents
> associated with its application. He believes he saw this document
> in either 1997 or 1998.

Dkt. 9 (Answer) ¶ 85.

**RESPONSE:** Undisputed.

42. USCIS determined that the request sought documents contained in Nathan Anfinson's A-file. Ex. C (Munita Decl.) ¶ 15.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 42 are contained in the Munita Declaration. The Declaration does not state or explain whether the identified "Nathan Anfinson's A-file" contained any documents created or identifiable under the provided alias "Alfonso Chavez."

43. To locate these records, USCIS's FOIA staff ran a computerized data search in DHS's file tracking system, RAILS, using the alien number Stevens provided. Ex. C (Munita Decl.) ¶¶ 11-13.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 42 are contained in the Munita Declaration. Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendants' failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016).

44. USCIS identified 294 pages of responsive records and, in March 2019, produced 206 pages in their entirety, 13 pages in part, and withheld 23 pages in full. Ex. C (Munita Decl.) ¶ 17. USCIS also referred 52 pages to ICE. Id.

**RESPONSE:** Undisputed.

45. Stevens administratively appealed USCIS's withholdings, but she did not administratively appeal the adequacy of the search. Ex. C (Munita Decl.) ¶ 18.

**RESPONSE:** Undisputed that the statement appears in Ms. Munita declaration. **Disputed otherwise**. Stevens Decl. ¶40.

46. In response, in July 2019 USCIS released 9 more pages of responsive records in full and 4 pages in part. Ex. C (Munita Decl.) ¶ 19.

**RESPONSE:** Undisputed.

47. In September 2019, Stevens submitted a request for records regarding Jovita Elena Chavez, the mother of Nathan Anfinson, that had previously been withheld in response to Stevens's FOIA request for records regarding Anfinson. Ex. C (Munita Decl.) ¶ 20.

**RESPONSE:** Undisputed.

48. Confusion ensued regarding whether Stevens had submitted a new request or was attempting to re-open a closed case. Ex. C (Munita Decl.) ¶ 20. Ultimately, USCIS concluded that a request had been submitted, though USCIS did not have evidence that Stevens had submitted "proper consent" and asked Stevens to do so. Id.

**RESPONSE:** Undisputed as to first sentence. The remainder distort the undisputed record. Stevens Decl. ¶¶42-44.

49. Stevens provided consent, and after following the A-file search procedure mentioned above, USCIS produced in full the 13 pages from Chavez's son's A-file that were about Chavez (since Chavez did not have an A-file of her own). Ex. C (Munita Decl.) ¶¶ 11-13, 20.

**RESPONSE:** Undisputed to the extent that the factual assertions in Fact 49 are contained in the Munita Declaration. Not all records were produced, specifically a green card depiction previously produced was not produced and thus remains redacted as is page 111, Stevens Decl. ¶48.

**RESPONSE:**

50. Stevens submitted another FOIA request to USCIS in August 2019, seeking:
> All system records and all other materials in any medium received
> or distributed by USCIS pertaining to Juan Guillermo Hurtado
> Valencia. His date of birth is [REDACTED]. His country of birth
> is Colombia. His "alien" number is ***-***-571 [REDACTED].
> Please note that my request includes but is not limited to all e-mail,
> memorandums, notes, correspondence, text messages, and archival
> requests, including information about where his documents and
> records were being stored.
> The time frame of this request is 1976 to present.
> I am attaching Mr. Hurtado's privacy waiver authorizing the release
> of this information to me under the Freedom of Information/Privacy

Act. Please note that this also includes his certification of his
identity.

Dkt. 9 (Answer) ¶ 101.

**RESPONSE:** Undisputed.

51. In September 2019, USCIS sent Stevens a letter denying the request under 5 U.S.C. § 552(b)(6). Ex. C (Munita Decl.) ¶ 22. The letter explained that if Stevens of her administrative appeal rights. Id.

**RESPONSE:** Undisputed.

52. Stevens did not appeal. Id. ¶ 23.

**RESPONSE:** Undisputed.

53. Regardless, in response to the August 2019 request, after following the A-file search procedure described above, USCIS ultimately released 222 pages in full, released 64 pages in part, and withheld 8 pages in full. Ex. C (Munita Decl.) ¶¶ 11-13, 24

**RESPONSE:** Undisputed that the statements appear in Ms. Munita Declaration. Disputed to the extent that the records were actually "released." The alleged production is password protected and cannot be accessed by Plaintiff. Stevens Decl ¶¶53-56. The Vaughn index produced appears to be for a different production. Stevens Decl. ¶¶53, 56.

54. Stevens submitted another FOIA request to USCIS in August 2020, seeking:

> 1) All system records and other materials in any medium created, maintained, or received by USCIS regarding Lorenzo Palma, including but not limited to his N-600 application, including all records for his grandfather, Lazaro Palma. Lorenzo's "alien" number is 024-863-347. His DOB is 7/28/76. He was born in Mexico.
> 2) All materials associated with the creation of the Notice of Intent letter sent to Mr. Palma regarding his N-600 application. The letter is dated July 16th, 2020. The materials I am requesting include but are not limited to notes, emails, drafts, memorandums, cell text messages, post-its, and all information on the PLAnet database and any other database on which USCIS officials contributing to the decision about the NOI had access.
> 3) Screenshots of interfaces used by USCIS officials creating or obtaining information on which USCIS relied in producing the NOI letter of July 16, 2020.

Dkt. 9 (Answer) ¶ 111.

**RESPONSE:** Undisputed.

55. Following the A-file search procedure described above, USCIS released 577 pages in full and 109 pages in part. Ex. C (Munita Decl.) ¶¶ 11-13, 28.

**RESPONSE:** Undisputed that the statements appear in Ms. Munita declaration. **Disputed otherwise**. The alleged records were never "released" to Plaintiff. Stevens Decl ¶¶58-67.

56. Stevens did not file an administrative appeal. Id. ¶ 29.

**RESPONSE:** Disputed. The records and "determination" were never provided to Plaintiff to trigger the administrative appeal process. See Response to Fact no. 55. Moreover, the tracking number assigned to the request submitted by Plaintiff is different than the one USCIS allegedly processed. Stevens Decl. ¶¶58-60. A FOIA requester is not required to guess whether the agency has made a "determination" as the 2016 Amendments provide. Defendant has failed to issue a proper and sufficient "determination" and Plaintiff thus had nothing to appeal.

57. In producing responsive records, USCIS withheld information under FOIA exemption (b)(3) to protect information that is exempt from disclosure under Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f). Ex. C (Munita Decl.) ¶ 33. For example, USCIS withheld information concerning the issuance or refusal of a permit to enter the United States by the State Department that is exempt from disclosure by statute. Id. at Anfinson Vaughn index entry 241.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 57 are contained in the Munita Declaration. **Disputed** as to whether redacting old and outdated information meets the 'foreseeable harm' standard and the presumption of disclosure. See also Response to Fact no. 55.

58. USCIS also withheld information under FOIA exemption (b)(5) to protect information protected by the attorney-client, attorney work product, or deliberative process privileges. Ex. C (Munita Decl.) ¶ 35. For example, USCIS withheld legal advice that an ICE attorney provided to assist ICE in determining and deciding an issue of citizenship, the disclosure of which would reveal the attorney's reasoning and litigation strategy. Id. at Palma-Rodriguez Vaughn index entry 597-99. See also Response to Fact no. 55.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 57 are contained in the Munita Declaration. **Disputed** as to whether redacting old and outdated information meets the 'foreseeable harm' standard and the presumption of disclosure.

59. USCIS also withheld information under FOIA exemption (b)(6) to protect from disclosure identifying information of third parties. Ex. C (Munita Decl.) ¶ 37. USCIS withheld the names and other personal information regarding individuals who are not the subjects of Stevens's FOIA requests, because there is a strong privacy interest and because there is no public interest in the information since its disclosure would not shed light on how USCIS is performing its duties. Id. For example, USCIS redacted the names and personal information of third parties that appeared on documents from immigration court removal proceedings in Houston, Texas. Id. at Palma-Rodriguez Vaughn index entry 40, 60, 120. See also Response to Fact no. 55

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 59 are contained in the Munita Declaration. **Disputed** see response to Fact no. 58. See also Response to Fact no. 55

60. USCIS also withheld information under FOIA exemption (b)(7)(C) to protect personal information in law enforcement records, the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Ex. C (Munita Decl.) ¶¶ 39-40. For example, USCIS redacted the names and locations of ICE attorneys engaged in law enforcement activity, because disclosing the information could result in harassment, interference in the performance of their duties, and possibly targeting by hate groups. Id. at Hurtado-Valencia Vaughn index entry 15.

**RESPONSE**: **Disputed** to the extent that whether a withholding is proper is a legal issue and the ultimate issue to be decided.

61. USCIS also withheld information under FOIA exemption (b)(7)(E) to protect law enforcement information—including techniques, procedures, and guidelines for investigations—the disclosure of which could reasonably be expected to risk circumvention of the law. Ex. C (Munita Decl.) ¶¶41-42. For example, USCIS withheld its Case Processing Background Sheet and Instructions for Conducting Background Checks, because disclosure would reveal guidelines and procedures for the enforcement of immigration and national security law and could reasonably be expected to risk the circumvention of the law and render the guidelines useless. Id. at Hurtado-Valencia *Vaughn* index entry 180, 274, 276. See also Response to Fact no. 55

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 61 are contained in the Munita Declaration. **Disputed** to the extent that whether a withholding is proper is a legal issue and the ultimate issue to be decided.

**FOIA Request to EOIR**

62. Stevens submitted a FOIA request to EOIR in July 2020, seeking, from January 1, 2011 to present:

> 1) All system records pertaining to immigration proceedings with adjournments referencing claims of U.S. citizenship, i.e. code 54, "Alien claim to U.S. Citizenship", or "Alien contesting charges citizenship." Please include all system record fields for each case so identified, including but not limited to hearing dates, detention location, custody charges, bond, administrative closings, etc., as well as system notes, memoranda, and e-mail associated with the system data on these cases [and] the case status at the time the report is run, that is, whether the individual's case status is "terminated," "closed," "voluntary" departure," "removed," or "appealed," or some other status, as well as the custody status.
>
> 2) All system records pertaining to all cases terminated at any hearing, i.e., a first merit hearing or after a remand. Please include all system record fields for each case so identified, including but not limited to hearing dates, detention location,

custody changes, bond, administrative closings, etc., as well as
all system notes, memoranda, and e-mail associated with the
system data on these cases.

Ex. D (O'Hara Decl.) ¶ 21.

**RESPONSE:** Undisputed.

63. EOIR identified its Planning, Analysis, and Statistics Division as the EOIR division
most likely to have responsive records. Ex. D (O'Hara Decl.) ¶¶ 7, 22. The Division extracted
two sets of data from the Case Access System for EOIR, or CASE, which is an electronic case
manager that manages all aspects of an immigration case. Id. ¶¶ 15, 23. The first set of data was
responsive to the first part of Stevens's request, and the second set of data was responsive to the
second part of Stevens's request. Id. ¶ 23.

**RESPONSE:** Undisputed that the statements are contained in Ms. O'Hara's declaration.
Disputed otherwise. **Disputed otherwise**. No explanation was provided and none exists as to
why the EOIR's Office of General Counsel, Office of the Chief Immigration Judge, Office of
Policy were not reasonably likely to have memoranda or e-mail responsive to data on claims of
U.S. citizenship in immigration courts. Stevens Decl.¶ 72-74.

64. The first set of data consisted of four ".csv" files consisting of records of
adjournments with the information Stevens requested: hearing date, custody charge, bond, and
administrative closing. Ex. D (O'Hara Decl.) ¶ 24. The data did not include information on
"detention information" as Stevens had requested, because that information is not reliably or
consistently maintained. Id. ¶¶ 18-19, 24. The "system notes" that Stevens requested were
available only for immigration respondents who were subject to a bond, and when applicable the
data contained that information. Id. ¶ 24.

**RESPONSE: Disputed.** The cited exhibits do not support the statement of fact(s). Declarant
provides no information as how declarant or EOIR searched and what search terms were used.
*Id*.

65. As just one representative example, the first set of data shows that a particular
immigration respondent was detained on April 10, 2013, was released on April 29, 2013, was
subject to a bond at some point during the proceedings, made a claim to U.S. citizenship on
October 29, 2013, that the case was transferred to another venue, and that the respondent's
request for relief was granted with respect to removal. Ex. D (O'Hara Decl.) ¶ 27.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 65 are contained in the
O'Hara Declaration. See Response to Fact. 64.

66. The second set of data consisted of four ".csv" files consisting of records of
terminations with the information Stevens requested: hearing date, custody charge, bond, and
administrative closing. Ex. D (O'Hara Decl.) ¶ 25. The data did not include information on
"detention information" as Stevens had requested, because that information is not reliably or
consistently maintained. Id. ¶¶ 18-19, 25. The "system notes" that Stevens requested were

available only for immigration respondents who were subject to a bond, and when applicable the data contained that information. Id. ¶ 25.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 66 are contained in the O'Hara Declaration. See Response to Fact. 64.

67. As just one representative example, the second set of data shows that a particular immigration respondent underwent three immigration proceedings starting in October 1995, that the respondent was subject to a bond at some point during the proceedings, that the case was transferred to another venue, and that the case was administratively closed in February 1996. Ex. D (O'Hara Decl.) ¶ 29.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 67 are contained in the O'Hara Declaration. See Response to Fact. 64.

68. EOIR produced both sets of data, in the form of 8 .csv files, in September 2020. Ex. D (O'Hara Decl.) ¶ 34.

**RESPONSE:** Undisputed.

69. EOIR also provided 9 CASE look-up tables that define and allow the reader to interpret the codes used in the data sets. Ex. D (O'Hara Decl.) ¶¶ 26, 34.

**RESPONSE:** Undisputed.

70. EOIR initially redacted some of the information but later produced the redacted information in full. Ex. D (O'Hara Decl.) ¶¶ 34, 41.

**RESPONSE:** Undisputed.

71. As mentioned above, EOIR searched for and provided Stevens with "system notes" where available, but EOIR did not search for "memoranda" or "e-mail associated with the system data on these cases," because such records are not stored in CASE. Ex. D (O'Hara Decl.) ¶ 30.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 71 are contained in the O'Hara Declaration. **Disputed otherwise**. Stevens Decl. ¶¶75-82.

72. EOIR has over 70 immigration courts or adjudication centers throughout the country, and at each location between 1 and 50 personnel with CASE access might enter information for a particular proceeding. Ex. D (O'Hara Decl.) ¶ 31. To the extent that any emails associated with these cases exist, those records would reside in the accounts of individual federal employees, who enter and leave federal service over time. Id. To search those accounts, EOIR would have to identify every CASE user over a 10-year period who might have entered information into CASE, and EOIR does not track this information. Id. As for memoranda, a

memorandum is not drafted for any single immigration respondent's proceeding, so no "memoranda" as contemplated by the request exist. Id. ¶ 33.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 72 are contained in the O'Hara Declaration.

## FOIA Request to U.S. Navy

73. Stevens submitted a FOIA request to the Navy in March 2021, seeking "all system records and other items maintained, produced, or distributed by the Navy and its components on Lawrence E. Bowman." Dkt. 9 (Answer) ¶ 76; Ex. E (Cason Decl.) ¶ 7.

