UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 2232 |
| v. | ) | |
| | ) | Judge Tharp |
| U.S. IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Nothing in plaintiff Jacqueline Stevens's response memorandum presents a reason to deny summary judgment. The agencies have conducted adequate searches for responsive records and have not improperly withheld any material. Summary judgment for the agencies is appropriate.

**Argument**

The agencies are entitled to summary judgment in their favor. They have conducted adequate searches for records responsive to Stevens's requests and produced the responsive records. They have properly withheld certain material that FOIA exempts from disclosure. And for some of the requests at issue, Stevens did not exhaust her administrative remedies, as she needed to do before filing suit.

**I.    Adequate Searches**

As explained in the agencies' opening memorandum, all seven agencies—ICE, CBP, USCIS, EOIR, Navy, USDA, and State—have adequately searched for responsive records. Mem. at 2-11. Stevens responds that the agencies have not adequately described their "recordkeeping scheme," which she says makes it "impossible" to determine whether the agencies searched the databases likely to contain all responsive records. Resp. at 3. She says FOIA declarations must

1

be "relatively detailed and non-conclusory," Resp. at 3 (quoting *Serv. Women's Action Network v. DoD*, 888 F.Supp.2d 231, 240-41 (D. Conn. 2012)), and that they must "detail" the "general scheme of the agency file system" and "the scope of the search and the search terms or methods employed." Resp. at 3. One might expect Stevens to support her argument by pointing to the parts of the agencies' declarations that she thinks are insufficiently detailed, but she does not even attempt to do so. And even a cursory review of the agencies' declarations shows that they *are* detailed and non-conclusory. For example, Stevens asked USCIS for documents contained in Nathan Anfinson's "A-file," and USCIS searched its file tracking system using Anfinson's alien number and produced the non-exempt material that the search yielded. DSOF ¶¶ 41-44. USCIS searched for, found, and produced the requested A-file—what grievance Stevens might have with that is hard to fathom.

Stevens insists that, to be sufficient, an agency's declaration must explain what databases it maintains, how it selected which ones to search, and what types of records each database contains. Resp. at 4. She cites three cases from the District of Connecticut where she says the court rejected declarations that resemble the agencies' declarations here, and she asks the court to adopt the District of Connecticut's approach, to "promote and accomplish" FOIA's purpose. Resp. at 4-5. But the Seventh Circuit has taken a different approach than the District of Connecticut, approving of declarations that describe what was searched and explain that the locations were determined by employees familiar with the recordkeeping systems. *Compare Vietnam Veterans v. DHS*, 8 F.Supp.2d 188, 221 (D. Conn. 2014) (criticizing declaration that stated that "hard drives, shared drives, and email accounts" were searched without explaining "whether there are other electronic files which were not searched") *with Stevens v. State*, 20 F.4th 337 (7th Cir. 2021) (approving declaration that described the locations searched and asserted that officers "made choices about what to search based on their familiarity with the holdings of the Department's

records system") (internal quotation omitted).

Here, the agency declarations satisfy the Seventh Circuit's standard. *See* Def. Ex. A (Schurkamp Decl.) ¶¶ 11 (ICE employees search the files that "in their judgment, based on their knowledge of the way they routinely keep records, would reasonably likely be the files to contain responsive documents"); Def. Ex. B (Howard Decl.) ¶ 7 (CBP employees assess "where responsive records are likely to be contained" based on their "familiarity with the types and locations of the records at issue, and discussions with knowledgeable Agency personnel"); Def. Ex. C (Munita Decl.) ¶ 12 (explaining that the records Stevens requested would be in the person at issue's A-file and describing how USCIS searched for those A-files); Def. Ex. D (O'Hara Decl.) ¶ 8 (EOIR employees search the file systems that "in their judgment, based on their knowledge of the manner in which they routinely keep records, would be the file systems likely to contain responsive records"); Def. Ex. E (Cason Decl.) ¶¶ 7-15 (explaining how Navy knew it had no responsive records); Def. Ex. F (Graves Decl.) ¶¶ 7-11 (describing USDA's analysis of which subcomponents were likely to possess responsive records and averring that USDA searched all of those locations); Def. Ex. G (Weetman Decl.) ¶ 10 (State "evaluates the request to determine which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested," which "requires a familiarity with the holdings of [its] record systems . . .").