**RESPONSE:** Undisputed.

74. The Navy interpreted the request as a request for Bowman's personnel files. Ex. E (Cason Decl.) ¶ 11.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 74 are contained in the Carson Declaration.

75. The Navy reviewed the materials Stevens submitted, which included an obituary asserting that Bowman was a Navy veteran, had been employed by the IRS for more than 25 years, and died in 1995 at the age of 49. Ex. E (Cason Decl.) ¶ 10. These facts suggested to the Navy that Bowman's military service occurred prior to 1995, given his age of 49 at the time of death and his 25-year employment with the IRS. Id.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 75 are contained in the Carson Declaration.

76. Personnel files of Naval service members who served before 1995 are not maintained by the Navy; they are maintained by a sub-agency of the National Archives and Record Administration called the National Personnel Records Center. Ex. E (Cason Decl.) ¶¶ 12-13.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 76 are contained in the Carson Declaration.

77. Accordingly, because the Navy is not the custodian of the records Stevens requested, the Navy referred Stevens's request to the National Archives and Record Administration, and the Navy sent Stevens a formal response explaining as much. Ex. E (Cason Decl.) ¶¶ 14-17.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 77 are contained in the Carson Declaration.


## FOIA Request to USDA

78. Stevens submitted a FOIA request in August 2020 to usdafoia@ocio.usda.gov, which is an outdated USDA email address that USDA can no longer access. Ex. F (Graves Decl.) ¶ 5.

**RESPONSE:** Undisputed.

79. The request sought "all system records, including but not limited to hiring, payment receipts, immigration documents, and border crossing records, maintained by the Department regarding Lazaro Palma. Mr. Palma was born on 3/27/1914 and died on 8/26/1991. His death certificate is attached. On information and belief, Mr. Palma entered the United States in or around 1942 as part of the 'Bracero' program (officially the Mexican Farm Labor Agreement Act of 1942). The time frame of this request is 1942 to 1950." Id. ¶ 6.

**RESPONSE:** Undisputed.

80. USDA learned of the request in May 2021, after Stevens filed this lawsuit. Ex. F (Graves Decl.) ¶ 6. The following month, USDA identified its National Finance Center, its Farm Production and Conservation Business Center, and its Forest Service as the USDA components likely to have responsive records. Id. ¶ 7. USDA tasked those components with searching for responsive records relating to hiring, payment, or law enforcement. Id.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 80 are contained in the Graves Declaration. **Disputed.** Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendants' failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016).

81. USDA did not search for immigration- or border-crossing-related records, because those subjects do not relate to USDA's mission of providing leadership on food, agriculture, natural resources, rural development, nutrition, and similar issues. Ex. F (Graves Decl.) ¶ 7. USDA searched all locations likely to have responsive records. Id. ¶ 11.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 81 are contained in the Graves Declaration. **Disputed otherwise**. In the 1940 the Department of Agriculture issued report and bulletins pertaining to the Bracero program, subject to the request. Stevens Decl. ¶¶83-86. See response to Fact. No. 80.

82. USDA's National Finance Center concluded that any responsive records would be found within its Information Research Inquiry System, or IRIS, which allows for searches of current and historical payroll and personnel data contained in the agency's Payroll/Personnel Database, its Personal History Information System, and its Name Inquiry Database. Ex. F (Graves Decl.) ¶ 8. The National Finance Center searched IRIS for any hiring or payment records related to Lazaro Palma using the terms "Palma" and "Lazaro" and found no responsive

records. Id. The National Finance Center then tried the search again using Lazaro's social security number and found no responsive records. Id.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 82 are contained in the Graves Declaration.

83. USDA's Farm Production and Conservation Business Center Stakeholder Relations Branch concluded that any responsive records would be found within its Service Center Information Management System, or SCIMS, which is a database that maintains and manages the Farm Service Agency and Natural Resource Conservation Service's customer data. Ex. F (Graves Decl.) ¶ 9. The Stakeholder Relations Branch performed a nationwide search of SCIMS using the search terms "Palma" and "Lazaro" and found no responsive records. Id.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 83 are contained in the Graves Declaration.

84. USDA's Forest Service Law Enforcement and Investigation organization concluded that any responsive records would be found within the Law Enforcement Investigation Management Attainment Reporting System (LEIMARS) or its Law Enforcement and Investigations Reporting System (LEIRS), which are used to collect information regarding criminal incidents. Ex. F (Graves Decl.) ¶ 10. The organization searched those systems using the search terms "Palma" and "Lazaro" and found no responsive records. Id.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 84 are contained in the Graves Declaration.

**FOIA Requests to State**
85. Stevens submitted a FOIA request to the State Department in March 2021, seeking all the Department's records relating to a person named Alma Bowman, who was issued a green card in 1977. Ex. G (Weetman Decl.) ¶¶ 5, 12.

**RESPONSE:** Undisputed.

86. The Department determined that several locations were reasonably likely to have responsive records: its Bureau of Consular Affairs; its electronic records system, known as the "eRecords" archive; its Passport Information Electronic Records System; and the National Archives and Records Administration's Washington National Records Center. Ex. G (Weetman Decl.) ¶ 12.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 86 are contained in the Weetman Declaration. **Disputed.** Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendants' failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016).

87. The Department concluded that no other offices or records systems were reasonably likely to maintain responsive records, including the U.S. Embassy in Manila, which was unlikely to have preserved a case file from 45 years ago since case files on aliens issued visas may be destroyed six months after issuance. Ex. G (Weetman Decl.) ¶¶ 12-13.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 87 are contained in the Weetman Declaration. **Disputed otherwise**. See Response to Fact 86.

88. The Bureau of Consular Affairs' Passport Office assessed that the requested records were likely to be located in the National Archives and Records Administration's Washington National Records Center and asked the center to search for records using various names Bowman may have used along with other biographical information such as her date and place of birth. Ex. G (Weetman Decl.) ¶ 17.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 88 are contained in the Weetman Declaration. **Disputed in all other respects**. Defendant fails to describe the agency's general file system and the type of records maintained in the various databases. Defendant's failure to describe each of their recordkeeping schemes and the specific databases in which information is stored makes it impossible to determine whether Defendant has searched the specific databases within each component likely to contain all responsive records. *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def*., 193 F. Supp. 3d 95, 109 (D. Conn. 2016). Without such information the Court and Plaintiff cannot ascertain whether Defendant searched the location likely to contain responsive records. The Declaration states in summary fashion that the search was performed "using various names." but it is not clear whether the unnamed employee used for example "Alma" AND "Bowman" or "Alma Bella Bowman." Compare search performed by USDA, DSOF at Facts 82-84. The Declaration does not state that the agency searched using all provided alias.

89. Although the Department was under no legal obligation to search National Archives and Records Administration records, which are no longer under the Department's control, the Department nonetheless asked the Administration to conduct a search in order to help Stevens find relevant records. Ex. G (Weetman Decl.) ¶ 12.

**RESPONSE:** Undisputed.

90. The Bureau of Consular Affairs' Passport Office also searched the Department's Passport Information Electronic Records System—a database of all U.S. passport information and consular records of overseas births and deaths—using the same names and information. Id. ¶¶ 18- 19.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 90 are contained in the Weetman Declaration.

91. The Bureau of Consular Affairs' Visa Office searched the Department's Consular Consolidated Database, which is a system of databases containing a record of every U.S. visa

application made since 1997, using various names Bowman may have used along with her date of birth. Ex. G (Weetman Decl.) ¶¶ 21-22.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 91 are contained in the Weetman Declaration.

92. The Department searched its eRecords archive—the Department's central repository for storing electronic records such as correspondence, diplomatic notes, cables, all emails sent on the state.gov network since January 1, 2017, and certain retired records including pre-2017 email records of certain former senior officials—using the search terms "Alma Bowman," "Lolita Catarugan Bowman," "Lolita" and "Bowman," "Alma Sorrells," "Alma Mitchell," and "Alma Belma Bowman." Ex. G (Weetman Decl.) ¶¶ 23-24.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 92 are contained in the Weetman Declaration.

93. The Department located 12 responsive records, 6 of which it released in full and 6 of which it released in part. Ex. G (Weetman Decl.) ¶ 9.

**RESPONSE**: **Disputed.** Plaintiff has received no records from Defendant. Stevens Decl.¶¶87-89.

94. On one of the documents it produced, the Department redacted material "concerning the kinds of information it considers when investigating passport fraud" and material the disclosure of which "would reveal how the Department maintains information in a passport fraud investigation." Ex. G (Weetman Decl.) ¶ 30. The redaction was appropriate under 5 U.S.C. § 552(b)(7)(E) because, even though the document is from 1977, the manner in which the Department approaches passport fraud has not changed, and releasing the information could lead to circumvention of the of the of the law by allowing passport applicants to more easily evade the Department's enforcement efforts. Id.; see also Response to no. 93.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 94 are contained in the Weetman Declaration. **Disputed** as to whether Defendant (1) has justified the withholding of the documents; (2) failed to provide a redacted version of the documents and (3) discharged its duty to segregate and disclose "any reasonably segregable portion of a record" that is being withheld under a FOIA exemption, 5 U.S.C. § 552(b). See also Stevens Decl. ¶90; see also Response to no. 93.

95. The Department redacted under exemption 7(E) the specific information that it collected and found relevant in Alma Bowman's passport fraud investigation, because release of the information would shed light on what the Department considers important—and what it does not—in its investigations and would reasonably be expected to provide a person seeking to commit passport fraud with a roadmap for doing so. Ex. G (Weetman Decl.) ¶ 31; see also Response to no. 93.

**RESPONSE**: **Disputed.** Plaintiff received no production or release of records from Defendant. Also as whether Defendant (1) has justified the withholding of the unproduced and unidentified document(s) in their entirety; (2) failed to provide a redacted version of the documents and (3) discharged its duty to segregate and disclose "any reasonably segregable portion of a record" that is being withheld under a FOIA exemption, 5 U.S.C. § 552(b), are legal questions for the Court to decide. See also Response to no. 93.

96. Overall, the Department thoroughly searched all of its locations that were reasonably likely to contain responsive records, conducted a careful review of the records, and ensured that any reasonably segregable, non-exempt information was disclosed and that nothing further from the information that was withheld could be released without revealing information protected from disclosure. Ex G. (Weetman Decl.) ¶ 32; see also Response to no. 93.

**RESPONSE**: Undisputed to the extent that the factual assertions in Fact 96 are contained in the Weetman Declaration. **Disputed otherwise.** Whether Defendant discharged its duties under the Act, conducted a proper search, or justified the withholdings are legal issues and the ultimate issues to be decided by the Court on de novo review.

## PLAINTIFF'S STATEMENT OF ADDITIONAL DISPUTED AND UNDISPUTED FACTS

Plaintiff submits the following additional undisputed facts and facts going to genuine factual

disputes:

1. Ms. Schurkamp Declaration does not indicate any protocol the ICE FOIA office has in place to adhere to statutory deadlines for producing records responsive to requests in the timeframes stated in the Act. Numerous responses were produced here well beyond the 30-day deadline for complex requests, including one, for Mr. Manuel Valdez Soto on *January 7, 2022* (Schurkamp Decl., ¶34, DSOMF, p. 45), well over *four* years after Plaintiff submitted the request on March 15, 2017. Stevens Decl¶9.

2. The Vaughn Index associated with the ICE Declaration uses document identification number of 2021-ICLI-00042 for five records. This number does not appear in Ms. Schurkamp's Declaration and Plaintiff cannot match the redactions with the documents she received. DSOMF, pp. 70-79. Stevens Decl¶10.

3. Ms. Schurkamp notes "ICE employees have access to email" (DSOMF, ¶12, p. 30). But searches for records on Nathan Anfinson (2019-ICFO-23635) and Manuel Valdez Soto did not reference searches of Outlook. Stevens Decl¶12.

4. The Nathan Anfinson FOIA request specifically asked ICE to search the case management system PLAnet (SOMF, ICE Attachment A, DSOMF, p. 46). PLAnet is an ICE case management system that is reasonably likely to have records responsive to my request. An ICE Memorandum states that it is the database that ICE attorneys should use for uploading case information on individuals with claims of U.S. Citizenship. "ICE attorneys will save the memorandum in the PLAnet case management system and

document the resulting HQ decision and other information about the claim by completing the " USC Claims" section in PLAnet."  U.S. Citizenship Claims Memorandum, 2017 ("USC Memo"), Ex. 2, p. 7; Stevens Decl¶18

5. Another database Schurkamp omits from the list of locations searched for records on individuals and that is reasonably likely to have responsive records is the General Counsel Electronic Management System (GEMS) "GEMS."  The USC Memo highlights GEMS as a location where "[r]ecords generated pursuant to this directive" are likely to be located.  *Id.;* Stevens Decl¶19.

6. A third database  Schurkamp omits from the list of locations searched for records on Anfinson that is reasonably likely to have responsive records is the National File Traacking System ("NFTS").  NFTS is another records location referenced in the USC Memo.  NFTS "provides a tracking system of where the A-Files are physically located, including whether the file has been digitized ... NFTS records associated with an A-File will be retained on a permanent basis even after the A-File has been retired to NARA to retain accurate recordkeeping." Especially for cases that are older, NFTS is likely to indicate where records are located and if they have been digitized. Stevens Decl¶20.

7. The Schurkamp Decl. provides no tracking number for the Manuel Valdez Soto request submitted by Plaintiff in 2017. No tracking number was assigned. Stevens Decl¶25

8. Only after Plaintiff filed this lawsuit did the agency  "*respond[] to a request* [Plaintiff] *had withdrawn and disregarded the request that immediately ensued.* Stevens Decl¶27 The FOIA request ICE claims is the true and complete copy of Plaintiff request for records of Manuel Valdez Soto was submitted at 2:46 p.m. CT on March 15, 2017 and *withdrawn three minutes later.*  Stevens Decl¶28 At 2:49 p.m. CT Plaintiff forwarded the errant request and above it wrote, "please withdraw this request; it is sent inadvertently to your agency. a correct request for records from this subject will follow. I apologize for the confusion." Email from Stevens to ice-foia@dhs.gov, Subject heading: "Fw: Request for ROP and Audio Recording for Manuel Valdez Soto #[redacted]." March 15, 2017.  Four minutes later, she sent a new request.  The new request had as its subject-heading "Enforcement and Removal Operations and All System Records for Manuel Valdez Soto #[redacted]." Stevens Decl¶28.

9.  The contents of the request submitted at 2:53 p.m. and not withdrawn is quoted from in the Complaint: "All correspondence including but not limited to email and attachments, faxes, notes, and all other records associated with *communications with Citizenship and Immigration Services* *by the office of DHS trial attorneys* or other employees of the ICE Enforcement and Removal Operations about any N600 applications or any other correspondence with ICE HQ about Mr. Valdez's claim to US citizenship." Complaint  at ¶69, quoting from email from Stevens to ice-fois@dhs.gov, March 15, 2017 Ex. 1. Stevens Decl¶29

10. On April 14, 2017 ICE sent an email in reply to the email including the request Plaintiff had withdrawn.  It did not include a tracking number nor state it was a final response.  It stated it would be forwarding the withdrawn request to USCIS.  Email from ICE to Stevens, April 14, 2017.  Ex. 4. Stevens Decl¶30. Plaintiff assumed that ICE would be sending her a tracking number for the correct request that was not withdrawn: ICE never

sent her a tracking number for the proper request associated with the records of Mr. Valdez. Stevens Decl¶31.