Stevens also says that the agencies' searches were "unduly restrictive," but she does not explain what was unduly restrictive about them other than string-citing her own responses to the agencies' statements of fact and her own statements of additional fact without explaining what is in those statements. Resp. at 4. This is an improper attempt to evade Local Rule 7.1's 15-page limit by alluding to information contained in other documents without explaining what those documents say. (Imagine if the agencies had moved for summary judgment and simply referred the court to their declarations without explaining what the declarations say and why summary

3

judgment is appropriate on the basis of them.)  Judges "are not like pigs, hunting for truffles buried in briefs."  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).

Stevens also says that "several" agencies reported finding no records without explaining how they reached that conclusion or identifying the search terms they used.  Resp. at 5.  She cites *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007), for the proposition that a declaration is insufficient if it "merely identifies the three directorates that were responsible for finding responsive documents without identifying the terms searched or explaining how the search was conducted."  But instead of identifying which agencies supposedly did this, Stevens merely cites DSOF ¶¶ 14, 24, 33-34, 38—inviting the court to do her work for her rather than explaining what she is talking about.  Regardless, none of the agencies here simply identified a component that searched for records without explaining how it searched.  For example, CBP searched its "TECS" database using the name and date of birth *that Stevens provided*.  DSOF ¶¶ 32-33.

Stevens insists that, aside from USDA, the agencies have not identified the search terms they used or "the process of using them."  Resp. at 6.  This is demonstrably false.  ICE explained that for three of Stevens's requests, it searched using various combinations of the name, alias, alien number, date of birth, alias, and country of birth of the persons in question.  DSOF ¶¶ 10, 13, 18.  And for the fourth request, ICE searched using the applicable business name, contract number, and point-of-contact name.  DSOF ¶ 23.  Likewise, CBP searched using the name, date of birth, and (when available) A-file number of the persons in question.  DSOF ¶¶ 33, 38.  USCIS searched using the applicable alien numbers.  DSOF ¶¶ 43, 49, 53, 55.  In EOIR's case, it actually *extracted the data that Stevens requested*.  DSOF ¶¶ 62-72.  The reason the Navy did not search was because the records Stevens requested are held by the National Archives and Record Administration.  DSOF ¶¶ 73-77.  And the State Department searched using the name, date of birth, and place of birth of the person in question.  DSOF ¶ 88, 90-92.

Stevens also accuses the agencies of trying to prevent the court from "performing a judicial review of their actions," but she does not even attempt to support this argument. Resp. at 6. To the contrary, the agencies have *invited* judicial review by moving for summary judgment based on seven detailed declarations that describe their efforts to search for records responsive to Stevens's requests.

Finally, Stevens says that courts should "not blindly afford deference to the agency reasoning." Resp. at 2. And of course it is true that courts should not *blindly* defer to agencies. But in the FOIA context, agency declarations are afforded a presumption of good faith. *Rubman v. USCIS*, 800 F.3d 381, 387 (7th Cir. 2015) (good faith "is presumed"). And the case Stevens cites, *City of Chicago v. ATF*, 423, F.3d 777 (7th Cir. 2005), says nothing to the contrary. Indeed, Stevens has pushed this argument before, and the Seventh Circuit has soundly rejected it. *Stevens v. State*, 20 F.4th 337 342 (7th Cir. 2021) ("Stevens takes issue with the presumption of good faith that agencies enjoy in FOIA litigation. But that rule is well settled.").

For the above reasons, the agencies' searches were adequate. And reviewing the searches agency-by-agency—the exercise conducted below—leads to the same conclusion.

## A.  ICE

As explained in the agencies' opening memorandum, ICE conducted adequate searches in response to Stevens's four FOIA requests. Mem. at 3-5. Stevens first responds that ICE searched its "ERO records" but not its "OPLA records," even though she had asked ICE to search "PLAnet." Resp. at 3. But Stevens did not actually ask ICE to search its "PLAnet" database; Stevens's request asked for *screen shots* of the databases that ICE consulted, which might or might not have included the PLAnet database, depending on which databases ICE searched. Def. Resp. to PSAF ¶ 4.

Second, Stevens says that ICE used certain databases to search for records responsive to some of her requests but did not search the same databases for all of the requests. Resp. at 3-4.