11. Plaintiff's original request to EOIR dated July 3, 2020 included a section captioned "BACKGROUND" and referenced a memorandum and report produced pursuant to EOIR and federal courts efforts, respectively, to compile and analyze case data including a specific break-out of data on U.S. citizens in removal proceedings. Stevens Decl¶69

12. Plaintiff's request for data associated with FOIA case 2020-60006 stated, "The public understanding of immigration removal adjudication proceedings, as well as how the government responds in cases where a U.S. citizen may have been mistakenly flagged for immigration removal, will be greatly enhanced by knowledge of these adjournments and their associated cases." Stevens Decl¶70.

13. EOIR did not task its components, including but not limited to the Office of General Counsel, Office of the Chief Immigration Judge, Office of Policy or any other office reasonably likely to have memoranda or e-mail responsive to data on claims of U.S. citizenship in immigration courts, as requested by Plaintiff and provides no details as to why these components would not have responsive records. Stevens Decl¶72. Rather EOIR searched only the PASD as the component "most likely" to have responsive records. Stevens Decl¶73.

14. In her Declaration, Ms. O'Hara provides a 10-page narrative about the data and codes produced that did not accompany the original production. However, Plaintiff and Plaintiff's research assistant Grant Li do not have information sufficient to understand two codes: "'ZERO BOND' as it appears in table 80000" and "'DD Appeal' as it appears in table 80400 under column C 'strDescription'." Stevens Decl¶82.

15. Plaintiff has received no "release" or "production" of records responsive to the FOIA request of USCIS for records on Juan Hurtado-Valencia she submitted on August 24, 2019. Stevens Decl. ¶¶49-55.

16. Plaintiff has received no production from the State Department pertaining to the FOIA request underlying this litigation. Stevens Decl¶¶87-89.

17. Plaintiff has received no "determination" or a "release" or "production" of documents in response to the FOIA request of USCIS for records on Lorenzo Palma she submitted on 11 August 2020. Stevens Decl¶¶57-67.

Dated: 1 August 2022

<div style="margin-left:40%">

Respectfully Submitted by

_____/s/ *Nicolette Glazer*_____

Nicolette Glazer Esq. CSB209713

Law Offices of Larry R Glazer

1999 Avenue of the Stars #1100

Century City, CA 90067

T:310-407-5353

F:310-407-5354

nicolette@glazerandglazer.com

</div>

**DECLARATION IN SUPPORT**

## DECLARATION OF JACQUELINE STEVENS

I, Jacqueline Stevens, state and declare under penalty of perjury that the following is true and correct:

1.      I am a named Plaintiff in the Complaint under the Freedom of Information Act ("FOIA"). I have been a tenured full professor in the Political Science Department at Northwestern University ("Northwestern") since 2010.  In 2012 I became the founding Director of the Deportation Research Clinic, Buffet Institute for Global Affairs, Northwestern University ("Clinic").

2.      I make this declaration based on personal knowledge and observations as stated herein. Further, this Declaration contains my professional opinions on certain topic for which I have specialized knowledge based on my education, professional experience, expertise, and research.

3.      If called to testify I could and would testify to each of the facts stated within this Declaration.

4.      My scholarship focuses on laws and theories of membership in political societies since antiquity, especially policies that mobilize state violence on behalf of intergenerational groups and histories, e.g., nations.  My publications in popular and academic venues frequently analyze information about government operations.  My research practice includes regular requests under the FOIA.  My findings have been featured in numerous newspaper, magazine, radio, and television reports, including those of the *New Yorker*, *New York Times*, *Washington Post*

*Guardian, Columbia Journalism Review,* NPR, PBS, and CNN. My monographs have been published by Columbia University Press and Princeton University Press.

5.     My scholarly articles have appeared in highly selective venues, including the *American Political Science Review, Georgetown Immigration Law Journal,* and *Perspectives on Politics.* I have published in the field of public health and in 1997-1999 was a Robert Wood Johnson Health Policy Scholar at Yale University. In 2013 I was awarded a Guggenheim Fellowship.

6.     A statement on the Clinic website states: "The Clinic conveys useful, timely, intelligent research on misconduct in deportation proceedings to affected communities, journalists, policymakers, and scholars ... The Clinic's research mission is rooted in public health approaches to theorizing and addressing community-level risks and interventions."[1] Public health experts use individual-level information to help patients and to assist in community-level interventions. Information obtained for the purpose of assisting individuals who report experiencing government misconduct is used to provide analyses for addresssing systemic problems in the government, including incompetence, nativism, and racism. The same webpage also quotes from an article written by Chief Justice Louis Brandeis: "Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."[2]

7.     This Declaration is made to dispute claims in the Defendant declarations in order to support my Complaint seeking preliminary injunctive relief.

---

1   "Research Goals," https://deportation-research.buffett.northwestern.edu/research/index.html.
2   Chief Justice Louis Brandeis, "What Publicity Can Do," *Harper's Weekly* (December 20, 1913).

**Immigration and Customs Enforcement**

8.     The Declaration of Lynnea Schurkamp ("Schurkamp," "Decl. Schurkamp") makes no claim for any response that ICE searched all locations reasonably likely to have responsive records.

9.     Ms. Schurkamp does not indicate any protocol the ICE FOIA office has in place to adhere to statutory deadlines for producing records responsive to requests. Numerous responses were produced well beyond the 30-day deadline for complex requests, including one, for Mr. Manuel Valdez Soto on *January 7, 2022* (Schurkamp Decl., ¶34, DSOMF, p. 45), well over *four* years after I submitted the request on March 15, 2018. Ex. 1.

10.    The Vaughn Index associated with the Declaration uses Document Identification number of 2021-ICLI-00042 for five records. This number does not appear in Ms. Schurkamp's Declaration and I cannot match the redactions with the documents I received. DSOMF, pp. 70-79.

11.    ICE also assigns dates for received requests and appeals in a fashion that is arbitrary and capricious, asserting datees of receipt inconsistent with digital submissions, e.g., "Your appeal, **postmarked *or* electronically transmitted** on **December 21, 2019** was received on **February 04, 2019**." Letter acknowledging receipt of my appeal of 2019-ICFO-23635, emphasis in original. Attachment D, DSOMF, p. 53.

12.    Ms. Schurkamp notes "ICE employees have access to email" (DSOMF, ¶12, p. 30). But searches for records on Nathan Anfinson (2019-ICFO-23635) and Manuel Valdez Soto did not reference searches of Outlook.

**FOIA Request 1, Nathan Anfinson 2019-ICFO-23635**

13.    Ms. Schurkamp omits mention of the fact that the release to me on December 21, 2018,

for 2019-ICFO-23635 is just two pages, under the caption "EARM Case Summary."  ICE has not

supplemented that response, either following my appeal or in this litigation.  Schurkamp Decl.

¶20, DSOMF, p. 33-34.

14.    My request of November 29, 2018 asked for the following:

> 1) All records of all grievances filed by Mr. Anfinson orally or in writing and under
> the control of ICE or its components, including county jails or private prisons with
> which ICE has contracted.

> 2) Commissary account data, including but not limited to information tracking funds
> reimbursed to Mr. Anfinson on release from custody.

> 3) All correspondence, notes, and other records pertaining to assertions or findings of
> U.S. citizenship.

> 4) Screen shots of all tabs for interfaces to databases consulted for responsive records,
> including but not limited toPLAnet.  Attachment A to Schurkamp Decl., DSOMF, p.
> 46.

15.    My request noted unlawful searches in the past and specifically requested that the agency

follow the statute and ICE regulations, stating in part:

> Please note that components that track detention facility compliance with ICE
> contracts will need to be queried.

> Please note that prior responses to similar requests have been incomplete and in
> violation of the FOIA/PA. If the final response does not include all of the records
> indicated below it is in violation of the law to represent it as a "final response." If you
> are a FOIA agent reviewing this, then I would appreciate your reviewing my request
> with your colleagues in offices tasked for documents items that are missing when they
> return to you only a few pages from EARM.

> The purpose of the FOIA is to provide to the public timely information.

16.    ICE disregarded my request and I appealed.  ICE sent me a response to my appeal, stating

in part, "Upon a complete review of the administrative record, ICE has determined that new

search(s) or modifications to the existing search(s) should be made." The letter also stated,

"...records originating from the Denver Contract Facility must be requested directly from the facility." Letter from Shiraz Panthaky ("Panthaky") to Jacqueline Stevens, 2019-ICAP-00216/2019-ICFO-23635, February 27, 2019.

17.     The instruction from Panthaky is inconsistent with the ICE FOIA regulations and the protocol averred to by Ms. Schurkamp:

> Based upon the requester's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.... In conformity withthe ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the way they routinely keep records, would reasonably likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office.  Schurkamp Decl. ¶¶11, 12, DSOMF, pp. 29-30.

18.     My request for information on Nathan Anfinson specifically asked ICE to search the case management system PLAnet (SOMF, ICE Attachment A, DSOMF, p. 46). PLAnet is an ICE case management system that is reasonably likely to have records responsive to my request.  An ICE Memorandum states that it is the database that ICE attorneys should use for uploading case information on individuals with claims of U.S. Citizenship. "ICE attorneys will save the memorandum in the PLAnet case management system and document the resulting HQ decision and other information about the claim by completing the " USC Claims" section in PLAnet." U.S. Citizenship Claims Memorandum, 2017  ("USC Memo"), Ex. 2, p. 7.

19.     Another database Schurkamp omits from the list of locations searched for records on individuals and that is reasonably likely to have responsive records is the General Counsel

Electronic Management System (GEMS) "GEMS."  The USC Memo highlights GEMS as a

location where "[r]ecords generated pursuant to this directive" are likely to be located.  *Id.*

20.     A third database  Schurkamp omits from the list of locations searched for records on

Anfinson that is reasonably likely to have responsive records is the National File Traacking

System ("NFTS").  NFTS is another records location referenced in the USC Memo.  NFTS

"provides a tracking system of where the A-Files are physically located, including whether the

file has been digitized ... NFTS records associated with an A-File will be retained on a permanent

basis even after the A-File has been retired to NARA to retain accurate recordkeeping."

Especially for cases that are older, NFTS is likely to indicate where records are located and if

they have been digitized.[3]

21.     Ms. Schurkamp does not claim that ICE searched all locations reasonably likely to have

records on Mr. Anfinson responsive to my request.

### ICE FOIA Request 3 Juan Guillermo Hurtado Valencia

22.     My request for information on Juan Guillermo Hurtado Valencia, specifically asks ICE to

search PLAnet. Stevens Email to ICE, August 24, 2019, DSOMF, ICE Attachment G, p. 57.

> ....I am interested in all system records pertaining to Mr. Hurtado as well as all ICE
> correspondence with other government agencies, individuals, or attorneys pertaining
> to him as well, including but not limited to correspondence with officials of US
> Citizenship and Immigration Services and the State Department. I also am
>
> interested in all memorandums, draft memorandums, reports, notes, email, text
> messages, and any other information maintained in any form about Mr. Hurtado.
>
> Please include as well : All records of grievances filed by Mr. Hurtado orally or in
> writing under the control of ICE or its components, including county jails or private

---

3  76 FR 34233, 6/13/2011, "Privacy Act of 1974; U.S. Citizenship and Immigration Services, Immigration and
Customs Enforcement, Customs and Border Protection-001 Alien File, Index, and National File Tracking System of
Records," https://www.federalregister.gov/documents/2011/06/13/2011-14489/privacy-act-of-1974-us-citizenship-
and-immigration-services-immigration-and-customs-enforcement.

prisons with which ICE has contracted. 2) Screen shots of all tabs for interfaces to databases consulted for responsive records, including but not limited to PLAnet.

23.     The Schurkamp Decl. provides no explanation as to why PLAnet, GEMS, and the NFTS -- all records systems referenced in the USC Memo -- were not searched.  Ms. Schurkamp does not claim that ICE searched all locations reasonably likely to have records on Mr. Hurtado responsive to my request.

### FOIA Request 3, Manuel Valdez Soto No Number

24.     The ICE record reveals substantial errors in the handling of my request for records on Manuel Valdez Soto.

25.     First, the Schurkamp Decl. provides no tracking number for this request, and indeed I received none in 2017, following the submission of my request.

26.     Second, ICE did not produce a single responsive document until January 7, 2022, when it produced a one-page print out captioned "EARM Case Comments."

27.     Third, the Schurkamp Decl. and exhibits reveal that after I sued ICE, the agency *responded to a request I had withdrawn and disregarded the request that immediately ensued*. Ms. Schurmkamp avers, "A true and complete copy of Plaintiff's FOIA request is attached hereto as Attachment L." Schurkamp Decl., p. 4, Def. SOMF, p. 28.  This is incorrect.

28.     The FOIA request ICE claims is the true and complete copy of my request for records of Manuel Valdez Soto was submitted at 2:46 p.m. CT on March 15, 2017 and *withdrawn three minutes later*.  At 2:49 p.m. CT I forwarded the errant request and above it wrote, "please withdraw this request; it is sent inadvertently to your agency. a correct request for records from this subject will follow. I apologize for the confusion." Email from Stevens to ice-foia@dhs.gov, Subject heading: "Fw: Request for ROP and Audio Recording for Manuel Valdez Soto

#[redacted]." March 15, 2017.  Four minutes later, I sent a new request.  The new request had as its subject-heading "Enforcement and Removal Operations and All System Records for Manuel Valdez Soto #[redacted]." Email from Jacqueline Stevens to ICE, March 15, 2017, Ex. 3.

29.      The contents of the request submitted at 2:53 p.m. and not withdrawn is quoted from in my Complaint: "All correspondence including but not limited to email and attachments, faxes, notes, and all other records associated with *communications with Citizenship and Immigration Services* *by the office of DHS trial attorneys* or other employees of the ICE Enforcement and Removal Operations about any N600 applications or any other correspondence with ICE HQ about Mr. Valdez's claim to US citizenship." Complaint  at ¶69, quoting from email from Stevens to ice-fois@dhs.gov, March 15, 2017 Ex. 1.   This text does not appear in the request that I withdrew.

30.      On April 14, 2017 ICE sent an email in reply to the email including the request I had withdrawn.  It did not include a tracking number nor state it was a final response.  It stated it would be forwarding the withdrawn request to USCIS.  Email from ICE to Stevens, April 14, 2017.  Ex. 4.

31.      I assumed that ICE would be sending me a tracking number for the correct reqeust that was not withdrawn.  ICE never sent me a tracking number for any request associated with the records of Mr. Valdez.

32.      Ms. Schurkamp 's Declaration and exhibits omits mention of my e-mail withdrawing what she falsely claims is "A true and complete copy of Plaintiff's FOIA request" and the email from ICE to to me on April 14, 2017.  Ex. 4.

33. Ms. Schurmkamp states that ICE on July 14, 2020 conducted a search that produced one-page of records on Mr. Valdez and did not produce it to me until January 7, 2022. Schurkamp Decl., ¶¶22, SOMF, p. 36.