5

Specifically: (1) ICE searched "EARM" in response to the Valdez-Soto request but searched EARM and two other databases in response to the Anfinson and Valencia requests; (2) ICE searched "EAGLE" for the Valencia request but not for the other requests; and (3) ICE did not search "ENFORCE" for the Valencia request. Resp. at 3-4. But nothing requires an agency to search *every* existing database in response to every FOIA request; ICE directs the employees who are tasked with searching for responsive records to search the systems that *in their judgment* are reasonably likely to contain them. DSOF ¶ 5.

### B.    CBP and USCIS

As explained in the agencies' opening memorandum, CBP and USCIS conducted adequate searches in responses to Stevens's six FOIA requests to them. Mem. at 5-7. CBP and USCIS are entitled to summary judgment on that basis alone. But CBP and USCIS also pointed out that Stevens did not administratively appeal their responses to her FOIA requests, meaning that she did not exhaust the administrative remedies that she needed to exhaust before filing suit. Mem. at 5-7. In response, Stevens does not even attempt to claim that she administratively appealed. Pl. Resp. to DSOF ¶¶ 35, 40. Instead, she responds that FOIA does not *require* a person to appeal adverse responses before filing suit and that nothing in FOIA limits the court's authority to hear a case in which an administrative appeal was not exhausted. Resp. at 7. But the D.C. Circuit squarely held otherwise, writing that "FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review." *Hidalgo v. FBI*, 344 F.3d 1256, 1257-59 (D.C. Cir. 2003).

Stevens next argues that a FOIA requester "constructively" exhausts administrative remedies if the agency does not respond within the statutory time period. Resp. at 7. But courts have rejected this argument as well, when—as here—the FOIA requester waits for the agency to respond before filing suit. *Nelson v. Army*, 2013 WL 5376650, *5 (N.D. Ill. Sept. 25, 2013) (once the agency responds, even if the response is late, FOIA "requires the completion of the

6

administrative appeal process prior to judicial review").

Stevens also argues that exhaustion is not jurisdictional, which she says means that the agencies needed to plead exhaustion as an affirmative defense. Resp. at 7. She says the agencies' omission constitutes waiver or forfeiture and prejudiced her by not giving her notice of the issue. Resp. at 8. But a delay in asserting an affirmative defense waives the defense "only if the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). Here, there is no conceivable harm: Stevens plainly knew that she needed to exhaust administrative remedies because she pleaded that she had done so (Dkt. 8 ¶¶ 123, 135), and she knew that the agencies denied it because they asserted as much *in their answer to the complaint* (Dkt. 9 ¶¶ 123, 135).

Stevens also says that a district court may exercise discretion and excuse a non-jurisdictional requirement "if the litigant's interest in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." Resp. at 8. But Stevens's interest does not outweigh the agencies' interests. Exhaustion is not a "mere technicality"; it allows an agency "an opportunity to review its initial determination, apply its expertise, correct any errors, and create an ample record in the process." *Nat'l Sec. Counselors v. CIA*, 931 F.Supp.2d 77, 99-100 (D.D.C. 2013). A court "must decline to decide the merits of an *unexhausted* FOIA claim." *Id.* (emphasis added). And even if Stevens's interests did outweigh the agencies', summary judgment would still be warranted on the basis of CBP's and USCIS's adequate search for responsive records. Mem. at 5-7.

## C.    EOIR

As explained in the agencies' opening memorandum, EOIR adequately responded to Stevens's FOIA request by *extracting the data she requested*. Mem. at 7-8. Stevens does not challenge the adequacy of EOIR's efforts in her response memorandum; she criticizes only EOIR's withholdings. Resp. at 11-12. EOIR is entitled to summary judgment on adequacy.

### D. Navy

As explained in the agencies' opening memorandum, the Navy adequately responded to Stevens's FOIA request. Mem. at 8-9. Stevens does not mention the Navy even once in her entire response memorandum. Resp. at 1-16. The Navy is entitled to summary judgment.