34. Ms. Schurkamp does not claim that ICE searched all locations reasonably likely to have records on Mr. Valdez responsive to my request. Schurkamp Decl., ¶¶22, SOMF, p. 36.

### Customs and Border Protection (CBP)

**1. Lazaro Palma CBP-2016-003607**

**2. Nathan Anfinson CBP-2019-0212307**

35. The Declaration of Patrick Howard ("Howard Decl.") on behalf of the CBP states that "CBP FOIA staff determined the TECS platform was the only CBP system where responsive records could be found." Howard Decl. ¶14, DSOMF, p. 84. Howard does not indicate who these agents are, the databases to which TECS provides access, nor the specifics of how the searches were performed.

36. No one on behalf of CBP has submitted sworn statement that the agency conducted a search of all locations reasonably likely to have records responsive to my requests of CBP.

37. Details on how searches are performed are essential for evaluating the credibility of "no responsive records" claims. A FOIA manual for U.S. Citizenship and Immigration Services references the Central Indexing System, used by several agencies in the Department of Homeland Security. The 4,200 plus manual includes several examples of false negative outcomes based on known common errors in data entry and retrieval. Using one example of a failed search that subsequently located the individual, the Manual states, "Why didn't we find him the first time?" A bullet point states: "Garbage In, Garbage Out: First and middle names are

both entered as first Name." Numerous other examples of inputs and searches yielding initial false no record outputs are provided. Excerpt from USCIS Freedom of Information/Privacy Act Processing System (FIPS) Manual, pp. 85-123, quoting p. 93, released in 2016 as FOIA COW-2016-000509, Ex. 5.

### US Citizenship and Immigration Services (USCIS)

38. The Declaration of Cynthia Munita on behalf of USCIS ("Munita Decl.") states the agency uses a "first-in/first-out" processing protocol. Munita ¶6(b), DSOMF, p. 90. The protocol relies for its legal authority on a 1980 Supreme Court case that predates the Freedom of Information Act as amended (2016) (*Id.* ¶6, p. 91) and a 2020 order in a national class action lawsuit in which USCIS is the defendant, including an order that provides declaratory and injunctive relief, holding in part: "Defendants have violated the FOIA by failing to make timely determinations on plaintiffs' A-File FOIA requests within the mandated statutory time frames. Defendants have engaged in a pattern or practice of violating FOIA's statutory deadlines when responding to requests for A-Files." *Nightingale et al. v. USCIS et al.,* 3:19-cv-03512-WHO, Dkt. 83 (2020), p. 27.

39. USCIS is exceptionally difficult to contact about bureaucratic snafus and obtain responsive information. On information and belief, the problem is that USCIS contracts out its FOIA operations and other public-facing calls with a private contractor, General Dynamics Information Technology, a military contractor that prioritizes shareholder profits over public service.[4]

---

[4] Communications Workers of America, "Senators Urge General Dynamics to Address Wage Theft at Call Centers," https://cwa-union.org/news/senators-urge-general-dynamics-address-wage-theft-call-centers.

**Nathan Anfinson**

40.     USCIS did not provide any information on the protocols or scope of its searches for any requests in this litigation, thus eliciting my furrowed brown when I encountered Ms. Munita's statement that my appeal of the search for records about Mr. Anfinson "did not appeal USCIS' search for records."  Munita Decl.  ¶18, DSOMF, p. 93.

41.     As noted in my Complaint, on September 19, 2019 I submitted a records request for information in Mr. Anfinson's file withheld from me on grounds of privacy for his mother Elena Chavez, aka Jovita Rodrigues.  Complaint  ¶99.

42.     The Answer filed by Defendant on behalf of USCIS states in response to my quoting an email referencing my request for records: "Deny that there was a new and separate FOIA request that could be denied. Aside from that, defendants lack sufficient information or knowledge to form a belief about the truth of the allegations in paragraph 99; accordingly, they are denied."

43.     A true copy of this digital request with attached declarations waiving rights of privacy to me signed by Nathan Anfinson *and* his mother Ms. Chavez is attached to my Declaration. Email from Stevens to USCIS, September 19, 2019.  Ex. 6.

44.     I submitted several emails to USCIS indicating that I provided a signed form waiving her interests under the Privacy Act and authorizing release to me of records about Mr. Anfinson's mother, Elena Chavez, aka Jovita Rodriguez.  Ms. Munita's Declaration omits including my requests and correspondence with USCIS and does not explain why I did not receive additional responsive pages until June 3, 2022.   The response below is not challenging numerous wrongful exemptions because the portions, about a dozen pages withheld in their entirety, were released subsequent to litigation and a separate processing of my request.

45. The assertion of an exemption under b(7)E for page 15 of the Anfinson release references vague "law enforcement actions that were planned." The nature of these alleged "actions" is not clear nor is there any rationale for why an action taken about 20 years ago qualifies for this exemption, nor why segregable portions were withheld. Vaughn Index, p. 2, DSOMF, p. 104.

46. USCIS is withholding on p. 22 "results" in a database with information about Mr. Anfinson responsive to my request. The explanation provides no specific grounds to infer that these results on Mr. Anfinson's deportation case are especially sensitive. Further, the reference to a legacy "INS Tracking System" – Immigration and Naturalization Service ("INS") was abolished in 2003 – is further grounds to question the withholding of this information under 7(E). *Id*.

47. USCIS is withholding on p. 23 "results" in a database with information about Mr. Anfinson responsive to my request. The explanation provides no specific grounds to infer that these results on Mr. Anfinson's deportation case are especially sensitive. Further, the reference to a legacy "INS FBI Name Check" – Immigration and Naturalization Service was abolished in 2003 – is further grounds to question the withholding of this information under 7(E). *Id*., p. 3, DSOMF, p. 104.

48. USCIS is asserting withholding pp. 111-112 based on b(7)C. USCIS has in fact released to me page 111 in its entirety. It is a hand-written statement by Mr. Anfinson's mother. USCIS provides no specific grounds for its withholding of page 112. Further, USCIS refers to the document as an INS Law Enforcement Document. The fact that the INS was abolished in 2003 is further grounds to question the withholding of this information under 7(E). *Id*., p. 3, DSOMF, p. 104.

**Juan Hurtado-Valencia**

49.     In the Answer to my Complaint, USCIS falsely denies that I submitted a privacy waiver along with my request for records on behalf of Mr. Hurtado.  Answer, ¶101. Ms. Munita's Declaration does not explain the basis of this assertion.  Letter from USCIS to Stevens, September 8, 2019, denying release for **NRC2019603352** on grounds of missing privacy waiver, Ex. 7.

50.     Attached to my Declaration as Exhibit 7 is a true copy of my email. The attachment of the privacy waiver is clearly visible.  Email from Stevens to USCIS, August 24, 2019.  Ex. 8.

51.     USCIS and other agencies of the Department of Homeland Security routinely falsely claim that I have not submitted privacy waivers.  Sometimes they admit this immediately when I reply on email.  On other occasions the agencies simply disregard my valid request.

52.     In her Declaration, Ms. Munita states, "On June 24, 2021, in a gesture of good faith and in an attempt to avoid further litigation, USCIS released 222 pages in full, released 64 pages in part, and withheld 8 pages in full. The FOIA staff informed Plaintiff that the information being withheld was exempt from release under FOIA exemptions (b)(3), (b)(6), (b)(7)(C) and/or (b)(7) (E)."  Munita Decl., ¶24, DSOMF, p. 95.

53.     The letter to which Ms. Munita refers uses the FOIA case number **PPO2021000202**.  It states in part, "This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request received in this office on May 11, 2021 regarding Juan Hurtado Valencia."  Letter from USCIS to Stevens, June 24, 2021, Ex. 9, p. 1.

54.     The letter does not indicate the document is password protected, nor provide a password for documents referenced. Ex. 9.

55.     The file associated with the letter of June 24, 2021 cannot be opened because it is password-protected and I do not have the password.  Screenshot of Interface for USCIS File for Records on Hurtado, July 31, 2022, Ex. 10.

56.     The Vaughn Index for records about Hurtado associated with Ms. Munita's Declaration is captioned "**NRC2019603352**." Munita Decl., Vaughn Index, DSOMF, p. 109.

## Lorenzo Palma

57.     I submitted a request for records associated with Lorenzo Palma on August 11, 2020. Munita Decl., ¶25, DSOMF, p. 90.

58.     According to the interface immediately after submission, the request was assigned **NRC2020120595REQ**.

59.     According to Ms. Munita, the request was assigned **NRC2020117509** to my USCIS account on August 17, 2021.  Munita Decl., ¶27, DSOMF, p. 96.

60.     I have no record of any USCIS case no. for this as **NRC2020117509**.

61.     Ms. Munita's Declaration includes the following footnote: "Because of this request's procedural posture, it is also referred to as NRC2020120595REQ."  Munita Decl., Note 1 to Lorenzo Palma, DSOMF, p. 95.

62.     According to Ms. Munita, on April 14, 2021, USCIS sent me an e-mail notifying me that my "records were available for download."  Munita Decl., ¶28, DSOMF, p. 96.

63.     USCIS frequently sends emails with inaccurate information. For instance, in March, 2021, I wasted substantial time on an email USCIS later confirmed falsely claimed I had responsive documents.   The first email in this thread to me from USCIS arrived on February 26,

2021 and stated: "Your USCIS FOIA/PA request has been processed and has been electronically delivered to the myUSCIS account you created." Email from no-reply-foia@uscis.dhs.gov to Stevens, February 26, 2021.  Ex. 11, p. 9.   I forwarded the email to the USCIS FOIA office (foiapaquestions@uscis.dhs.gov) and wrote replied, "I have no idea to what this email refers. I file numerous FOIA requests via email. What is the case number?"  *Id.*

64.     I received the following reply, "The documents related to this request have been digitally released. To view the Document Library, click on the down arrow next to the gear icon. The documents can be downloaded by selecting the arrow icon or printed using the printer icon." USCIS to Stevens, March 1, 2021, Ex. 11, p. 7.

65.     Several other emails then ensued.  The bottom line: USCIS stated it did not in fact have any new records available and that *my responses were being sent to me via the US Postal Service*.  On March 10, 2021, Sandy Kendall, Government Information Specialist for USCIS stated in an e-mail, "I have searched our system using your name for any potential FOIA requests that might have been registered for digital release via a FIRST account. Of the most recent requests, all were mailed on CD. The most recent request I was able to locate in our system was NRC2020171187 which was mailed on CD to you on February 21,2021. At this time, I am unable to determine why you received the email or what request the email you received would be in relation to. We apologize for any confusion but it appears all A file related FOIA requests have been responded to with a CD mailed via the US Postal Service."  Email from Kendall to Stevens, March 10, 2021, Ex. 11, p. 1.

66.     On April 14, 2021, I received an email from no-reply-foia@uscis.dhs.gov stating that a record associated with my account was available.  Because of the recent correspondence from

Ms. Kendall, I assumed it was another false notification. Email from no-reply-foia@uscis.dhs.gov to Stevens, April 14, 2021. Ex. 12

67.     The USCIS FOIA account closes out registrations if the account is not used and the interface does not allow password reset. For instance, on July 31, 2022, when I attempted a password reset, the first question I was asked was "In what city/town did you meet your spouse?" Screenshot of USCIS password reset page, July 31, 2022. Ex. 13. However, I am not, and have never been, married. I am therefore unable to access records responsive to my request of August 11, 2020.

**Executive Office of Immigration Review ("EOIR")**

68.     The Declaration of Shelley M. O'Hara on behalf of EOIR ("O'Hara Decl.") states that "With respect to 'memoranda ... associated with the system data on these cases', this portion of the request is unclear and therefore, not reasonably described." Id, ¶33.

69.     My original request of July 3, 2020 included a section captioned "BACKGROUND" and referenced a memorandum and report produced pursuant to EOIR and federal courts efforts, respectively, to compile and analyze case data including a specific break-out of data on U.S. citizens in removal proceedings.

70.     My request for data associated with FOIA case 2020-60006 stated, "The public understanding of immigration removal adjudication proceedings, as well as how the government responds in cases where a U.S. citizen may have been mistakenly flagged for immigration removal, will be greatly enhanced by knowledge of these adjournments and their associated cases."

71.     On information and belief, EOIR possesses internal documents on the adjudication of claims of US citizenship responsive to my request not searched for by the FOIA office.

72.     Ms. O'Hara does not indicate that anyone queried EOIR's Office of General Counsel, Office of the Chief Immigration Judge, Office of Policy or any other office reasonably likely to have memoranda or e-mail responsive to data on claims of U.S. citizenship in immigration courts, per my request [see list at SOMF, p. 150, ¶7].

73.     Ms. O'Hara states she only requested information from the Planning, Analysis, and Statistics Division (PASD).  She states that the PASD was the "record custodian most likely to have responsive records." SOMF, p. 156, ¶22.

74.     At no point does Ms. O'Hara aver that the PASD was other offices were not reasonably likely to have responsive records.

75.     Ms. O'Hara states that it would be "unduly burdensome" to task anyone in dozens of immigration courts accessing the CASE database to produce their memoranda or e-mail associated with claims of U.S. citizenship, but she does not claim it would be burdensome to task such a search to high-level agency officials reasonably likely to have these responsive records.

76.     My request was for "all system records pertaining to immigration proceedings with adjournments referencing claims of U.S. citizenship, i.e., code 54..."  O'Hara Decl.  ¶21, SOMF, pp. 156, and see EOIR, Ex. D., DSOMF, p. 173.   My second request sas for "All system records pertaining to all cases terminated at any hearing..." *Id*.

77.     Ms. O'Hara claims that "'immigration court data' cannot possibly refer to appeals data as an Immigration Court is entirely separate from the Board of Immigration Appeals [BIA]..." O'Hara Decl., ¶36,  DSOMF, p. 163.

78.     Ms. O'Hara's description of EOIR's case management contradicts this analysis.  She

states: "Case Access System for EOIR (CASE) is an electronic case manager for the Immigration

Judges, the Board of Immigration Appeals, and staff to support case management. CASE is

designed to manage all aspects of a Respondent's case, including: dispositions, Respondent

information, attorney representation, as well as a history of rulings on a case."  O'Hara Decl.,

¶15, SOF, pp. 153-54.

79.      Ms. O'Hara does not dispute that BIA rulings, remands, and adjudications responsive to

these remands are part of the system records "pertaining to immigration proceedings."

80.     In an e-mail with a subject-heading "18 years" sent to a listserve of which I am a member,

an experienced immigration attorney and Editor-in-Chief of the Bender's Immigration Bulletin,

Daniel Kowalski stated:

> 18 years ago today, July 21, 2004, ICE put my USC (native-born) client into (non-
> detained) removal proceedings. We are now at the BIA for the 4th time. At the IJ
> level, I won the first two rounds, lost the third, and won the last round...the IJ ordered
> termination with prejudice...again. ICE appealed, again. Really gettng tired of this
> nonsense. There is a structural flaw in the INA if the BIA can evade judicial review by
> remanding the case back down to the IJ, over and over again, forever. And as for
> timing on the last round, the BIA briefing closed in April 2021, well over a year ago.
> (Email from Daniel Kowalski to listserves of immigration law professors and clinics,
> July 21, 2022, Ex. 14.)

81.     Data on remands responsive to my request are of great importance to Congress and the

courts.