### E. USDA

As explained in the agencies' opening memorandum, USDA adequately searched for records responsive to Stevens's FOIA request. Mem. at 9-10. Stevens mentions USDA only once in her entire response memorandum, and the mention is *favorable*, not critical. Resp. at 6 (arguing that the agencies "except for the USDA" failed to take certain actions). She does bury one argument in her response to DSOF ¶ 81, which again constitutes an improper effort to evade Local Rule 7.1's 15-page limit. And regardless, her speculation in her response to DSOF ¶ 81 that USDA should have searched offices that purportedly maintain records from World War II does not defeat the presumption of good faith. *Bartko v. DOJ*, 898 F.3d 51, 74 (D.C. Cir. 2018) (presumption "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents") (quotation omitted). USDA is entitled to summary judgment.

### F. State

As explained in the agencies' opening memorandum, the State Department adequately searched for records responsive to Stevens's FOIA request. Mem. at 10-11. In response, Stevens mentions the State Department only to argue that it should not have withheld some of the material that it withheld from its production. Resp. at 14-15. The State Department is entitled to summary judgment on the adequacy of its search.

## II. Proper Withholdings

As explained in the agencies' opening memorandum, the agencies properly withheld information protected from disclosure by one or more FOIA exemptions. Mem. at 11-15; 5 U.S.C.

8

§ 552(b); *Stevens*, 20 F.4th at 344 (agency need not release material that "falls under one of the nine FOIA exemptions").

### A.    Exemption 3

As explained, USCIS withheld information under Exemption 3 to protect information exempt from disclosure under Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f), including information concerning the issuance or refusal of a permit to enter the United States by the State Department (which is protected from disclosure by statute). Mem. at 12; 5 U.S.C. § 552(b)(3) (protecting information "specifically exempted" by statute). Stevens's only response is to complain that, although USCIS initially withheld information under Exemption 3 and later withdrew the exemption, USCIS has not actually re-processed and released those records. Resp. at 9. She cites nothing for this proposition—not even her own declaration—so the assertion violates Local Rule 56.1 and can be disregarded. LR 56.1(b)(3); *Midwest Imports v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (LR 56.1 provides "the only acceptable means of disputing the other party's facts and of presenting additional facts").

### B.    Exemption 4

As explained, ICE withheld contract pricing information from an order for services and supplies under Exemption 4, which protects commercial or financial information that is obtained from a person and that is privileged or confidential. Mem. at 12; 5 U.S.C. § 552(b)(4) (protecting information that is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential). Stevens responds that the records "pertain to finalized contract terms, not records or information obtained from a person." Resp. at 9-10. But she cites nothing for the proposition that ICE did not obtain the finalized contract terms from someone outside ICE. She insists that information "generated by the federal government itself" is not information "obtained from a person" and is therefore excluded from Exemption 4. Resp. at 10. But the case she cites *supports*

ICE's withholding: in *Board of Trade v. CFTC*, 627 F.2d 392 (D.C. Cir. 1980), the court wrote that the "obtained from a person" requirement limits the exemption to "data which have not been generated within the Government." *Id*. at 404. As explained, ICE withheld contract *pricing* information, which by its nature is not information that ICE could have generated. DSOF ¶ 27.

Stevens also says that ICE's *Vaughn* index does not provide enough information for the court to determine whether ICE properly applied Exemption 4. Resp. at 10. But the briefest glance at ICE's *Vaughn* index shows with specificity that ICE withheld "Discount terms, contract total, contract grand total, unit price," and other similar amounts. Def. Ex. A (Schurkamp Decl.) Attachment N (*Vaughn* index) entry 2.

Finally, Stevens says that "old prime labor contracts" are "neither confidential nor privileged" because they "pertain to the historical working of the government." Resp. at 10. She again cites nothing for this proposition, and the standard for Exemption 4 is not whether information is old or "historical"; the standard is whether the information is commercial or financial, came from a person, and is privileged or confidential. *Board of Trade*, 627 F.2d at 403. The information ICE withheld is all three. Mem. at 12.