82.     In her Declaration, Ms. O'Hara provides a 10-page narrative about the data and codes

produced that did not accompany the original production.  However, my research assistant Grant

Lee and I still do not have information sufficient to understand two codes: "'ZERO BOND' as it

appears in table 80000" and "'DD Appeal' as it appears in table 80400 under column C

'strDescription'."  Declaration of Grant Li, July 29, 2022, ¶¶11-12, Ex. 14.

## Department of Agriculture

83.     In the 1940s, the Department of Agriculture issued reports and bulletins on immigrant labor, including from the Bracero program, according to Erasmo Gamboa, *Mexican Labor and World War II* (University of Washington Press, 2003).  Screenshots of index and reference to Department of Agriculture reports on Mexican immigrant agriculture workers, Ex. 15.

84.     On information and belief, Mr. Lazaro Palma was among those whom would have been studied by this office of the Department of Agriculture.

85.     The Declaration does not acknowledge the agency efforts to recruit and document Mexican immigrant farm workers during World War Two and inaccurately suggests this did not occur.  Decl. of Alexis Graves, ¶7, DSOMF, p. 220.

86.     The Declaration does not consider offices where the agency maintains records from World War Two on the Bracero worker participation or immigration workforce participation in U.S. agriculture.

## Department of State

87.     I have received no records from the Department of State responsive to my request.

88.     The Declaration of Susan Weetman "Weetman Decl.") references "Attachment 5" as a communication to me that the agency had found additional responsive records and were releasing six in part and six in full.  Weetman Decl., ¶9, DSOMF, p. 229.  However, there is no Attachment 5 to the Weetman Decl.

89.     A search of my e-mail from state.gov associated with my request for records on Alma Bowman shows nothing after after April 19, 2021. Email search, jacqueline-stevens@northwestern.edu, Outlook,  Ex. 16.

90.     The claim that there is a document from 1977 associated with a passport fraud investigation about Alma Bowman Weetman Decl., (¶¶30-31) is materially relevant to her claim of U.S. citizenship and knowledge of U.S. policies affecting citizenship more broadly.  At the time of the alleged fraud investigation, Ms. Bowman was 10 years old and the U.S. government had a discriminatory policy of discouraging U.S. citizenship claims of children born to women married to U.S. soldiers, as was the case for Alma.


     The above is true and correct to the best of my knowledge and recollections.

Dated: August 1, 2022



_____

JACQUELINE STEVENS

601 University Place

Second Floor, Political Science Department

Evanston, Illinois  60208

(847) 467-2093

jacqueline-stevens@northwestern.edu

# EXHIBIT 1

## Enforcement and Removal Operations and All System Records for Manuel Valdez Soto #036-661-0224

Jacqueline Stevens <jacqueline-stevens@northwestern.edu>

Wed 3/15/2017 2:53 PM

To: ice-foia@dhs.gov <ice-foia@dhs.gov>

To Whom It May Concern,

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for all system records pertaining to Manuel Valdez Soto who appears to be a U.S. citizen.  He was born on October 12, 1967.

Please note that in addition to the system records I am also requesting all correspondence including but not limited to email and attachments, faxes, notes, and all other records associated with *communications with Citizenship and Immigration Services* *by the office of DHS trial attorneys* or other employees of the ICE Enforcement and Removal Operations about any N600 applications or any other correspondence with ICE HQ about Mr. Valdez's claim to US citizenship.

I also am requesting:

1)  All email and associated attachments sent to and from the ICE US Citizenship Drop Box email address at ICE Headquarters pertaining to Mr. Valdez's assertion of US citizenship.

2)  Mr. Valdez's records of purchases at the commissary.

3)  Records of Mr. Valdez's work details, evaluations, and payment.

4)  All ERO and predecessor component orders, requests, e-mail and all other system records associated with Mr. Valdez's custody in Texas state jails or prisons awaiting these facilities were told to hold him pending his transfer into ICE custody.

I am requesting an expedited response to this request. Please note that the Houston immigration courts have on several occasions detained U.S. citizens and that ICE custody of US citizens is of great interest to the public, as evidenced in extensive national media coverage of these events, many first reported on my blog "States Without Nations." For recent national coverage of another U.S. citizen held at CCA, please see:
http://www.npr.org/sections/thetwo-way/2016/12/22/504031635/you-say-you-re-an-american-but-what-if-you-had-to-prove-it-or-be-deported
 My research on this topic has been reported in The New Yorker, The New York Times, NPR and numerous other national and local media outlets.

 Any delay in a response to this request defeats the ability of the public to hold ICE accountable in real time and allows repeated excuses that a problem is fixed when it demonstrably persists.  I believe that Mr. Momo's personal plight at the moment and the public's demonstrated

interest in ICE custody of U.S. citizens warrants an expedited response.

As I will be using this information for my research, teaching, and journalism, and will receive no financial compensation I am requesting a fee waiver.

I am attaching Mr. Valdez's privacy waiver authorizing release of this information to me under the Freedom of Information/Privacy Act.  Please note that this also includes his certification of his identity.

Many thanks for your assistance with this request.  If you have any questions, please feel free to contact me here or by
phone at 847-467-2093.

Sincerely,
--
Jacqueline Stevens
Professor
Political Science and Legal Studies Board
Northwestern University

Director
Deportation Research Clinic
Buffett Center for International and Comparative Studies
http://www.cics.northwestern.edu/programs/deportationresearch/

phone 847-467-2093
fax  847-491-8985

Mail
601 University Place
Department of Political Science
Northwestern University
Evanston, IL  60208

http://www.jacquelinestevens.org
http://stateswithoutnations.blogspot.com

# EXHIBIT 2

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

### 16001.2: Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

| | |
|---|---|
| **Issue Date:** | November 10, 2015 |
| **Effective Date:** | November 10, 2015 |
| **Superseded:** | ICE Policy No. 16001.1: Superseding Guidance on Reporting and Investigating Claims to United States Citizenship (Nov. 19, 2009). |

**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.** This Directive establishes ICE policy and procedures for ensuring that the potential U.S. citizenship of individuals encountered by U.S. Immigration and Customs Enforcement (ICE) officers, agents, and attorneys is immediately and carefully investigated and analyzed. The Immigration and Nationality Act of 1952, as amended (INA), sets forth the parameters for U.S. citizenship by virtue of birth in the United States. Additionally, the INA and various related statutes codify numerous avenues by which an individual may derive, acquire, or otherwise obtain U.S. citizenship other than through birth in the United States. As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U.S. citizen. While performing their civil immigration enforcement duties, ICE officers, agents, and attorneys may encounter individuals who are not certain of their citizenship status, who claim to be U.S. citizens, and/or for whom there are indicia warranting further examination to determine whether they may be U.S. citizens.

2. **Policy.** It is ICE policy to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE. ICE officers, agents, and attorneys should handle these matters with the utmost care and highest priority, recognizing that, while some cases may be easily resolved, many may require additional investigation and substantial legal analysis, particularly in light of the complexity of U.S. citizenship and nationality law.

   ICE personnel must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship, as well as when certain indicia of potential U.S. citizenship, as identified in this Directive, are present in a case even if the individual does not affirmatively make a claim to U.S. citizenship. In all situations where an individual's potential U.S. citizenship requires further investigation, Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI) personnel must consult with the Office of the Principal Legal Advisor's (OPLA) local Office of the Chief Counsel (OCC), as prescribed in this Directive.

**3.** **Definitions.** The following definitions apply for purposes of this Directive only.

**3.1.** **Indicia of Potential U.S. Citizenship.** Circumstances that tend to indicate that an individual may be a U.S. citizen. Indicia are not conclusive evidence that the individual is a U.S. citizen but factors that trigger the need for further investigation. With respect to individuals encountered by ICE, the existence of any of the following factors should lead to further investigation of the individual's U.S. citizenship:



**3.2    Individual Encountered by ICE.** An individual who is:

1) Arrested and taken into ICE custody pursuant to the agency's civil immigration authorities, including those released from such custody pending a decision on removal or execution of a removal order;

2) Subject to, or may become subject to, a request made by ICE that another law enforcement agency continue to hold the individual for up to 48 hours following the completion of his or her criminal custody, i.e., an "immigration detainer;"[1] and/or

3) In proceedings before the Executive Office for Immigration Review (EOIR) or administrative removal proceedings before ICE, including but not limited to pursuant to sections 217, 235, 238(b), or 241(a)(5) of the INA.

**3.2.    Probative Evidence of U.S. Citizenship.** A unique policy standard adopted by ICE meaning that the evidence before the agency tends to show that the individual may, in fact, be a U.S. citizen. U.S. citizenship need not be shown by a preponderance of the evidence for the agency to find that there is some probative evidence of U.S. citizenship.

**4.    Responsibilities.**

**4.1.    ERO Officers, HSI Agents, and OCC Attorneys** have responsibilities under Section 5.1 of this Directive.

**4.2.    ERO Field Office Directors (FODs), HSI Special Agents in Charge (SACs), and OPLA Chief Counsels** are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) prescribed in this Directive.

**4.3.    FODs** are responsible for ensuring that all state and local officers with delegated immigration authority pursuant to INA § 287(g) within their area of responsibility have the training and oversight necessary to understand and adhere to this Directive, and thoroughly investigate all U.S. citizenship claims made by individuals encountered by 287(g)-designated officers.

**4.4.    Headquarters (HQ) OPLA, ERO, and HSI** have responsibilities under section 5.1(3). (Headquarters Review).

**4.5.    The Executive Associate Directors for ERO and HSI, and the Principal Legal Advisor**, or their designees, are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) of this Directive.

---

[1] This includes individuals subject to the former Form I-247 (Immigration Detainer – Notice of Action), Form I-247D (Immigration Detainer – Request for Voluntary Action), Form I-247X (Request for Voluntary Transfer) when this form requests detention rather than simply notification, and/or any successor form serving the same or substantially similar process.

**5.**     **Procedures/Requirements.** An ICE officer, agent or attorney must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship or, even in the absence of such a claim, when indicia of potential U.S. citizenship are present in a case. The ICE Directorate that first encounters the individual is generally responsible for identifying indicia of potential U.S. citizenship.

**5.1.**     **Procedures for Investigating and Assessing Potential U.S. Citizenship.**

1) **Factual Examination.** The assessment of potential U.S. citizenship under this Directive must include a factual examination and a legal analysis and shall include a check of all available DHS data systems and any other reasonable means available to the officer. In general, the factual examination should be conducted by the ICE operational Directorate (ERO or HSI) that first encountered the individual. In cases where the OCC first encounters the individual, ERO should generally conduct the factual examination in coordination with the OCC.





2) **Preparing and Submitting Memorandum.** After the factual examination is completed, ERO or HSI (whichever conducted the factual examination) and the relevant OCC must jointly prepare and submit a memorandum for HQ review, using as a guide the attached HQ-approved template, which assesses the claim and recommends a course of action.

   a) Absent extraordinary circumstances, this memorandum must be submitted no more than one business day from the time ERO, HSI, or OPLA first becomes aware of a claim or indicia of potential U.S. citizenship if the individual is subject to an immigration detainer or is detained in ICE custody. In all other cases, the memorandum must be submitted as promptly as practicable.

   b) For purposes of such memoranda, the legal analysis must indicate whether, in the OCC's view:

      1) The evidence in the case strongly suggests that the individual is a U.S. citizen or his or her claim to U.S. citizenship is credible on its face;

      2) Some probative evidence indicates that the individual may be a U.S. citizen but the evidence is inconclusive; or

      3) No probative evidence indicates that the individual is a U.S. citizen.

   c) The memorandum must be clearly annotated as containing pre-decisional, privileged attorney-client communication, attorney work product, and sensitive personally identifiable information.

   d) Upon completion, the memorandum must be elevated via e-mail to the HQ OPLA Immigration Law and Practice Division at                              and either the HQ ERO Assistant Director for Field Operations at                              or to the HQ HSI Domestic Operations Manager assigned responsibility for the relevant SAC office, as appropriate.

   e) Any significant change in circumstances in a case elevated to HQ should be reported in the same manner as outlined in the preceding subparagraph, as well as

to any previously assigned HQ points of contact, as an update to the original memorandum.

3) **Headquarters (HQ) Review.**

a) HQ OPLA and either HQ ERO or HQ HSI will respond to the field with a decision on the recommendation within one business day of receipt of the memorandum by detained claimants and individuals subject to an immigration detainer. In all other cases a decision will be made as promptly as practicable.

4) **Detainer/Custody Determination.**

a) In those cases involving individuals who fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive (cases involving strong/facially credible or probative evidence of U.S. citizenship):

1) ICE should not lodge an immigration detainer against or arrest the individual.

2) If ICE has already lodged an immigration detainer against the individual, it should be immediately cancelled.

3) If the individual is already in ICE custody, he or she should be immediately released.

4) If the individual has been released from ICE custody on conditions, those conditions should be re-evaluated in consultation with OPLA.

b) Where the field's initial recommendation to HQ is that an individual falls within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive, it is not necessary to await HQ concurrence before cancelling an immigration detainer, releasing the individual from custody, or terminating conditions of release.

c) On a case-by-case basis and in consultation with OPLA, an individual determined by ICE to fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive may be placed in removal proceedings on EOIR's non-detained docket to more conclusively resolve his or her immigration and citizenship status if reasons remain to believe that he or she is an alien present in the United States in violation of law.

d) Where no probative evidence of U.S. citizenship exists (section 5.1(2)(b)(3) of this Directive) and probable cause exists that the individual is a removable alien, it is permissible to lodge an immigration detainer in the case, arrest the individual, and/or process the individual for removal.

e) In any case in which there is uncertainty about whether the evidence is probative of U.S. citizenship, ICE should not detain, arrest, or lodge an immigration

detainer against the individual and should cancel any immigration detainer already lodged by ICE.

f) Where ICE determines that it will not proceed further with an enforcement action due to the U.S. citizenship claim, the individual should be informed that he or she may attempt to obtain proof of U.S. citizenship by submitting a passport application to the Department of State (http://travel.state.gov/passport) or filing an Application for Certificate of Citizenship, Form N-600, with U.S. Citizenship and Immigration Services (www.uscis.gov/n-600).

5) **Case Management.**

a) ICE officers and agents will make a notation in the appropriate database(s) (e.g., ENFORCE Alien Booking Module and/or Alien Removal Module), and place a copy of the memorandum and resulting decision, properly marked as containing attorney work product, attorney-client communication, and sensitive personally identifiable information in the individual's A-file, if one already exists.

b) ICE attorneys will save the memorandum in the PLAnet case management system and document the resulting HQ decision and other information about the claim by completing the "USC Claims" section in PLAnet.

6. **Recordkeeping.** Records generated pursuant to this directive are maintained in the Alien File, Index, and National File Tracking System of Records, 76 Fed. Reg. 34233 (June 13, 2011), the General Counsel Electronic Management System (GEMS), 74 Fed. Reg. 41914 (August 19, 2009), the Immigration and Enforcement Operational Records (ENFORCE), 75 Fed. Reg. 23274 (May 3, 2010), and any other applicable system. The memorandum and resulting HQ decision will be also be saved in PLAnet.