## C.    Exemption 5

As explained, USCIS withheld under Exemption 5 legal advice that an ICE attorney provided to help determine a citizenship issue, the disclosure of which would reveal the attorney's reasoning and litigation strategy. Mem. at 12-13; 5 U.S.C. § 552(b)(5) (protecting "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with an agency"). Stevens says that, because the text of Exemption 5 refers to "memorandums or letters," the exemption cannot apply to other forms of communication. Resp. at 10. No court has interpreted Exemption 5 in such a limited manner, and the case Stevens cites, *Rojas v. FAA*, 927 F.3d 1046 (9th Cir. 2019), does not stand for that proposition, either. Far from

having anything to say about emails, *Rojas* addresses whether communications with third-party consultants can constitute "intra-agency" communications under Exemption 5. *Id*. at 1055. Indeed, the *Rojas* court seems to have *presumed* that Exemption 5 applies to records beyond memoranda and letters, writing: "By its plain terms, Exemption 5 applies only to *records* that the government creates and retains." *Id*. (emphasis added). Other courts have done the same. *Carlborg v. Navy*, 2020 U.S. Dist. LEXIS 142543, *23-24, 2020 WL 3583270 (D.D.C. Aug. 10, 2020) ("Because these *emails* were both 'predecisional' and 'deliberative,' the Navy properly invoked FOIA Exemption 5 to withhold them."); *Energy & Env't Legal Inst. v. FERC*, 72 F.Supp.3d 241, 246 (D.D.C. 2014) ("FERC's redactions from the Bay-Pederson *emails* are justified by Exemption 5.") (emphases added).

Moreover, on *en banc* review, the Ninth Circuit in *Rojas* clarified that, despite the "most natural meaning" of the phrase, "we think context and purpose suggest that Congress had in mind a somewhat broader understanding of 'intra-agency.'" 989 F.3d 666, 672-73 (9th Cir. 2021). The court noted that, on the plaintiff's reading of Exemption 5, communications between an agency and outside counsel would be subject to public disclosure under FOIA, an outcome that "seems doubtful." *Id*. at 674. The analogy holds here: it is hard to imagine that Congress would intend a privileged communication to be subject to public disclosure simply because it takes the form of an email rather than a memorandum or letter.

Stevens also says that the deliberative process privilege protects records that are both pre-decisional *and* deliberative, and that none of the records USCIS withheld were pre-decisional because they do not pertain to the formation of agency policy. Resp. at 11. But USCIS withheld *legal advice*, which is also protected by the attorney-client and attorney work product privileges. DSOF ¶ 58. Stevens says that USCIS's use of the attorney-client privilege is "misplaced" because rendering legal advice was not the primary purpose of the communications and because the

communications were not kept confidential. Resp. at 11. She cites "Dkt. 31 at PAGE ID 312," which seems to be a reference to entries 597-99 of USCIS's *Vaughn* index, which shows information falling squarely within the privilege: legal advice that an ICE attorney provided to help determine an individual's citizenship, the disclosure of which would reveal the attorney's litigation strategy. Def. Ex. C (Munita Decl.) at *Vaughn* index entries 597-99.

Stevens also complains about EOIR "bond notes" not being deliberative (Resp. at 11), but EOIR's *Vaughn* index could not have more clearly explained that the bond notes column, when used, can contain "pre-decisional/deliberative notes and/or PII [personally identifiable information] at his or her discretion." Ex. D (O'Hara Decl.) at *Vaughn* index entry 2542.

Finally, Stevens complains that ICE's *Vaughn* index descriptions are "too vague" and that the withheld communications appear to be "factual narratives" (Resp. at 11-12), but ICE did not withhold any information under Exemption 5. Def. Ex. A (Schurkamp Decl.), Attachment N (*Vaughn* index).

### D.     Exemption 6

As explained, ICE and USCIS withheld information under Exemption 6 to protect the names, identification codes, phone numbers, and signatures of local law enforcement officers and other government employees, as well as personally identifiable information of third parties. Mem. at 13-14; 5 U.S.C. § 552(b)(6) (protecting information when its release would be a "clearly unwarranted invasion of personal privacy"); *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (courts broadly interpret Exemption 6 to encompass all information applying to an individual).

Stevens says that EOIR's *Vaughn* index "asserts in conclusory fashion that it invoked Exemption 6 for "personal privacy" without describing the nature of the personal information. Resp. at 12. The confusion stems from the fact that the text in one box of EOIR's *Vaughn* index was not retained in full when the index was converted into a PDF. The complete *Vaughn* index

explains that EOIR withheld "Alien names, Alien numbers, phone numbers and information of third parties." Def. Ex. K (complete EOIR *Vaughn* index).