7. **Authorities/References.**

7.1. Immigration and Nationality Act (INA) § 101(b) and (c).

7.2. INA §§ 301 - 303.

7.3. INA §§ 306 - 309.

7.4. INA § 316.

7.5. INA §§ 319 - 320.

7.6. INA § 322.

7.7. INA §§ 328 - 329.

**7.8.** Section 303 of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub. L. No. 94-241, 90 Stat. 263, 266 (set out as a note to 48 U.S.C. § 1801).

**8.** **Attachments.**

**8.1.** Sample – USC Claims Memorandum Template.[2]

**9.** **No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create or diminish any rights, substantive or procedural, enforceable at law or equity by any party in any criminal, civil, or administrative matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of the Department of Homeland Security.

Sarah R. Saldaña
**Director**
**U.S. Immigration and Customs Enforcement**

---

[2] This template may be periodically updated by OPLA, as new legal and policy developments warrant. In such circumstances, OPLA will work with the Office of Policy to have the updated template posted to the ICE Policy Manual online environment.

# EXHIBIT 3

**Fw: Request for ROP and Audio Recording for Manuel Valdez Soto #036-661-024**

## Jacqueline Stevens <jacqueline-stevens@northwestern.edu>

Wed 3/15/2017 2:49 PM

To: ice-foia@dhs.gov <ice-foia@dhs.gov>

📎 1 attachments (47 KB)

Valdez-Sota-PrivacyWaiver.pdf;

please withdraw this request; it is sent inadvertently to your agency. a correct request
for records from this subject will follow. I apologize for the confusion.
Jackie Steves

Professor
Political Science and Legal Studies
Northwestern University

Director
Deportation Research Clinic
Buffett Institute
http://buffett.northwestern.edu/programs/deportationresearch/

office phone: 847-467-2093

mail
601 University Place
Political Science Department
Evanston, IL  60208

http://jacquelinestevens.org
http://stateswithoutnations.blogspot.com

_____
From: Jacqueline Stevens
Sent: Wednesday, March 15, 2017 3:46 PM
To: ice-foia@dhs.gov
Subject: Request for ROP and Audio Recording for Manuel Valdez Soto #036-661-024

To Whom It May Concern,

This letter constitutes a request under the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552, for all system records pertaining to Manuel Valdez Soto. His
alien number is 036-661-024.  He was born in Mexico on October 12, 1967.

This request includes but is not limited to all memoranda, notes,
reports, email messages and all other system records or communications
associated with or pertaining to Mr. Valdez generated or received by EOIR.

This also includes the record of proceedings for his immigration hearing(s), as well as any digital or audio recordings of his hearing(s).

And I am requesting all docketing information for Mr. Valez's hearings maintained in the EOIR case locator system.

Mr. Valdez has signed a waiver, including a certificate of identity, allowing me to receive these records. Please find a copy of this waiver attached.

As a scholar, blogger and a writer on immigration law enforcement, I am entitled to a waiver of duplication fees because disclosure of this information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(iii). The disclosure of this information is "likely to contribute significantly to public understanding of the operations or activities of the government" and is "not primarily in the commercial interest of the requester."

My research encompasses instances of immigration misconduct by the U.S. government. My publications have news and educational value and are not for commercial gain.  I recently co-edited the volume *Citizenship In Question: Evidentiary Birthright and Statelessness* (Duke University Press).

I am requesting this response be expedited. These are regular system records and will not pose any burdens on the EOIR to produce. Especially relevant, there is immense public interest in the matter of the wrongful detention and deportation of U.S. citizens, to wit a letter by Assistant Secretary John Morton on this topic responsive to an article based on my research "The Deportation Machine," The New Yorker (April 29, 2013). Please note as well recent NPR coverage of someone who recently proved his U.S. citizenship after being detained through the same processes affecting Mr. Valdez, the subject of this request.
http://www.npr.org/sections/thetwo-way/2016/12/22/504031635/you-say-you-re-an-american-but-what-if-you-had-to-prove-it-or-be-deported
 It is clearly of great importance to the proper functioning of a democracy that Congress and the public obtain real-time information on deportation proceedings involving U.S. citizens. The pending Comprehensive Immigration Reform legislation further underscores the need to expedite release of Mr. Valdez's EOIR file.

If you have any questions, I may be reached by email at jacqueline-stevens@northwestern.edu or by phone at 847-467-2093.

Please send the requested records to this email address or by regular mail to:

Jacqueline Stevens, Department of Political Science, 601 University Place, Northwestern University, Evanston, IL 60208.

Thank you very much for your assistance in this matter.

--
Jacqueline Stevens

Professor
Political Science and Legal Studies Board
Northwestern University

Director
Deportation Research Clinic
Buffett Center for International and Comparative Studies
http://www.cics.northwestern.edu/programs/deportationresearch/

phone 847-467-2093
fax  847-491-8985

Mail
601 University Place
Department of Political Science
Northwestern University
Evanston, IL  60208

http://www.jacquelinestevens.org
http://stateswithoutnations.blogspot.com

# EXHIBIT 4

## RE: Request for ROP and Audio Recording for Manuel Valdez Soto #036-661-024

ICE-FOIA <ICE-FOIA@ice.dhs.gov>

Fri 4/14/2017 9:20 AM

To: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>

Good morning,

You have directed a FOIA request to U.S. Immigration and Customs Enforcement (ICE) seeking either (1) copies of an individual's alien file, or (2) copies of certain documents or other information that is maintained in an individual's alien file.  "Alien files" are maintained by U.S. Citizenship and Immigration Services (USCIS). Accordingly, ICE is routing your FOIA request to USCIS. Upon receipt of your FOIA request, USCIS will provide you with a tracking number and respond directly to your request.

If you have any questions regarding your request, please contact USCIS at the address below:

U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010
Phone: (800) 375-5283
Fax: (816) 350-5785
Email: USCIS.FOIA@uscis.dhs.gov

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182

-----Original Message-----
From: Jacqueline Stevens [mailto:jacqueline-stevens@northwestern.edu]
Sent: Wednesday, March 15, 2017 3:47 PM
To: ice-foia@dhs.gov
Subject: Request for ROP and Audio Recording for Manuel Valdez Soto #036-661-024

To Whom It May Concern,

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for all system records pertaining to Manuel Valdez Soto. His alien number is 036-661-024.  He was born in Mexico on October 12, 1967.

This request includes but is not limited to all memoranda, notes, reports, email messages and all other system records or communications associated with or pertaining

to Mr. Valdez generated or received by EOIR.
This also includes the record of proceedings for his immigration hearing(s), as well as any digital or audio recordings of his hearing(s).

And I am requesting all docketing information for Mr. Valez's hearings maintained in the EOIR case locator system.

Mr. Valdez has signed a waiver, including a certificate of identity, allowing me to receive these records. Please find a copy of this waiver attached.

As a scholar, blogger and a writer on immigration law enforcement, I am entitled to a waiver of duplication fees because disclosure of this information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(iii). The disclosure of this information is "likely to contribute significantly to public understanding of the operations or activities of the government" and is "not primarily in the commercial interest of the requester."

My research encompasses instances of immigration misconduct by the U.S. government. My publications have news and educational value and are not for commercial gain.  I recently co-edited the volume *Citizenship In Question: Evidentiary Birthright and Statelessness* (Duke University Press).

I am requesting this response be expedited. These are regular system records and will not pose any burdens on the EOIR to produce. Especially relevant, there is immense public interest in the matter of the wrongful detention and deportation of U.S. citizens, to wit a letter by Assistant Secretary John Morton on this topic responsive to an article based on my research "The Deportation Machine," The New Yorker (April 29, 2013). Please note as well recent NPR coverage of someone who recently proved his U.S. citizenship after being detained through the same processes affecting Mr. Valdez, the subject of this request.
https://urldefense.proofpoint.com/v2/url?u=http-3A__www.npr.org_sections_thetwo-2Dway_2016_12_22_504031635_you-2Dsay-2Dyou-2Dre-2Dan-2Damerican-2Dbut-2Dwhat-2Dif-2Dyou-2Dhad-2Dto-2Dprove-2Dit-2Dor-2Dbe-2Ddeported&d=DwIFAw&c=yHlS04HhBraes5BQ9ueu5zKhE7rtNXt_d012z2PA6ws&r=CSkbcwI7yUmpQCSc0XdWKHK7fl-OiXR4mtr3VjWPrx8q0pO4CB7B_W2lAXinwcVk&m=LNL1w0zLTj_P085CPWXWAGQ3HPXZ8cb8kkfvWxsdXso&s=yBglzGAdJgCjHI65EbzZds6Cusjb9mID_1vYnTlFFrA&e=
 It is clearly of great importance to the proper functioning of a democracy that Congress and the public obtain real-time information on deportation proceedings involving U.S. citizens. The pending Comprehensive Immigration Reform legislation further underscores the need to expedite release of Mr. Valdez's EOIR file.

If you have any questions, I may be reached by email at jacqueline-stevens@northwestern.edu or by phone at 847-467-2093.

Please send the requested records to this email address or by regular mail to:

Jacqueline Stevens, Department of Political Science, 601 University Place, Northwestern University, Evanston, IL 60208.

Thank you very much for your assistance in this matter.

--
Jacqueline Stevens

Professor
Political Science and Legal Studies Board Northwestern University

Director
Deportation Research Clinic
Buffett Center for International and Comparative Studies
http://www.cics.northwestern.edu/programs/deportationresearch/

phone 847-467-2093
fax  847-491-8985

Mail
601 University Place
Department of Political Science
Northwestern University
Evanston, IL  60208

https://urldefense.proofpoint.com/v2/url?u=http-3A__www.jacquelinestevens.org&
d=DwIFAw&c=yHlS04HhBraes5BQ9ueu5zKhE7rtNXt_d012z2PA6ws&
r=CSkbcwI7yUmpQCSc0XdWKHK7fI-OiXR4mtr3VjWPrx8q0pO4CB7B_W2lAXinwcVk&
m=LNL1w0zLTj_P085CPWXWAGQ3HPXZ8cb8kkfvWxsdXso&
s=6lQaojrvNv5AMB3af44oY9VrhHV743R0kYCwB5HmDl0&e=
https://urldefense.proofpoint.com/v2/url?u=http-
3A__stateswithoutnations.blogspot.com&d=DwIFAw&
c=yHlS04HhBraes5BQ9ueu5zKhE7rtNXt_d012z2PA6ws&
r=CSkbcwI7yUmpQCSc0XdWKHK7fI-OiXR4mtr3VjWPrx8q0pO4CB7B_W2lAXinwcVk&
m=LNL1w0zLTj_P085CPWXWAGQ3HPXZ8cb8kkfvWxsdXso&
s=jNvPj2rxeoxBtuiKN9GE9zBxclDQTFgy0r1x8w1cn74&e=

# EXHIBIT 5

## RE: Request for ROP and Audio Recording for Manuel Valdez Soto #036-661-024

## ICE-FOIA <ICE-FOIA@ice.dhs.gov>

Fri 4/14/2017 9:20 AM
To: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>

Good morning,

You have directed a FOIA request to U.S. Immigration and Customs Enforcement (ICE) seeking either (1) copies of an individual's alien file, or (2) copies of certain documents or other information that is maintained in an individual's alien file.  "Alien files" are maintained by U.S. Citizenship and Immigration Services (USCIS). Accordingly, ICE is routing your FOIA request to USCIS. Upon receipt of your FOIA request, USCIS will provide you with a tracking number and respond directly to your request.

If you have any questions regarding your request, please contact USCIS at the address below:

U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010
Phone: (800) 375-5283
Fax: (816) 350-5785
Email: USCIS.FOIA@uscis.dhs.gov

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182

-----Original Message-----
From: Jacqueline Stevens [mailto:jacqueline-stevens@northwestern.edu]
Sent: Wednesday, March 15, 2017 3:47 PM
To: ice-foia@dhs.gov
Subject: Request for ROP and Audio Recording for Manuel Valdez Soto #036-661-024


To Whom It May Concern,

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for all system records pertaining to Manuel Valdez Soto. His alien number is 036-661-024.  He was born in Mexico on October 12, 1967.

This request includes but is not limited to all memoranda, notes, reports, email messages and all other system records or communications associated with or pertaining

to Mr. Valdez generated or received by EOIR.
This also includes the record of proceedings for his immigration hearing(s), as well as any digital or audio recordings of his hearing(s).

And I am requesting all docketing information for Mr. Valez's hearings maintained in the EOIR case locator system.

Mr. Valdez has signed a waiver, including a certificate of identity, allowing me to receive these records. Please find a copy of this waiver attached.

As a scholar, blogger and a writer on immigration law enforcement, I am entitled to a waiver of duplication fees because disclosure of this information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(iii). The disclosure of this information is "likely to contribute significantly to public understanding of the operations or activities of the government" and is "not primarily in the commercial interest of the requester."

My research encompasses instances of immigration misconduct by the U.S. government. My publications have news and educational value and are not for commercial gain.  I recently co-edited the volume *Citizenship In Question: Evidentiary Birthright and Statelessness* (Duke University Press).

I am requesting this response be expedited. These are regular system records and will not pose any burdens on the EOIR to produce. Especially relevant, there is immense public interest in the matter of the wrongful detention and deportation of U.S. citizens, to wit a letter by Assistant Secretary John Morton on this topic responsive to an article based on my research "The Deportation Machine," The New Yorker (April 29, 2013). Please note as well recent NPR coverage of someone who recently proved his U.S. citizenship after being detained through the same processes affecting Mr. Valdez, the subject of this request.
https://urldefense.proofpoint.com/v2/url?u=http-3A__www.npr.org_sections_thetwo-2Dway_2016_12_22_504031635_you-2Dsay-2Dyou-2Dre-2Dan-2Damerican-2Dbut-2Dwhat-2Dif-2Dyou-2Dhad-2Dto-2Dprove-2Dit-2Dor-2Dbe-2Ddeported&d=DwIFAw&c=yHlS04HhBraes5BQ9ueu5zKhE7rtNXt_d012z2PA6ws&r=CSkbcwI7yUmpQCSc0XdWKHK7fI-OiXR4mtr3VjWPrx8q0pO4CB7B_W2lAXinwcVk&m=LNL1w0zLTj_P085CPWXWAGQ3HPXZ8cb8kkfvWxsdXso&s=yBglzGAdJgCjHI65EbzZds6Cusjb9mID_1vYnTlFFrA&e=
 It is clearly of great importance to the proper functioning of a democracy that Congress and the public obtain real-time information on deportation proceedings involving U.S. citizens. The pending Comprehensive Immigration Reform legislation further underscores the need to expedite release of Mr. Valdez's EOIR file.

If you have any questions, I may be reached by email at jacqueline-stevens@northwestern.edu or by phone at 847-467-2093.

Please send the requested records to this email address or by regular mail to:

Jacqueline Stevens, Department of Political Science, 601 University Place, Northwestern University, Evanston, IL 60208.

Thank you very much for your assistance in this matter.

--
Jacqueline Stevens

Professor
Political Science and Legal Studies Board Northwestern University

Director
Deportation Research Clinic
Buffett Center for International and Comparative Studies
http://www.cics.northwestern.edu/programs/deportationresearch/

phone 847-467-2093
fax  847-491-8985

Mail
601 University Place
Department of Political Science
Northwestern University
Evanston, IL  60208

https://urldefense.proofpoint.com/v2/url?u=http-3A__www.jacquelinestevens.org&
d=DwIFAw&c=yHlS04HhBraes5BQ9ueu5zKhE7rtNXt_d012z2PA6ws&
r=CSkbcwI7yUmpQCSc0XdWKHK7fI-OiXR4mtr3VjWPrx8q0pO4CB7B_W2lAXinwcVk&
m=LNL1w0zLTj_P085CPWXWAGQ3HPXZ8cb8kkfvWxsdXso&
s=6lQaojrvNv5AMB3af44oY9VrhHV743R0kYCwB5HmDl0&e=
https://urldefense.proofpoint.com/v2/url?u=http-
3A__stateswithoutnations.blogspot.com&d=DwIFAw&
c=yHlS04HhBraes5BQ9ueu5zKhE7rtNXt_d012z2PA6ws&
r=CSkbcwI7yUmpQCSc0XdWKHK7fI-OiXR4mtr3VjWPrx8q0pO4CB7B_W2lAXinwcVk&
m=LNL1w0zLTj_P085CPWXWAGQ3HPXZ8cb8kkfvWxsdXso&
s=jNvPj2rxeoxBtuiKN9GE9zBxclDQTFgy0r1x8w1cn74&e=

# EXHIBIT 6

**N600 govt. exhibit for Nathan Afinson aka Alfonso Chavez Rodriguez and records for US citizen mother**

Deportation Research Clinic <drc@northwestern.edu>
Thu 9/19/2019 5:41 PM
To: uscis.foia@uscis.dhs.gov <uscis.foia@uscis.dhs.gov>

📎 3 attachments (2 MB)
NathanPrivacyWaiver.PDF; ChavezN600DenialRefGovtExhibit.png; JovitaChavezWaiver.jpeg;

To Whom It May Concern,

I write under the Freedom of Information/Privacy Act to obtain all pages withheld and information redacted from the files released to me for Nathan I. Anfinson, aka Alfonso Chavez based on a b(6) exemption for which the personal information pertained to his mother, Jovita Elena Chavez. (Mr. Anfinson was adopted and at that time his legal name was changed from Alfonso Chavez Rodriguez.)

I am attaching a waiver from Mr. Anfinson and his mother, Ms. Chavez. (Previously I had attached only the waiver from Mr. Anfinson.) The prior case resulting in records released to me from USCIS was NRC2018181013 and APP2019500445.)

I am requesting USCIS produce **immediately** the "Narrative Record of Sworn Statement of applicant's mother" referenced on October 12, 1984 on page 8 of 17 of the INS review of the N600 application submitted by Ms. Chavez on behalf of her son as "Govt. Ex. 1." Please see attached image.

(The response of July 2, 2019 includeshigh school transcripts indicating a home address and the physical presence of Nathan's mother, Jovita, in the United States prior to Nathan's birth.)

I also am requesting all other system records for Ms. Chavez maintained by USCIS.

The prior decision by USCIS to withhold documents that were submitted on Mr. Anfinson's behalf to an immigration court by his own attorney has led already to a delay in the proper review of his claim to U.S. citizenship. Deporting U.S. citizens is unlawful and puts at risk all U.S. citizens, who have demonstrated a great deal of interest in the U.S. government's actions in this regard. The handling of my requests for the records of Mr. Anfinson violates not only the 5 USC 552 but also the Administrative Procedures Act.

Mr. Anfinson obviously needs all documents under USCIS control associated with evidence of his U.S. citizenship; the removal of immigration courts from jurisdiction under the APA is because of plenary authority for claims of aliens, not U.S. citizens. When USCIS fails to produce evidence of US citizenship this is a serious due process violation. Related to this I am also requesting all documents pertaining to Mr. Anfinson under USCIS control and referred to ICE as a matter of alleged discretion and in violation of the Privacy Act. USCIS has no legal authority to withhold or delay from release to me the the records of Mr. Anfinson or Ms. Chavez or their personal records. Their rights to their records are from the Privacy Act.

I am requesting a response on an expedited basis due to the high level of public interest in the deportation of U.S. citizens and Mr. Anfinson's and his mother's current distress about his deportation, I am also requesting a waiver of all fees. I will not be using the records for a commercial

purpose but for my scholarship, journalism, and teaching.

In support of the request for the expedited review and also the waiver, please see links to my own scholarship, articles, and interviews on U.S. citizens detained and deported available here:https://buffett.northwestern.edu/programs/deportationresearch/clinic-in-the-news.html.

Thank you for your assistance with this matter.  If you have any questions, please feel free to contact me at 847-467-2093.

Jacqueline Stevens
Professor
Founding Director
Deportation Research Clinic
Northwestern University
https://buffett.northwestern.edu/programs/deportationresearch/

mail address
601 University Place
Political Science Department
Evanston, IL 60208

# EXHIBIT 7



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*National Records Center*
P.O. Box 648010
Lee's Summit, MO 64064-8010

**U.S. Citizenship
and Immigration
Services**

NRC2019603352

September 8, 2019

Jacqueline Stevens
Northwestern University
Political Science Department
601 University Place
Evanston, IL 60208

*Dear Jacqueline Stevens:*

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request received in this office on August 27, 2019 regarding Juan Hurtado Valencia.

After carefully considering your request, we must deny it in its entirety pursuant to 5 U.S.C. § 552 (b)(6).

Exemption (b)(6) permits the government to withhold all information about individuals in personnel, medical and similar files where the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, drivers' licenses, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.

In order to obtain these records your request must demonstrate one or more of the following criteria:

- Written authorization from the individual(s) permitting disclosure of the records to you, which consists of a written statement from the records' subject(s) stating his/her full name, current address, and date and place of birth. Additionally, the written statement must be signed by the records' subject(s) and the signature must either be notarized or signed under penalty of perjury;
- Proof of parentage with the parent's verification of identity if the subject of record is a minor at the time of the request;
- Proof of court-appointed guardianship with the guardian's verification of identity;
- Proof that the subject(s) of your request is deceased; or
- A clear demonstration that the public interest in disclosure outweighs the personal privacy interest(s) of the individual(s) and that significant public benefit would result from the disclosure of the requested records.

Your request did not satisfy any of the above criteria. Where a FOIA requester seeks information about individuals in personnel, medical, and similar files FOIA Exemption 6 protects from disclosure information that, if released, would constitute a clearly unwarranted invasion of personal privacy. To determine whether the disclosure of personal information would constitute an unwarranted invasion of personal privacy, Exemption 6 requires the government to balance the privacy interests of individuals that would be compromised by disclosure of government records about them against the public interest in release of the records. The only relevant public interest to be considered is the extent to which the requested information sheds light on the agency's performance of its statutory duties. Where the privacy interest outweighs the public, the information is protected from disclosure. In the absence of written authorization permitting disclosure of the records to you, proof that the subject is decease, or a demonstration of a public interest that would outweigh the subject's privacy interest, you are not entitled to the requested records under the FOIA.

NRC2019603352
Page 2

You have the right to file an administrative appeal within 90 days of the date of this letter. By filing an appeal, you preserve your rights under FOIA and give the agency a chance to review and reconsider your request and the agency's decision. You may file an administrative FOIA appeal to USCIS at: USCIS FOIA/PA Appeals Office, 150 Space Center Loop, Suite 500, Lee's Summit, MO 64064-2139. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you would like to discuss our response before filing an appeal to attempt to resolve your dispute without going through the appeals process, you may contact our FOIA Public Liaison, Jill Eggleston, for assistance at:

U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010
Telephone: (800) 375-5283
E-Mail: FOIAPAQuestions@uscis.dhs.gov

A FOIA Public Liaison is an agency official to whom FOIA requesters can raise concerns about the service the requester has received from the agency's FOIA Office. FOIA Public Liaisons are responsible for assisting in reducing delays, increasing transparency and understanding of the status of requests, and assisting in the resolution of disputes.

If you are unable to resolve your FOIA dispute through our FOIA Public Liaison, the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, offers mediation services to help resolve disputes between FOIA requesters and Federal Agencies. The OGIS does not have the authority to handle requests made under the Privacy Act of 1974. The contact information for OGIS is:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road - OGIS
College Park, MD 20740-6001
Telephone: (202) 741-5770 or (877) 684-6448
Email: OGIS@nara.gov
Website: ogis.archives.gov

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

# EXHIBIT 8

# Juan Guillermo Hurtado Valencia 035-746-571

## Deportation Research Clinic

Sat 8/24/2019 3:15 PM

To: uscis.foia@uscis.dhs.gov <uscis.foia@uscis.dhs.gov>;

📎 1 attachment

PrivacyWaiver_ Juan Hurtado.pdf;

To Whom It May Concern,

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for all system records and all other materials in any medium received or distributed by USCIS pertaining to Juan Guillermo Hurtado Valencia . His date of birth is October 7, 1975. His country of birth is Colombia.  His "alien" number is 035-746-571.

Please note that my request includes but is not limited to all e-mail, memorandums, notes, correspondence, text messages, and archival requests, including information about where his documents and records were being stored.

The time frame of this request is 1976 to present.

I am requesting these records on an expedited basis.  The basis of this request is that Mr. Hurtado was deported in 2008, despite the fact that he was at the time a citizen of the United States.  The government's detention and deportation of US citizens is of great interest to the public, as evidenced in extensive national media coverage of my research on this. Please see: http://www.npr.org/sections/thetwo-way/2016/12/22/504031635/you-say-you-re-an-american-but-what-if-you-had-to-prove-it-or-be-deported.   My research on this topic has been reported in The New Yorker, The New York Times, NPR and numerous other national and local media outlets. You can find more links to these articles here: http://buffett.northwestern.edu/programs/deportationresearch/us_citizens_detained/index.html.

As I will be using this information for my research, teaching, and journalism along the lines indicated above, and will receive no financial compensation I am requesting a fee waiver.

I am attaching Mr. Hurtado's privacy waiver authorizing release of this information to me under the Freedom of Information/Privacy Act.  Please note that this also includes his certification of his

identity.

Many thanks for your assistance with this request.  If you have any questions, please feel free to contact me here or by phone at 847-467-2093.

Jacqueline Stevens
Professor
Founding Director
Deportation Research Clinic
Northwestern University
https://buffett.northwestern.edu/programs/deportationresearch/

mail address
601 University Place
Political Science Department
Evanston, IL 60208

EXHIBIT 9



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*National Records Center*
P.O. Box 648010
Lee's Summit, MO 64064-8010

June 24, 2021

PPO2021000202

Jacqueline Stevens
Political Science Dept.
601 University Place
Evanston, IL 60208

Dear Jacqueline Stevens:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request received in this office on May 11, 2021 regarding Juan Hurtado Valencia.

We have completed the review of all documents and have identified 331 pages that are responsive to your request. Enclosed are 222 pages released in their entirety and 64 pages released in part. We are withholding 8 pages in full. In our review of these pages, we have determined they contain no reasonably segregable portion(s) of non-exempt information. Additionally, we have referred 31 pages in their entirety to Immigration and Customs Enforcement, 4 pages in their entirety to United States Secret Service and some pages in their entirety to another government agency. We have reviewed and have determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552 (b) (3), (b)(6), (b)(7)(c), and (b)(7)(e) of the FOIA.

The following exemptions are applicable:

Exemption (b)(7)(E) of the FOIA provides protection for records or information for law enforcement purposes which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. The types of documents and/or information we have withheld could consist of law enforcement systems checks, manuals, checkpoint locations, surveillance techniques, and various other documents.

Exemption (b)(7)(C) provides protection for personal information in law enforcement records, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. We have withheld information relating to third-party individuals. The types of documents and/or information that we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal.

Exemption (b)(3) permits withholding of records or information if a law specifically exempts the material from disclosure, including the disclosure of which would be detrimental to security of transportation. The statute allows us to withhold this information pursuant to 49 U.S.C. 114(r) of the Aviation and Transportation Security Act.

Exemption (b)(6) permits the government to withhold all information about individuals in personnel, medical and similar files where the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, drivers' licenses, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.

PPO2021000202
Page 2

As a result of discussion between agency personnel and a member of our staff, as a matter of administrative discretion, we are releasing computer codes found on system screen prints previously withheld under exemption b(2). There may be additional documents that contain discretionary releases of exempt information. If made, these releases are specifically identified in the responsive record. These discretionary releases do not waive our ability to invoke applicable FOIA exemptions for similar or related information in the future.

The enclosed record consists of the best reproducible copies available. Certain pages contain marks that appear to be blacked-out information. The black marks were made prior to our receipt of the file and are not information we have withheld under the provisions of the FOIA or PA.

Sincerely,

Terri White
 Acting  Director, FOIA Operations

Enclosure(s)

EXHIBIT 10

Screenshot July 31, 2022

## Password Required
USCIS 2021-06-25 production (re Hurtado Valencia) (002).pdf

## Password required

The document "USCIS 2021-06-25 production (re Hurtado Valencia) (002).pdf" is locked and requires a password before it can be opened.

Password: [                    ]

🔘 Forget password immediately
⚪ Remember password until you log out
⚪ Remember forever

Cancel                    Unlock

# EXHIBIT 11

## RE: USCIS FOIA - Case status change

## FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>

Wed 3/10/2021 10:06 AM

To: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>

I have searched our system using your name for any potential FOIA requests that might have been registered for digital release via a FIRST account. Of the most recent requests, all were mailed on CD. The most recent request I was able to locate in our system was NRC2020171187 which was mailed on CD to you on February 21,2021.

At this time, I am unable to determine why you received the email or what request the email you received would be in relation to. We apologize for any confusion but it appears all A file related FOIA requests have been responded to with a CD mailed via the US Postal Service.

At this time, all FOIA requests located under your name have been responded to. If you wish to attach a PDF copy of the email you received, we may be able to offer further assistance. If you have done this previously, I apologize in advance. In following the lengthy email chain, it appears only a portion copied and pasted into the chain is now available.

We do not have contact information, other than what may be publicly available, for any other agency within the US Government.


Sandy Kendall
Government Information Specialist
FOIA Operations
National Records Center

-----Original Message-----
From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Tuesday, March 09, 2021 5:32 PM
To: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Subject: Re: USCIS FOIA - Case status change

CAUTION: This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Suspicious Email" button to report it as a phishing attempt.


Hi there,
If you could just send as an attachment to this email address whatever you have I would appreciate it.  Other agencies do this all the time.
Also, to clarify, I do not recall stating that the email was for any other account.
I stated that I did not recall any password for this email tied to a USCIS account, and that when I tried the reset using this email address I was asked questions for the reset that were impossible to answer (the place I met my spouse -- I am not married) and blocked out of accessing the account and that no one at the phone number I was instructed to call for assistance has to date actually assisted me.

Also, I received a CD from USCIS for a FOIA I requested via the USCIS email address last week in the mail.  If you will not send me documents by email can  you please send them by snail mail?
Thank you,
Jackie
PS I get that you are confronting what appear to be technical limits in your access to databases.  Your supervisor needs to figure out these problems.  The fact that requesters cannot access their responsive records-- the entire point of the FOIA -- needs to be flagged as a major failing on the part of whatever contractor is handling all this; they should be penalized appropriately.

_____
From: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Sent: Tuesday, March 9, 2021 4:43 PM
To: Jacqueline Stevens
Subject: RE: USCIS FOIA - Case status change

We are trying to assist you with the issues you are experiencing.

You stated the notice was sent to an email different from the one you have associated with your online account. I requested this email to conduct further research but it was not provided.

Until we obtain the requested additional information, this office would be unable to assist you further.

Sandy Kendall
Government Information Specialist
FOIA Operations
National Records Center

-----Original Message-----
From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Tuesday, March 09, 2021 4:40 PM
To: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Subject: Re: USCIS FOIA - Case status change

CAUTION: This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Suspicious Email" button to report it as a phishing attempt.


Your office is in charge of FOIA responses.  If requestors cannot physcially access these responses that is clearly the responsibility of your office.

_____
From: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Sent: Tuesday, March 9, 2021 4:29 PM
To: Jacqueline Stevens
Subject: RE: USCIS FOIA - Case status change

Since FIRST and MyUSCIS are accessed from the same login screen this is why we refer

you to others if you are having password or security question issues as the National Records Center does not have access to this information.

We apologize if it seems we are not trying to assist you but the issues you appear to be experiencing our beyond our control.

Please provide the email address the original notification was sent to and we will attempt to locate the request and search for a resolution to the problem.


Sandy Kendall
Government Information Specialist
FOIA Operations
National Records Center

-----Original Message-----
From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Tuesday, March 09, 2021 3:59 PM
To: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Subject: Re: USCIS FOIA - Case status change

CAUTION: This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Suspicious Email" button to report it as a phishing attempt.


Please see attached information from USCIS stating to contact this email address for problems accessing my FOIA records.
I am preparing for litigation.  I have previously received thousands of pages of documents in the wake of five other FOIA lawsuits for over 40 FOIA cases; my attorneys have been awarded substantial fees.
This is clearly not an expenditure in the interests of justice or the US taxpayers.


_____
From: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Sent: Monday, March 8, 2021 12:35 PM
To: Jacqueline Stevens
Subject: RE: USCIS FOIA - Case status change

When accessing your online account, be sure you are using the same email address used to create the account.  You will need to access your account via first.uscis.gov or myaccount.uscis.gov .

We have no control over your FIRST account https://urldefense.com/v3/__https: //first.uscis.gov /*__;Iw!!Dq0X2DkFhyF93HkjWTBQKhk!HC4NeCcmGr1nzlBWFrufqKm5ZABylWfvib3cUZgIf v91G2Rk6pTcBljNnwAI3c2ucM0ACMX50pUXhAM$  when it pertains to your set up, passwords and security questions.

If you need information about MYUSCIS, a petition or application in process you will need to contact USCIS https://urldefense.com/v3/__https://www.uscis.gov

/__;!!Dq0X2DkFhyF93HkjWTBQKhk!HC4NeCcmGr1nzlBWFrufqKm5ZABylWfvib3cUZgIfv91G2Rk6pTcBljNnwAI3c2ucM0ACMX5g5J-8DA$  or  https://urldefense.com/v3/__https://my.uscis.gov/__;!!Dq0X2DkFhyF93HkjWTBQKhk!HC4NeCcmGr1nzlBWFrufqKm5ZABylWfvib3cUZgIfv91G2Rk6pTcBljNnwAI3c2ucM0ACMX5WCC8O5A$  .

At this time this office can provide no further assistance without NRC control numbers or more detailed information regarding your FOIA requests.

Sandy Kendall
Government Information Specialist
FOIA Operations
National Records Center

-----Original Message-----
From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Friday, March 05, 2021 2:12 PM
To: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Subject: Re: USCIS FOIA - Case status change

CAUTION: This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Suspicious Email" button to report it as a phishing attempt.

I just tried the phone number.  It is an automated system and no one answers.  It refers me to the website.  There is no information on how to access an account.
Please give me immediate access to all of my files responsive to my legal requests.
This is clearly a violation of the APA and the FOIA.

_____
From: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Sent: Wednesday, March 3, 2021 12:02 PM
To: Jacqueline Stevens
Subject: RE: USCIS FOIA - Case status change

Good morning,

At this time our automated system to notify requesters that their digital request is complete does not state the control number for the FOIA request that the email is tied to. We realize this is inconvenient to requesters who have a high volume of FOIA requests and it is something that we are looking at to rectify.

For issues related with your online account, please call the USCIS Contact Center at 1-800-375-5283.

Russell Bronson
Government Information Specialist
FOIA Operations
National Records Center
Immigration Records and Identity Services U.S. Citizenship and Immigration Services

-----Original Message-----
From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Monday, March 01, 2021 4:04 PM
To: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Subject: Re: USCIS FOIA - Case status change

CAUTION: This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Suspicious Email" button to report it as a phishing attempt.


You disregarded my message indicating I cannot access any account associated with the email address to which you sent this notice.  Please note that one of the access questions asked the city where I met my spouse.  I do not have a spouse.
Will you please identify yourself and whether you are paid by the federal govt. or a contractor.
I am preparing another FOIA lawsuit and I would like to add this to the "patterns and practices" of USCIS systematic failure to comply with the FOIA statute.
Any assistance accessing documents USCIS is associating with this email address would be appreciated.
Thank you,
Jackie


_____
From: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Sent: Monday, March 1, 2021 3:39 PM
To: Jacqueline Stevens
Subject: RE: USCIS FOIA - Case status change

If you can send us a list of your requests we can look them up and see which ones have been processes, or use the instructions below and it should allow you to see all requests that have processed.

The documents related to this request have been digitally released.  To view the Document Library, click on the down arrow next to the gear icon.  The documents can be downloaded by selecting the arrow icon or printed using the printer icon.  Please note Adobe Acrobat Reader is required to view the documents. I have attached instructions for you to reference when using our Digital Release system.  Our system archives every 90 days so you will need to expand the date search range to allow all your requests populate onto your FIRST account.  Please use a search range of 01/01/2019 through todays date and you will see all your registered requests.

Thank You,
FOIA/USCIS/DHS
AC


-----Original Message-----

From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Monday, March 01, 2021 3:06 PM
To: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Subject: Fw: USCIS FOIA - Case status change

CAUTION: This email originated from outside of the Federal Government. DO NOT click
links or open attachments unless you recognize and/or trust the sender. Contact the
USCIS Security Operations Center with questions or click the "Report Suspicious Email"
button to report it as a phishing attempt.


One more question:
Can you please sign the email and also indicate if you are employed by USCIS or General
Dynamics.
Thank you,
Jackie

_____
From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Monday, March 1, 2021 3:04 PM
To: FOIAPAQuestions
Subject: Re: USCIS FOIA - Case status change

I cannot access anything because I did not use this interface for the request.
I tried using "password reset" but it asked me security questions I did not recognize,
could not answer, and I do not believe I ever filled out.
Please note that I have never been asked to access documents this way and recently
received documents from USCIS by CD rom.
I have no idea why this unlawful obstrcution to responsive records is occuring.


_____
From: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Sent: Monday, March 1, 2021 2:34 PM
To: Jacqueline Stevens
Subject: RE: USCIS FOIA - Case status change

We are unable to say.

Thank You,
FOIA/USCIS/DHS
AC



-----Original Message-----
From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Monday, March 01, 2021 12:51 PM
To: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Subject: Re: USCIS FOIA - Case status change

CAUTION: This email originated from outside of the Federal Government. DO NOT click
links or open attachments unless you recognize and/or trust the sender. Contact the

USCIS Security Operations Center with questions or click the "Report Suspicious Email" button to report it as a phishing attempt.


I make dozens of requests.  That is why I am asking which one this is.


_____
From: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Sent: Monday, March 1, 2021 12:31 PM
To: Jacqueline Stevens
Subject: RE: USCIS FOIA - Case status change

We cannot say what the Control Number is.


Please provide the subject's first and last name (as listed on request), date of birth, alien number and control number so that we can look up your information in our system.


Thank You,
FOIA/USCIS/DHS
AC


-----Original Message-----
From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Monday, March 01, 2021 8:37 AM
To: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Cc: Caleb Page Young <CalebYoung2022@u.northwestern.edu>
Subject: Re: USCIS FOIA - Case status change

CAUTION: This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Suspicious Email" button to report it as a phishing attempt.


This is not responsive to my question.
This response and protocols violate the Administative Procedure Act.
I need to know the actual case number you are claiming is tied to this email.
Thank you,
Jackie Stevens


_____
From: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Sent: Monday, March 1, 2021 8:14 AM
To: Jacqueline Stevens
Subject: RE: USCIS FOIA - Case status change

        The documents related to this request have been digitally released.  To view the Document Library, click on the down arrow next to the gear icon.  The documents can be downloaded by selecting the arrow icon or printed using the printer icon.  Please note Adobe Acrobat Reader is required to view the documents. I have attached instructions

for you to reference when using our Digital Release system.  Our system archives every 90 days so you will need to expand the date search range to allow all your requests populate onto your FIRST account.  Please use a search range of 01/01/2019 through todays date and you will see all your registered requests.

Thank You,
FOIA/USCIS/DHS
AC

-----Original Message-----
From: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>
Sent: Friday, February 26, 2021 12:54 PM
To: FOIAPAQuestions <foiapaquestions@uscis.dhs.gov>
Subject: Fw: USCIS FOIA - Case status change

CAUTION: This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Suspicious Email" button to report it as a phishing attempt.

I have no idea to what this email refers.  I file numerous FOIA requests via email.  What is the case number?

_____
From: no-reply-foia@uscis.dhs.gov <no-reply-foia@uscis.dhs.gov>
Sent: Friday, February 26, 2021 12:50 PM
To: Jacqueline Stevens
Subject: USCIS FOIA - Case status change

Jacqueline Stevens,

Your USCIS FOIA/PA request has been processed and has been electronically delivered to the myUSCIS account you created.
Please log into your account at https://urldefense.com/v3/__https: //first.uscis.gov__;!!Dq0X2DkFhyF93HkjWTBQKhk!DzuU6Mw4wsBRbbui2LY3BitCmiNGFm A5SgIy2vvtMdyW18lEpIh17YpIMsOpd7soyNlyiYVHxBYHHEY$ <https://urldefense.com /v3/__https: //first.uscis.gov__;!!Dq0X2DkFhyF93HkjWTBQKhk!CpbMqPNAMB7N3SOSbNQ_8ngutj3R7r s5iabvLbq03y8V73DafmNfoBenOPKPx9w2Vl4HmGTAKOZYp9k$> to retrieve, view, and download your responsive records.

If you have troubles logging into your account, please call the USCIS Contact Center toll-free at 800-375-5283.
For people who are deaf, hard of hearing or have a speech disability: TTY 800-767-1833.

Thank you,

Jill A. Eggleston
Director, FOIA Operations

THIS RESPONSE HAS BEEN AUTO GENERATED. PLEASE DO NOT REPLY TO THIS MESSAGE.

EXHIBIT12

Screenshot, July 31, 2022



EXHIBIT 13

**USCIS FOIA - Case status change**

no-reply-foia@uscis.dhs.gov <no-reply-foia@uscis.dhs.gov>
Wed 4/14/2021 3:50 PM
To: Jacqueline Stevens <jacqueline-stevens@northwestern.edu>

Jacqueline Stevens,

Your USCIS FOIA/PA request NRC2020117509 has been processed and has been
electronically delivered to the myUSCIS account you created.
Please log into your account at https://first.uscis.gov to retrieve, view, and download
your responsive records.

If you have troubles logging into your account, please call the USCIS Contact Center
toll-free at 800-375-5283.
For people who are deaf, hard of hearing or have a speech disability: TTY
800-767-1833.

Thank you,

Terri White
Acting Director, FOIA Operations

THIS RESPONSE HAS BEEN AUTO GENERATED. PLEASE DO NOT REPLY TO THIS
MESSAGE.

EXHIBIT 14

## [immprof] 18 years

'Dan Kowalski' via ImmProf <immprof@lists.ucla.edu>

Thu 7/21/2022 4:37 PM

To: ICLINIC@LIST.MSU.EDU <ICLINIC@LIST.MSU.EDU>;UCLA immprof
<immprof@lists.ucla.edu>;paulschmidt293 <paulschmidt293@gmail.com>;Jeffrey Chase
<jeffchase99@gmail.com>;ICLINIC@LIST.MSU.EDU <ICLINIC@LIST.MSU.EDU>

18 years ago today, July 21, 2004, ICE put my USC (native-born) client into (non-detained) removal proceedings. We are now at the BIA for the 4th time. At the IJ level, I won the first two rounds, lost the third, and won the last round...the IJ ordered termination with prejudice...again. ICE appealed, again. Really getting tired of this nonsense. There is a structural flaw in the INA if the BIA can evade judicial review by remanding the case back down to the IJ, over and over again, forever. And as for timing on the last round, the BIA briefing closed in April 2021, well over a year ago.

No need to reply, just venting....

Daniel M. Kowalski
Editor-in-Chief
Bender's Immigration Bulletin (LexisNexis)

cell/text/Signal (512) 826-0323
@dkbib on Twitter
dan@cenizo.com
Free Daily Blog: www.bibdaily.com

--
To unsubscribe from this group and stop receiving emails from it, send an email to
immprof+unsubscribe@lists.ucla.edu.

EXHIBIT 15

ultimate say over the imported men. The abuses of the first bracero program stood to be repeated, but this time on a much larger scale, because more Mexican men were involved over much of the country and for a longer period of time.

Perhaps worse, few individuals in the Northwest, outside of the officials in the bracero program, camp managers, and farmers, ever knew about the experiences and hardships of the Mexican men. Farm labor in the Northwest, in contrast with that in California, was not politicized or publicized. This region lacked a Carey McWilliams, Ernesto Galarza, Paul S. Taylor, or John Steinbeck. In this respect, the braceros were truly dehumanized. Most persons remain ignorant of the vital contribution of these Mexican men.

Galarza, *Merchants of Labor*, p. 53. The precise figure was 46,954 and it was compiled from a series of mimeographed monthly farm labor reports issued between June 30, 1943, and Dec. 31, 1947, by the U.S. Department of Agriculture. These reports were organized by state and included the total number of imported farm workers, including Mexicans, Canadians, Jamaicans, and Bahamians.

These reports were issued by the Department of Agriculture's Bureau of Agricultural Economics until Feb. 1946, when they were prepared by the department's Office of Production and Management Administration.

Farm Labor Supervisor Annual Report, 1944, Farm Labor Program, Box 23, Idaho-Iowa, p. 13, RG33, NA.

*Northwest Farm News*, May 16, 1944.

Arthur Kulin, Specialist, Record of County Visit, Yakima, King, Aug. II, 1943, EFLR, WSUA (Specialist, Record of County Visit hereafter cited as Visitation Report, followed by name, location, date).

"Mexican National Transportation Orders, Workers Delivered and Prospective Delivery Schedule for Mexican Workers by Employing Groups as of November 30, 1943," Department of State General Records, Record Group 59, State Decimal File, 1943–1944, Folder: 263, National Archives (Department of State General Records hereafter cited as RG59, NA).

*Northwest Farm News*, Feb. 3, 1944.

Smith, "Farm Workers from Mexico," p. 12.

*Yakima Daily Republic*, Apr. 27, 1943.

Letter, Mar. 26, 1943, R. L. Webster, Assistant to Secretary of Agriculture, to Charles C. Teague, Box 927, File: Agriculture, GCRG16, NA.

EXHIBIT 16

Email search August 1, 2022, jacqueline-stevens@northwestern.edu