Stevens says that ICE improperly withheld the domain portion of email addresses, the names of email recipients, and the names of government employees, which she says are not protected by Exemption 6. Resp. at 12. She does not even attempt to point the court toward which records she is talking about. And she offers no authority for the proposition that these withholdings are improper: she merely cites cases standing for the proposition that privacy concerns are not implicated by the release of *lists* of government employees' names and duty stations. Resp. at 12-13. But the notion that privacy concerns are not implicated by the release of a list of names of government employees says nothing about the privacy concerns that may arise when releasing the identity of a government employee *who took a specific action*, which is the issue here. Stevens even concedes that "lower level officials" generally have a "stronger interest in personal privacy" than senior officials. Resp. at 13. And she does not even attempt to argue that ICE redacted names of high-level officials.

### E.   Exemption 7

As explained, ICE and USCIS withheld information under Exemption 7(C) to protect the names and other personal information of government employees and third parties. Mem. at 14; 5 U.S.C. § 552(b)(7)(C) (protecting "records or information compiled for law enforcement purposes," if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy"). ICE, USCIS, and the State Department also withheld information under Exemption 7 to protect law enforcement techniques and methods for investigating fraud. Mem. at 14-15; 5 U.S.C. § 552(b)(7)(E) (protecting records where disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected

13

to risk circumvention of the law").

Stevens complains that the State Department is not a law enforcement agency, which she says means "its decision to invoke Exemption 7 is not entitled to deference." Resp. at 14. But the Department's Bureau of Consular Affairs actually is involved in enforcement of the Immigration and Nationality Act (Def. Ex. G (Weetman Decl.) ¶ 26), and Stevens does not even attempt to quibble with the Department's facially reasonable concern that disclosing the information the it considers when investigating passport fraud could lead to circumvention of the law by allowing passport applicants to more easily evade the its enforcement efforts. Mem. at 15.

Stevens also says that ICE applied Exemption 7(E) "in a categorical" fashion without connecting the redacted information "to a specific incident" or asserting that the techniques at issue are "still in use." Resp. at 15. But ICE explained that it withheld law-enforcement-sensitive "numbers and codes" that if disclosed could be used by someone seeking improper access to law enforcement databases (DSOF ¶ 29), and Stevens admits that that is what ICE withheld (Pl. Resp. to DSOF ¶ 29). *See* Def. Ex. A (Schurkamp Decl.) at Attachment N (*Vaughn* index) at entry 1 (withholding "ICE case numbers and URLs" under Exemption 7(E)).

Stevens also complains that the State Department did not submit a *Vaughn* index. Resp. at 15. But it is perfectly proper for an agency to justify its withholdings using a declaration, as the State Department did here. DSOF ¶¶ 94-95; *Stevens v. BBG*, 2021 U.S. Dist. LEXIS 60846 (N.D. Ill. Mar. 30, 2021) ("Although useful, a *Vaughn* index is not the only way the government can satisfy its burden. A sufficiently detailed affidavit, for example, can serve the same function."). Stevens also says that the State Department's declaration refers to pages of documents but that she never received a production from the State Department. Resp. at 15. The claim is baseless: the Department emailed its production on September 7, 2021, to both Stevens and her counsel. Def. Resp. to PSAF ¶ 16.

14

## III. Segregation

Stevens says that, except for USCIS, the agencies have not averred that the records they withheld contained no non-exempt material that could have been segregated and released.  Resp. at 15.  But a glance at what the agencies withheld shows that they *did* segregate non-exempt material where possible.  For example, ICE redacted names, addresses, and telephone numbers, producing the material surrounding that information.  Def. Ex. A (Schurkamp Decl.), Attachment N (*Vaughn* index) at entry 1.  EOIR withheld only certain data fields from the spreadsheets it produced.  Def. Ex. K (complete EOIR *Vaughn* index).  The extremely limited amount of material that the State Department withheld can be seen simply by looking at its production.  Def. Ex. J (Sept. 7, 2021 State production) (redactions in white made by the Department before producing; redactions in black made by the undersigned AUSA before e-filing).  And CBP, the Navy, and USDA did not withhold anything.  DSOF ¶¶ 34, 39, 77, 82-84.

## Conclusion

For the above reasons, and for the reasons in the agencies' opening memorandum, summary judgment should be granted in agencies' favor.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov