IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | |
| Plaintiff, | |
| v. | Case No. 21 CV 2232 |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | Hon. Georgia N. Alexakis |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline Stevens is a political science professor who relies on information retrieved pursuant to the Freedom of Information Act ("FOIA") to conduct immigration research. Over the past decade, Stevens submitted 14 FOIA requests to seven federal agencies seeking data for her research. Dissatisfied with the agencies' responses, she brought this suit challenging the adequacy of the agencies' searches and their withholding of certain records under FOIA's statutory exemptions. The defendant agencies have moved for summary judgment. For the reasons discussed below, the Court grants summary judgment in favor of the agencies.

### BACKGROUND

Stevens is a political science professor and the Director of the Deportation Research Clinic at Northwestern University. [8] ¶ 5. Stevens researches the deportation of U.S. citizens and has published various scholarly articles and books on

the subject. *Id.* ¶¶ 7–12. According to her complaint, she conducts this work "for the purpose of analyzing, reporting, and theorizing the contradictions of nativism and nationalism with the U.S. Constitution and the rule of law." *Id.* ¶ 6.

Stevens' research relies in part on documents she obtains from federal agencies pursuant to FOIA.[1] *See id.* ¶ 14. Between 2015 and 2021, Stevens submitted 14 FOIA requests to seven agencies: (1) U.S. Immigration and Customs Enforcement ("ICE"), (2) U.S. Customs and Border Protection ("CBP"), (3) U.S. Citizenship and Immigration Services ("USCIS"), (4) the Executive Office of Immigration Review ("EOIR"), (5) the U.S. Department of the Navy ("DON"), (6) the U.S. Department of Agriculture ("USDA"), and (7) the U.S. Department of State ("DOS"). *See id.* ¶¶ 19–118. These requests and the agencies' responses are summarized below.

## A. Stevens' FOIA Requests

### 1. ICE

Stevens challenges four FOIA requests she submitted to ICE between 2017 and 2021. First, on March 15, 2017, Stevens submitted a FOIA request to ICE seeking records related to Manuel Valdez Soto. [31] Ex. A ¶ 6. At the time this lawsuit was filed, ICE had not produced records in response to the request. *Id.* A subsequent search yielded one responsive page, which was provided to Stevens on January 7, 2022, subject to withholdings. *Id.* ¶ 22.

---

[1] Stevens has litigated other FOIA disputes in this district. *See, e.g.*, *Stevens v. U.S. Immigr. & Customs Enf't*, 432 F. Supp. 3d 752 (N.D. Ill. 2020); *Stevens v. U.S. Dep't of Homeland Sec., Immigr. & Customs Enf't*, No. 14 C 3305, 2020 WL 1701882, at *1 (N.D. Ill. Apr. 8, 2020); *Stevens v. Broad. Bd. of Governors*, No. 18-CV-5391, 2023 WL 2428839, at *1 (N.D. Ill. Mar. 9, 2023); *Stevens v. U.S. Dep't of Health & Hum. Servs.*, 666 F. Supp. 3d 734 (N.D. Ill. 2023).

Stevens' second request to ICE on November 29, 2018, sought records related to Nathan Anfinson. *Id.* ¶ 4. ICE produced responsive records on December 21, 2018, and Stevens administratively appealed the adequacy of the search. *Id.* After further proceedings, ICE did not locate any additional records. *Id.*

Stevens' third FOIA request to ICE sought records related to Juan Hurtado-Valencia on August 24, 2019. *Id.* ¶ 5. The agency produced responsive records on December 16, 2019, and Stevens administratively appealed the adequacy of the search. *Id.* After Stevens filed this lawsuit, ICE conducted a second search and determined that it was unlikely to possess any additional responsive records. *Id.*

Stevens submitted her final FOIA request to ICE on March 22, 2021. *Id.* ¶ 7. This time, she sought any ICE records that officials used "for creating agency statements of FOIA expenditures and budgets in ICE annual requests to Congress for funding in FOIA operations." [31] ¶ 21. Stevens filed suit before ICE responded to the request. *Id.* Ex. A ¶ 7. Then, on January 7, 2022, ICE released 15 pages and two Excel spreadsheets to Stevens with some portions withheld under FOIA Exemptions 4, 6, 7(C), and 7(E). *Id.* ¶ 23.

In support of the agencies' motion for summary judgment, ICE submitted the 21-page declaration of Lynnea Schurkamp, Deputy FOIA Officer of the ICE FOIA Office. *See generally* [31] Ex. A. The declaration describes ICE's process for responding to FOIA requests, in addition to ICE's specific responses to each of the requests at issue. According to Schurkamp's declaration, when ICE first receives a proper FOIA request, its FOIA office identifies which of its program offices are likely

3

to possess responsive records. *Id.* ¶ 11. The individuals in those offices are then directed to search the paper and electronic file systems that are, in their best judgment, reasonably likely to contain responsive information. *Id.*

### 2. CBP

Stevens submitted two FOIA requests to CBP. The first, submitted October 22, 2015, sought all CBP records related to Lazaro Palma. [31] Ex. B ¶ 9. In January 2016, CBP informed Stevens that it found no records responsive to the request. *Id.* ¶ 17. Stevens submitted her second request to CBP on January 9, 2019. *Id.* ¶ 20. That request sought records related to Nathan Anfinson. *Id.* CBP did not locate any responsive records for this request and notified Stevens on April 8, 2019. *Id.* ¶ 25. CBP does not have any records indicating Stevens appealed either of its responses to her two requests. *Id.* ¶ 27.

In support of the agencies' motion for summary judgment, CBP submitted the six-page declaration of Patrick Howard, Branch Chief within the FOIA Division of CBP. *See generally* [31] Ex. B. The declaration describes CBP's process for responding to FOIA requests, including CBP's response to each of the requests at issue in this case. *Id.* When it receives a FOIA request, CBP determines which systems, databases, and offices are likely to contain responsive records; it then conducts searches within those systems, databases, and offices. *Id.* ¶ 7.

### 3. USCIS

Stevens challenges four FOIA requests she made to USCIS between 2018 and 2020. Her first request, submitted November 29, 2018, sought "[a]ll system records

and all other materials in any medium, maintained, received, or distributed by
USCIS pertaining to Nathan Anfinson, aka Alfonso Chavez." [31] Ex. C. ¶ 14. In her
request, Stevens stated she was "specifically interested in finding a copy of Mr.
Anfinson's certificate of citizenship and any underlying documents associated with
its application." *Id.*

After searching Anfinson's Alien-File (A-File),[2] USCIS identified 294 pages of
responsive records. *Id.* ¶ 17. Of those pages, USCIS produced 206 pages in full and
13 pages in part. *Id.* USCIS also referred 52 pages to another agency for separate
processing and withheld 23 pages pursuant to FOIA Exemptions 3, 6, and 7. *Id.*
USCIS says Stevens administratively appealed USCIS's withholding of records but
did not appeal the adequacy of the response, but Stevens disputes that she failed to
appeal the response on adequacy grounds. *Id.* ¶ 18; [37] Stevens Decl. ¶ 40. In July
2019, USCIS released nine more pages of responsive records in full and four pages in
part. [31] Ex. C ¶ 19.

Stevens' second FOIA request to USCIS sought records regarding Anfinson's
mother, Jovita Elena Chavez. *Id.* ¶ 20. This second request sought records that were
previously withheld from USCIS's response to Stevens' first USCIS request pursuant
to FOIA Exemption 6. *Id.* USCIS released 13 pages from Anfinson's A-File relating
to Chavez on June 6, 2022. *Id.*

Stevens' third USCIS request sought "[a]ll system records and all other
materials in any medium received or distributed by USCIS pertaining to Juan

---

[2] According to USCIS, an A-File "serves as the official record of an individual's immigration
history." [31] Ex. C ¶ 10.

Guillermo Hurtado Valencia" since 1976. *Id.* ¶ 21. On September 8, 2019, USCIS denied Stevens' request pursuant to FOIA Exemption 6 and informed her of her administrative appeal rights. *Id.* ¶ 22. Stevens did not appeal. *Id.* ¶ 23. Later, in what USCIS describes as a "gesture of good faith" to avoid further litigation, USCIS released 222 pages in full, 64 pages in part, and withheld eight pages. *Id.* ¶ 24. Stevens contends she is unable to access these records because they are password-protected, but USCIS provided evidence that it sent her counsel the password by email the day after it sent her the production. [37] ¶ 53; [40] ¶ 15; [40] Ex. I.

Stevens' fourth and final FOIA request to USCIS came on August 11, 2020, when she requested "[a]ll system records and other materials in any medium created, maintained, or received by USCIS regarding Lorenzo Palma, including but not limited to his N-600 application, including all records for his grandfather, Lazaro Palma." [31] Ex. C ¶ 25. USCIS says it processed her request on April 14, 2021, and sent her an email notification informing her that the records were available to download. *Id.* ¶ 28. According to USCIS, it released 577 pages in full and 109 pages in part but withheld some information pursuant to FOIA Exemptions 5, 6, and 7. *Id.* Stevens did not administratively appeal this response, *id.* ¶ 29, which she insists is because the records were never released to her. [37] ¶¶ 55–56; [40] ¶ 17. USCIS maintains that it emailed Stevens on April 14, 2021, notifying her that the records were ready to download. [31] Ex. C ¶ 28.

In support of the agencies' motion for summary judgment, USCIS submitted the 15-page declaration of Cynthia Munita, Associate Center Director and Chief

FOIA Officer in the FOIA and Privacy Unit, National Records Center, USCIS. *See generally* [31] Ex. C. The declaration describes USCIS's general process for responding to FOIA requests. *Id.* It also details USCIS's response to each of the requests to USCIS at issue. *Id.*

### 4. EOIR

Stevens submitted her sole FOIA request to EOIR on July 3, 2020, seeking all records pertaining to (1) immigration proceedings where an individual claimed U.S. citizenship, and (2) all cases terminated at any hearing. [31] Ex. D ¶ 21. EOIR extracted data from its Case Access System ("CASE") and produced partial access to the located records. *Id.* ¶ 34. EOIR also provided nine tables defining the various codes in the data. *Id.* Some of the information was withheld pursuant to FOIA Exemptions 5 and 6. *Id.* Stevens administratively appealed the response to the DOJ's Office of Information Policy ("OIP"), which affirmed on partly modified grounds. *Id.* ¶ 39. In June 2021, EOIR issued a supplemental response to Stevens' request, which granted partial access to records that were previously redacted. *Id.* ¶ 41.

To support its motion for summary judgment, EOIR submitted the 19-page declaration of Shelley O'Hara, Attorney Advisor, Office of the General Counsel in the FOIA Program at the DOJ's EOIR. *See generally* [31] Ex. D. The declaration describes EOIR's process for responding to FOIA requests generally and details EOIR's response to the request at issue in this case. *Id.* Like the other agencies discussed so far, EOIR first identifies which program offices are likely to contain responsive records then initiates searches within those program offices. *Id.* at ¶ 6.

### 5. DON

In March 2021, Stevens submitted a FOIA request to the DON seeking "all system records and other items maintained, produced, or distributed by the Navy and its components on Lawrence E. Bowman." [31] Ex. E ¶ 7. DNS-36 is the DON office responsible for executing its FOIA program. *Id.* ¶ 2. When it received Stevens' request, DNS-36 interpreted the request as one for Bowman's personnel files. *Id.* ¶ 11.

The Navy provided a declaration of Gregory Cason, the Deputy Director of the Chief of Naval Operations FOIA Office for the DON. *See generally* [31] Ex. E. Cason's declaration describes that the National Archives and Record Administration ("NARA")—not the DON—is record custodian for the personnel records of former Navy members such as Bowman. *Id.* ¶ 13. Therefore, the DON no longer has access to Bowman's personnel files. *Id.* ¶ 15. The DON subsequently forwarded Stevens' FOIA request to NARA for further action, and DNS-36 issued a final response to Stevens notifying her of the transfer. *Id.* ¶ 16.

### 6. USDA

On August 14, 2020, Stevens submitted a FOIA request to the USDA seeking "all system records, including but not limited to hiring, payment receipts, immigration documents, and border crossing records, maintained by the Department regarding Lazaro Palma." [31] Ex. F ¶ 6. Stevens sent the request to an outdated USDA email link that the agency can no longer access, and the USDA did not learn about the FOIA request until May 2021, after Stevens filed this suit. *Id.* ¶¶ 5–6. Upon

8

learning of the request, USDA directed several of its divisions to conduct searches, but those searches produced no responsive records.

Supporting the agencies' motion for summary judgment, USDA submitted the declaration of Alexis Graves, Director of the Office of Information Affairs ("OIA") and the FOIA Officer within the USDA. *See generally* [31] Ex. F. The declaration describes the USDA's general search process and the specific process used to identify documents responsive to the request Stevens challenges here. *Id.*

### 7. DOS

Stevens submitted a FOIA request to the DOS on March 18, 2021, seeking "all system records and any other information received, produced, or maintained by the State Department pertaining to Alma Belma Bowman." [31] Ex. G ¶ 5. Though Stevens contends that she did not receive any records, DOS claims it produced six records in full and six records in part pursuant to FOIA Exemption 7(E). [37] ¶ 93; [40] ¶ 16. DOS submitted the 12-page declaration of Susan Weetman, Deputy Director of the Office of Information Programs and Services (IPS) of DOS, to support its motion for summary judgment. *See generally* [31] Ex. G.

### B. Procedural History

Stevens filed this suit on April 26, 2021, challenging the agencies' responses to her various requests. [1]. In doing so, she seeks a declaration that the agencies conduct adequate searches in response to her requests. [8] ¶ 136. She also seeks a declaration that some of the withheld records are not exempt from disclosure under FOIA. *Id.*

In June 2022, the government agencies moved for summary judgment on the grounds that they conducted adequate searches for responsive records and properly withheld certain records that fell under FOIA's statutory exceptions. [29]. Along with their Rule 56.1 Statement of Facts, the agencies submitted the seven declarations described above—one from a FOIA officer at each defendant agency. [31] Ex. A–G. In addition to these declarations, some agencies also submitted *Vaughn* indices[3] describing the records they withheld and the bases for withholding them under FOIA's statutory exemptions. *See, e.g.*, [31] Ex. A, Attach. N.

## LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it affects the substantive outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 380 (2007). At summary judgment, we view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

---

[3] Defendants submitted their *Vaughn* indices pursuant to the D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

DISCUSSION

FOIA requires federal agencies to "make … records promptly available to any person" who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). "Disclosure is required unless the requested record is clearly exempted from disclosure by the statute." *Enviro Tech Int'l, Inc. v. U.S. Env't Prot. Agency*, 371 F.3d 370, 374 (7th Cir. 2004).

The agencies move for summary judgment on several grounds. First, they argue that summary judgment is warranted for five of Stevens' 14 requests because she failed to administratively exhaust those claims. Second, they contend they performed adequate searches that were reasonably calculated to produce responsive records. And third, they maintain that any information they withheld was proper under one of FOIA's nine statutory exemptions. The Court addresses each of defendants' arguments in turn. The Court also addresses Stevens' argument that the agencies did not reasonably segregate non-exempt factual material from their withholdings.

## A. Exhaustion

We begin with the threshold issue of exhaustion. A plaintiff must exhaust her administrative remedies under FOIA before seeking judicial review. *Almy v. U.S. Dep't of Just.*, No. 96-1207, 1997 WL 267884, at *3 (7th Cir. 1997); *Stebbins v. National Mut. Ins. Co.*, 757 F.2d 364, 366 (D.C. Cir. 1985); *Brumley v. United States Dep't of Labor*, 767 F.2d 444, 445 (8th Cir. 1985). Here, defendants claim Stevens did

11

not administratively appeal either of CBP's responses and three of USCIS's responses (specifically, those related to Nathan Anfinson, Juan Guillermo Hurtado-Valencia, and Lorenzo Palma). Stevens admits she did not administratively appeal either of CBP's responses and USCIS's response related to Hurtado-Valencia. [37] ¶¶ 35, 40, 52. However, she contends that factual disputes exist as to whether she appealed USCIS's responses related to Anfinson and Lorenzo Palma. *Id.* ¶¶ 45, 56.

Upon reviewing the record, the Court agrees with Stevens that there are factual disputes regarding the Anfinson and Lorenzo Palma requests preventing it from granting the agencies summary judgment on those requests. As for the Anfinson request, USCIS contends that Stevens never appealed the adequacy of the search, *see* [31] Ex. C ¶ 18, but Stevens says she did. [37] DSOF ¶ 45; [37] Stevens Decl. ¶ 40. Neither party points to any evidence definitively resolving this dispute. The same is true for the Lorenzo Palma request. USCIS maintains Stevens did not administratively appeal, *see* [31] Ex. C ¶ 29, but Stevens insists her obligation to appeal was never triggered because USCIS never released the records to her. [37] ¶¶ 55–56; [40] ¶ 17.

Given these unresolved factual disputes, the following exhaustion analysis applies only to the three requests in which the parties agree Stevens did not exhaust her remedies: (1) the CBP response related to Lazaro Palma, (2) the CBP response related to Anfinson, and (3) the USCIS response related to Hurtado-Valencia.[4]

---

[4] Even if the Court could resolve these factual disputes, it would make no difference. As discussed later on, USCIS has met its summary-judgment burden to show it performed adequate searches as to both FOIA requests and properly withheld records pursuant to FOIA Exemptions 5 and 6.

Stevens first argues that the Court may excuse her failure to exhaust because the exhaustion requirement is not jurisdictional. [36] at 7. But jurisdictional or not, "[e]xhaustion of administrative remedies is a prerequisite to filing a FOIA suit." *Hoeller v. Soc. Sec. Admin.*, 670 F. App'x 413, 414 (7th Cir. 2016); *see also Almy*, 1997 WL 267884, at *3 ("[Plaintiff]'s failure to exhaust his administrative remedies bars judicial review of these claims."). The fact that the administrative exhaustion requirement is not jurisdictional does not somehow make it optional.

Stevens next argues that because exhaustion is typically regarded as an affirmative defense and defendants did not raise it in their answer, defendants cannot now rely on exhaustion at summary judgment. Stevens is correct that exhaustion is usually an affirmative defense that should be raised in a defendant's answer. *See Gray v. United States*, 723 F.3d 795, 799 n.1 (7th Cir. 2013). Even so, "nonexhaustion can be asserted even in a motion for summary judgment if the plaintiff is not harmed by the delay." *Phillips v. Walker*, 443 F. App'x 213, 215 (7th Cir. 2011) (citing *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 729–30 (7th Cir. 2007)).

On the one hand, Stevens contends she was "severely prejudiced" by not learning about exhaustion until summary judgment, which harmed her "interest in timely access to government records." [36] at 8. On the other hand, defendants say that because Stevens pleaded that she *had* exhausted her remedies in her complaint, there was "no conceivable harm" because she "plainly knew she needed to exhaust administrative remedies." [39] at 7.

13

Defendants have the better argument. Stevens clearly understood that exhaustion is required for judicial review in FOIA litigation given that she claimed to have exhausted her remedies in her complaint. [8] ¶¶ 123, 135. Stevens is also challenging 11 other responses to her FOIA requests in which she either did exhaust her remedies or where exhaustion is disputed. Thus, the litigation would have reached this stage even if exhaustion were raised at an earlier point, and Stevens was not unfairly surprised by the belated assertion of an affirmative defense that she clearly anticipated. Stevens is therefore not prejudiced by defendants' failure to raise exhaustion as an affirmative defense earlier in the proceedings.

The Court dismisses Stevens' challenges to CBP's two responses and USCIS's response related to Hurtado-Valencia for failure to exhaust.

## B. Adequacy of Agency Searches

Defendants also move for summary judgment on the grounds that they conducted adequate searches for responsive records. To prevail on summary judgment on this point, an agency "must demonstrate that there is no genuine issue of material fact about the adequacy of its search." *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 875 (7th Cir. 2018) (citing *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015)). In doing so, it "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* (quoting *Rubman*, 800 F.3d at 387). Courts presume that an agency acted in good faith, and

good faith "can be reinforced by evidence of the agency's attempts to satisfy the request." *Id.*

In addition, an agency may "offer non-conclusory affidavits" supporting the reasonableness of its search. *Id.* However, those affidavits "must be reasonably detailed, set forth the search terms used in electronic searches and the kind of search performed by the agency, and aver that all files likely to contain responsive documents were searched." *Id.* "Reasonableness is a flexible and context-dependent standard." *Rubman*, 800 F.3d at 387.

"In response to an agency affidavit, the FOIA requester can present countervailing evidence as to the adequacy of the agency's search." *Rubman*, 800 F.3d at 387 (cleaned up). Then, "if a review of the record raises substantial doubt about the adequacy of the search, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment in favor of the agency is inappropriate." *Id.* (cleaned up). If a court finds the agency's search inadequate, the requester "must show some reason to think that the document would have turned up if the agency had looked for it, though since neither the requester nor the court know the content of the agency's records, this is a low bar." *Id.* (cleaned up). The question at summary judgment "is not whether the agency *might* have additional, unidentified responsive documents in its possession," but rather "whether the search itself was performed reasonably and in good faith." *Id.*

### 1. Stevens' Cross-Agency Arguments

FOIA plaintiffs typically offer specific reasons why *each* agency's search was inadequate as to *each* agency response they challenge.[5] Stevens, however, has put forth few arguments tailored to the government's responses to each of her 14 requests. Instead, she primarily makes two overarching arguments that apply across agencies. The Court addresses those two arguments at the outset before addressing the adequacy of each of the 14 searches challenged here.

First, Stevens argues that defendants' responses are inadequate because each agency fails to describe its general file system, which she claims "makes it impossible to determine whether each Defendant has searched the specific databases within each component likely to contain all responsive records." [36] at 3. As Stevens points out, some out-of-circuit district courts have required agencies to respond to FOIA requests with specific details regarding the organization of their file systems so that a requester may have better insight into the adequacy of an agency's search. *See, e.g.*, *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 300 (D. Conn. 2008) (CBP's failure to "describe the general scheme" of its file system stymied the requester's "ability to advocate his position" and did not meet the Second Circuit's "relatively detailed and nonconclusory" standard).

---

[5] In the context of challenging withholdings under FOIA's statutory exemptions, the Seventh Circuit has specifically cautioned plaintiffs against mounting general objections to agency responses. *See Henson*, 892 F.3d at 876 ("Rather than ask a busy district judge to examine documents … or to parse the *Vaughn* indices as an original matter, it is better to put the burden on the plaintiff to identify with particularity the claims of exemption he was challenging.").

But the Seventh Circuit already declined to impose such a requirement in *Stevens v. United States Department of State*, 20 F.4th 337 (7th Cir. 2021). In that case (which Stevens does not cite), Stevens made the same argument she does here—that the agencies needed to provide specific details about the organization of their file systems. *Id.* at 343. The Circuit rejected it, in part because "FOIA does not compel large, complex agencies … to maintain a specific sort of centralized file system." *Id.* at 343. The Circuit found it sufficient that the DOS "searched shared drives and print servers, the email records of employees in the three sections likely to have worked on matters responsive to the requests, and the ambassador's post-2015 email records." *Id.* It also credited the DOS's statement that officers made choices about what to search based on their "familiarity with the holdings of the Department's records systems." *Id.*

Like in *Stevens*, here each defendant agency declared how it located which files to search, often indicating that they used their familiarity with the systems to identify search locations. For example, ICE's declaration notes that ICE program offices are directed to search files "which in their judgment, based on their knowledge of the way they routinely keep records, would reasonably likely be the files to contain responsive documents." [31] Ex. A ¶ 11. Likewise, CBP's declaration avers that its search locations are based on, among other things, "the FOIA Division's familiarity with the types and locations of the records at issue[] and discussions with knowledgeable Agency personnel." *Id.* Ex. B ¶ 7. These declarations enjoy a

presumption of good faith and are sufficient under the Seventh Circuit's reasoning in *Stevens*, 20 F.4th at 342.

Stevens' second broad argument is that, except for USDA, defendants' searches were inadequate because their declarations do not specify the search terms they used or "the process of using them." [36] at 6. But even a cursory review of defendants' declarations reveals the false nature of this statement. *See, e.g.*, [31] Ex. G ¶ 24 (listing the various combinations of the subject's name that DOS used to search its records); [31] Ex. F ¶ 8 (USDA performed primary search using "Palma" and "Lazaro" and a secondary search using his social security number). Nonetheless, for completeness (and because the burden is on the agencies as the parties moving for summary judgment, *see Henson*, 892 F.3d at 875), the Court addresses the adequacy of each response to Stevens' 14 FOIA requests below. To the extent Stevens challenges the omission of search terms in a particular agency's response, the Court addresses the agencies' disclosure of search terms throughout.[6]

**2.     Individual Agency Responses**

     **a.     ICE**

---

[6] Stevens makes two additional arguments that do not warrant extended discussion. First, she claims that "*post hoc* rationalizations are not properly credited in deferential review." [36] at 6. But Stevens only provides this conclusory statement, and she does not attempt to apply the argument to any specific agency explanation. *See generally id.* Second, she generally argues that the agencies "failed to complete good faith searches" and "are now attempting [to] prevent this Court from performing a judicial review of their actions." *Id.* But again, Stevens has provided the Court no reason to question the agencies' good faith, and the idea that agencies enjoy a presumption of good faith in FOIA litigation is "well settled." *Stevens*, 20 F.4th at 342. The Court finds neither argument persuasive.

Turning to ICE's responses to Stevens' FOIA requests, the Court starts with her March 15, 2017, request for all records involving Manuel Valdez Soto. According to the Schurkamp declaration, ICE determined that the Enforcement and Removal Office ("ERO") was most likely to contain records related to Soto. [31] Ex. A ¶ 19. Then, ERO's Information Discovery Unit ("IDU") conducted a routine records search for responsive records in the Immigration and Enforcement Operational Records System Alien Removal Module ("EARM").[7] *Id.* ¶ 22. The declaration specifies that ICE conducted both searches using Soto's name and alien number. *Id.* Given these facts, the Court finds ICE's response to the March 15, 2017, request meets the adequate search standard. The declaration is "reasonably detailed, set[s] forth the search terms used in electronic searches and the kind of search performed by the agency, and aver[s] that all files likely to contain responsive documents were searched." *Henson*, 892 F.3d at 875.

The same is true as to Stevens' November 29, 2018, request to ICE regarding Nathan Anfinson. Like the previous request, ICE determined that the ERO was most likely to contain records related to Anfinson. [31] Ex. A ¶ 19. The ERO searched for responsive records in EARM using Anfinson's name, date of birth, country of birth, alias, and alien number. *Id.* ¶ 20. In addition to EARM, the declaration also states that the ERO searched the Central Index System ("CIS"),[8] a database developed by ICE's predecessor agency, Immigration and Naturalization Service. *Id.* ¶ 20. This is

---

[7] EARM is the system used to book, detain, and remove encountered noncitizens.
[8] CIS is a database that contains information on the status of applicants or petitioners seeking immigration benefits.

enough for the Court to conclude the agency made a "good faith effort to conduct a search for the requested records." *Henson*, 892 F.3d at 875.

Up next is Stevens' August 24, 2019, request related to Juan Hurtado-Valencia. Once again, ICE determined that the ERO was most likely to contain any records related to Hurtado-Valencia. [31] Ex. A ¶ 19. ICE's declaration describes that ERO's IDU conducted a routine records search, which, like the other searches, used Hurtado-Valencia's name, date of birth, country of birth, alias, and alien number. *Id.* ¶ 21. ICE also says it searched for responsive records in the Enforcement Integrated Database Arrest Guide for Law Enforcement ("EAGLE"),[9] Outlook, EARM, and CIS. *Id.* After ICE's FOIA Office asked ERO to conduct a second search based on Stevens' FOIA request, the ERO reviewed the past search and concluded it was unlikely to possess any additional responsive records. *Id.* As with the previous two ICE searches, this Court concludes that ICE's search for Hurtado-Valencia's records was also sufficient under FOIA.

Finally, the Court addresses Stevens' March 22, 2021, request for records used to create agency statements of FOIA expenditures and budgets in ICE funding requests to Congress. For this request, ICE determined that the Office of Acquisition Management ("OAQ"), Office of the Chief Information Officer ("OCIO"), and Strategic Resourcing Alignment Division ("SRAD") were the offices likely to have responsive records. *Id.* ¶ 19. Per Schurkamp's declaration, ICE's OAQ subsequently searched

---

[9] EAGLE is the booking application used to process biometric and biographical information of individuals arrested for violating immigration laws.

Outlook by business name, contract number, and point of contact's name. *Id.* ¶ 23. OCIO, for its part, determined that it would not have responsive documents because it could only search email accounts ending in "ice.dhs.gov," and the FOIA request related to records not ending in "ice.dhs.gov." *Id.* Meanwhile, STRAD searched the Federal Financial Management System ("FFMS"), which is ICE's workflow management and financial transaction system. ICE retrieved two responsive Excel spreadsheets from FFMS and disclosed them to Stevens. *Id.* In light of these details and ICE's description of its search terms, the Court is not persuaded by any of Stevens' arguments that ICE failed to conduct a reasonable search as to her fourth FOIA request.[10]

### b. CBP

The Court similarly concludes CBP's searches were reasonable and conducted in good faith based on the information provided in Howard's declaration.

As for Stevens' October 22, 2015, FOIA request, the declaration describes that CBP determined the TECS platform was the only system within CBP that might contain responsive records. [31] Ex. B. ¶ 14.[11] CBP searched that database for any

---

[10] Stevens also argues that ICE's searches were inadequate because the agency searched in certain databases for some individuals and not others. [36] at 3–4. But we must take in good faith ICE's declaration that its component offices decided which databases to search "based on their knowledge of the way they routinely keep records." [31] Ex. A ¶ 11; *Stevens*, 20 F.4th at 342 ("Good faith is presumed."). The question at summary judgment is not based on the uniformity of the searches or "whether the agency *might* have additional, unidentified responsive documents in its possession." *Rubman*, 800 F.3d at 387. Instead, the Court "need only determine whether the search itself was performed reasonably and in good faith." *Id.* ICE has met this burden.

[11] TECS is an information-sharing platform that allows users to access various databases and stores information to support law enforcement "lookouts," border screening, and inspection reporting. [31] Ex. B ¶ 15.

21

crossing records, secondary inspections, and border encounter responsive records. *Id.* ¶ 16. The declaration specifies that CBP used the subject's name and date of birth as search terms. *Id.* This description was sufficient to carry CBP's summary judgment burden on Stevens' first request to CBP.

Howard's declaration as to Stevens' January 9, 2019, FOIA request provides a similar description. It describes that CBP's FOIA staff determined TECS and the "E3/Enforce systems" were the only CBP systems that could contain responsive information. *Id.* ¶¶ 22, 24. Then, it describes the search terms it used to search these systems, specifically the subject's "name, date of birth, and Alien File (A-File) Number." *Id.* ¶ 24. Stevens has offered no reason to doubt the reasonableness of CBP's efforts. In the Court's view, this information is sufficient to conclude that CBP conducted an adequate search pursuant to FOIA.

### c. USCIS

Next, the Court turns to USCIS's responses to Stevens' four FOIA requests, beginning with the November 29, 2018, request related to Nathan Anfinson. Based on the information contained in the request (for example, Stevens' interest in finding Anfinson's certificate of citizenship and any underlying documents associated with its application), USCIS's FOIA staff determined that Stevens sought documents contained in Anfinson's A-File. [31] Ex. C ¶ 15. Munita's declaration describes that A-Files are retrievable by reference to an individual's name and alien number. *Id.* ¶ 11. Then, the declaration continues, to locate an individual's records within the A-File, a FOIA staff member runs a computerized database search in DHS's RAILS

system using the individual's alien number. *Id.* ¶ 12. Finally, according to the declaration, once the records in Stevens' case were processed, FOIA staff determined that the search was reasonably calculated to locate responsive documents within USCIS control. *Id.* ¶ 13. Because the declaration is "reasonably detailed" and sets forth both the search terms and type of search, the Court concludes USCIS's search was adequate as to the November 29, 2018, request. *Henson*, 892 F.3d at 875. Stevens offers no convincing reason to conclude otherwise.

Stevens' September 2019 request for records related to Jovita Elena Chavez is unique in that those records did not arise from a *new* search. Instead, Stevens discovered the information related to Chavez (Anfinson's mother) when USCIS withheld certain records in response to Stevens' request for Anfinson's records. [31] Ex. C ¶ 20. Once USCIS received Chavez's consent to disclose the records, USCIS released 13 additional pages from Anfinson's A-File. *Id.* Munita's declaration describes this process in sufficient detail for the Court to conclude USCIS acted reasonably pursuant to its FOIA obligations. Again, Stevens provides no tailored argument to convince it otherwise.

USCIS's responses to Stevens' latter two requests regarding Juan Valencia and Lazaro Palma also meet the FOIA standard for an adequate search. Because those requests both sought information that would be contained in an individual's A-File, USCIS followed the same procedure described above for the Anfinson search. *Id.* Ex. C ¶¶ 12–13, [31] ¶¶ 53, 55. This description already has proven sufficient for the

23

Court to conclude those searches were reasonably calculated to find responsive records pursuant to FOIA.

### d. EOIR

Stevens' July 3, 2020, request to EOIR sought (1) records regarding immigration proceedings with adjournments referencing claims of U.S. citizenship, and (2) records regarding cases terminated "at any hearing." [31] ¶ 62. This request is unique from the other requests discussed thus far. Instead of performing a traditional "search" using key terms, EOIR's Planning, Analysis, and Statistics Division extracted two datasets from its CASE system that were responsive to Stevens' request. [31] Ex. D ¶ 23. Although EOIR conducted no "search" in the traditional sense, O'Hara's declaration provides intricate details regarding the dataset contents, how they were generated, and how they aligned with the data Stevens requested. *Id.* ¶¶ 23–33. When some aspect of Stevens' request was not captured within the CASE system, the declaration also describes why that information was omitted from the agency's response. *See, e.g.*, *id.* ¶¶ 15, 30.

As defendants put it, EOIR simply "extracted the data that Stevens requested." [39] at 4. Stevens, for her part, has provided no reason to question the adequacy of EOIR's efforts. As a result, the Court concludes EOIR has met its summary judgment burden to show a "good faith effort to conduct a search for the requested records." *Henson*, 892 F.3d at 875.

### e. DON

Stevens' challenge to the DON's search merits only a brief discussion. When the DON received Stevens' request, it interpreted the request as one for the subject's personnel files. [31] Ex. E ¶ 11. And, as described in the Cason declaration, the DON does not keep the personnel files of former Navy members—that responsibility lies with NARA. *Id.* ¶ 13. As a result, the DON forwarded Stevens' FOIA request to NARA for further action and notified Stevens of the transfer. *Id.* ¶ 16. The DON never searched its own records because it reasonably concluded the records Stevens requested were kept elsewhere. Thus, there is no DON search for Stevens to challenge as inadequate, and the Court has not identified a DON-specific argument in Stevens' opposition to defendants' summary judgment motion.

### f. USDA

Next is Stevens' August 14, 2020, request to the USDA. Stevens does not challenge the USDA's description of search terms, and for good reason. The Graves declaration describes in detail the search process used in each of the USDA divisions suspected of having responsive documents. [31] Ex. F ¶¶ 7–10. It also outlines the specific search terms used within those divisions. *Id.* For example, it describes that, within the USDA's National Finance Center, the Internal Audit and Compliance Group searched its system using the terms "Palma" and "Lazaro," then it performed a secondary search using Lazaro's social security number. *Id.* ¶ 8. Likewise, the Graves declaration says that the Farm Production and Conservation Business Center's Stakeholder Relations Branch searched its Service Center Information Management System using the key terms "Palma" and "Lazaro." *Id.* ¶ 9. Finally, for

25

each division within the USDA tagged as likely to have responsive records, the declaration states that responsive records were not likely to be found outside the systems searched. *Id.* ¶¶ 8–10.

The details in the USDA declaration leave the Court with no doubt as to the adequacy of the agency's search.

### g. DOS

The final response at issue is DOS's response to Stevens' March 18, 2021, request for information pertaining to Alma Belma Bowman. According to Weetman's declaration, the Bureau of Consular Affairs ("CA"), PIERS (a database of all U.S. passport information), DOS's electronic records archive (eRecords), and NARA's Washington National Records Center were deemed likely to have documents responsive to Stevens' request. [31] Ex. G ¶ 12.

Weetman's declaration describes in significant detail the search process within each of these DOS divisions. For example, a CA information specialist ordered a search of CA's Vital Records section using the search terms "Alma Bella Bowman, Alma Belma Bowman, her date of birth, and place of birth; Alma Mitchell, her date of birth, and place of birth; Alma Sorrells, her date of birth, and place of birth." *Id.* ¶ 17. CA also searched PIERS and its Consular Consolidated Database (CCD) using similar terms. *Id.* ¶¶ 18–22. Finally, DOS searched its eRecords archive using the search terms "Alma Bowman," "Lolita Catarugan Bowman," "Lolita" and "Bowman," "Alma Sorrells," "Alma Mitchell," and "Alma Belma Bowman." *Id.* ¶ 24. These

26

descriptions are plenty to convince the Court that the DOS conducted a reasonable search for summary judgment purposes.

## C. Exemptions

Stevens also challenges the agencies' responses to her FOIA requests on the grounds that they improperly withheld materials pursuant to FOIA's statutory exemptions. Although FOIA's "basic policy" skews in favor of disclosure, any agency may withhold records if the information falls under one of the nine statutory exemptions outlined in 5 U.S.C. § 552(b)(1)–(9). *See also Enviro Tech*, 371 F.3d at 374. When an individual requests information, "[d]isclosure is required unless the requested record is clearly exempted from disclosure by the statute." *Id*. Although the exemptions "are intended to have meaningful reach and application," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989), courts are to construe FOIA exemptions "narrowly in favor of disclosure.'" *Patterson v. I.R.S.*, 56 F.3d 832, 835 (7th Cir. 1995) (quoting *U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 181 (1993)).

FOIA grants courts the power to enjoin agencies from withholding agency records and to order the production of any records an agency has improperly withheld. 5 U.S.C. § 552(a)(4)(B). Although the agency sustains the burden of maintaining the action, district courts "shall accord substantial weight to an affidavit of an agency concerning the agency's determination" related to the technical feasibility and reproducibility of agency records. *Id*. To determine whether the government has met its burden, the court conducts a *de novo* review of the record. *Id*. The government is entitled to summary judgment "only if the agency affidavits describe the documents

withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *Patterson*, 56 F.3d at 836 (cleaned up).

Here, Stevens challenges defendants' withholding of materials under five of FOIA's statutory exemptions. The Court considers each contention in turn.

### 1. Exemption 3

Stevens first challenges USCIS's decision to withhold records pursuant to FOIA's third exemption. That exemption applies to documents "specifically exempted from disclosure by statute … provided that such statute … requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue … or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

Here, USCIS originally withheld information under Exemption 3 because it was exempted from disclosure by the Immigration and Nationality Act, 8 U.S.C. § 1202(f). However, in its *Vaughn* index, USCIS indicated that it would withdraw its reliance on that exception "[u]pon closer examination." [31] Ex. C, Stevens Juan Hurtado-Valencia *Vaughn* index at 7. Because USCIS agreed to disclose these records, Stevens does not challenge reliance on the exemption. Instead, she argues that "the records have not been reprocessed and released to [her]." [36] at 9. But Stevens does not offer any evidence this is true (for example, a sworn declaration) and instead relies on a conclusory statement in her summary judgment response. Regardless, to the extent Stevens still believes she has not received these records, the Court directs the parties to meet and agree on a new method of transmitting the

records that USCIS has now agreed to disclose. This production hiccup, however, provides no basis to deny defendants' motion for summary judgment.

## 2.    Exemption 4

Stevens next challenges ICE's withholding under FOIA's fourth exemption, which covers matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Information is "confidential" where it is "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

Here, ICE withheld contract pricing information from an order for services and supplies, which included information such as discount terms, the total amount of the contract, unit price, and quantity. [31] ¶ 27; [31] Ex. A, Attach. N, Entry 2. Stevens mounts two attacks on ICE's use of Exemption 4. First, she argues that the records were "generated by the federal government itself" and are therefore not from "a person" as § 552(b)(4) requires. [36] at 10. But there are at least two parties to every contract. At some point, ICE would have received the withheld information from the other party to the contract (i.e., the requisite "person"). This inference is especially reasonable where the agency withheld "pricing information"; that is precisely the type of information that the government would have solicited rather than generated.

Second, Stevens argues that the *Vaughn* index does not provide enough information to ascertain whether Exemption 4 has been properly applied. But the Court has reviewed the relevant entry in the *Vaughn* index (and the index more

generally) and finds that the description is sufficiently specific to counter Stevens' contention. It describes the withholding as a partial redaction on an order for services or supplies and describes the redacted information as "discount terms, contract total, contract grand total, unit price, amount, fast redaction annual licenses amount, [and] total amount of award." [31] Ex. A, Attach. N, Entry 2. This level of detail is more than enough to permit the conclusion that the redacted records were appropriately withheld pursuant to Exemption 4.

Stevens' third argument is that "old prime labor contracts are neither confidential nor privileged; they pertain to the historical working of the government and should be subject to disclosure." [36] at 10. Stevens offers no case law to support this conclusory statement. In any case, the pertinent question to Exemption 4 is whether the information is "customarily and actually treated as private." *Food Mktg. Inst.*, 588 U.S. at 440. According to ICE's *Vaughn* index, the information is confidential because its disclosure would be "likely to cause substantial harm to the competitive position of the person who submitted the information" and is the "kind of information that the provider would not customarily make available to the public." [31] Ex. A, Attach. N, Entry 2. Based on this description, the Court concludes the information withheld under Exemption 4 was "logically within the domain of the exemption claimed." *Patterson*, 56 F.3d at 836 (cleaned up); *see also Stevens*, 2023 WL 2428839, at *8 (federal agency properly invoked Exemption 4 to withhold confidential and proprietary pricing information because it would cause "substantial competitive harm to the firm that owns the information") (quoting *Henson*, 892 F.3d at 877).

30

### 3.      Exemption 5

FOIA's fifth exemption permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption "appl[ies] to documents that would be privileged in the government's litigation against a private party." *Stevens*, 20 F.4th at 345 (citing *Enviro Tech*, 371 F.3d at 374). For example, the exemption applies to information protected by the attorney-client privilege and work-product privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). It also protects information covered by the deliberative process privilege—in other words, information "reflecting the deliberative or policy-making processes of governmental agencies." *Enviro Tech*, 371 F.3d at 374. The policy "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001)).

Here, in response to Stevens' August 2020 request for records related to Lorenzo Palma, USCIS withheld legal advice an ICE attorney provided to assist in determining a citizenship issue. [31] ¶ 58. EOIR also withheld bond records for citizenship adjournments and terminations. *Id.* Ex. D EOIR *Vaughn* index at 1–2.

First, Stevens argues that documents were inappropriately withheld under Exemption 5 because they are not "memorandums or letters" within the meaning of § 552(b)(5). But, in making this argument, Stevens does not point to any specific

document she claims is not a memorandum or letter, despite having access to the *Vaughn* indices that would reflect that information. And to the extent she argues that a document such as an email cannot also be a memorandum or letter, she does not provide any authority that supports such a proposition.[12] In fact, Seventh Circuit case law suggests documents such as emails *can* be withheld pursuant to Exemption 5. *See, e.g.*, *Stevens*, 20 F.4th at 345 (DOS properly withheld cables and emails pursuant to Exemption 5).

Stevens next argues that USCIS cannot withhold an ICE attorney's communications related to the citizenship issue because rendering or receiving legal advice was not the primary purpose of the communications. But USCIS's *Vaughn* index indicates that the agency invoked the exception because "[t]he ICE attorney was providing legal advice to assist the client in determining and deciding issue of citizenship." [31] Ex. C, Palma-Rodriguez Lorenzo *Vaughn* index at 16–17. Stevens offers no reason to doubt the accuracy of this statement. Stevens also contends that the documents cannot be privileged because they were not kept confidential. But, like before, she provides no evidence (besides a conclusory statement) that the information was ever provided to a third party.

---

[12] Stevens cites the Ninth Circuit's statement in *Rojas v. Federal Aviation Administration* that if "Congress intended Exemption 5 to extend to all 'agency records,' it would have used that term." 927 F.3d 1046, 1055 (9th Cir. 2019). But that statement was made in analyzing whether third-party consultants can constitute "intra-agency" communications under Exemption 5. It does not stand for the proposition that emails or other forms of communication cannot be memos or letters under § 552(b)(5). Even if it did, the Ninth Circuit overturned that portion of the panel's opinion when it reviewed the decision *en banc. See Rojas v. Fed. Aviation Admin.*, 989 F.3d 666, 674 (9th Cir. 2021) (en banc).

Next, Stevens contends that none of the records USCIS withheld are covered by the deliberative process privilege because they do not pertain to the formation or adoption of an official agency policy. But the Seventh Circuit has rejected the argument that "a document is only predecisional if it pertains 'to the formation or adoption of an official agency policy' or 'adjudication'." *Stevens*, 20 F.4th at 345 ("A document is predecisional if it is generated before an agency's final decision on a matter, whether that matter is official or not."). In any case, USCIS appropriately withheld the records because they fall under the attorney-client privilege. *Sierra Club*, 592 U.S. at 267 (listing attorney-client privilege and deliberative process privilege as separate ways to invoke § 552(b)(5)). USCIS need not also show that the deliberative process privilege applies.

Lastly, Stevens argues that the descriptions in ICE's *Vaughn* index are too vague. But ICE did not withhold documents pursuant to Exemption 5. To the extent she means to argue that USCIS or EOIR's *Vaughn* indices are overly vague, she has provided no reasoning to support such an argument, and the Court's review of those indices does not yield support for Stevens' characterization. The Court concludes the agencies properly withheld information pursuant to Exemption 5.

### 4. Exemption 6

FOIA's sixth exemption protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Whether an invasion of privacy is "clearly unwarranted" involves "a balancing of interests between the protection of an

individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." *U.S. Dep't of Def. Dep't of Mil. Affs. v. Fed. Lab. Rels. Auth.*, 964 F.2d 26, 29 (D.C. Cir. 1992) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)). "[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989)).

Here, ICE and USCIS say they withheld certain names, identification codes, phone numbers, and signatures of federal law enforcement officers and other government employees, as well as personally identifiable information of third parties. [31] ¶ 28. EOIR also withheld certain personally identifiable information from the datasets it produced as part of its search. [31] Ex. D ¶¶ 34, 41.

Stevens challenges EOIR's explanation regarding Exemption 6 as too conclusory because it does not describe the nature of the personally identifiable information involved. But defendants' reply brief provides a commonsense explanation: the text in its *Vaughn* index was cut off when converted to a PDF from Microsoft Excel, and the complete *Vaughn* index (which has been included among the materials filed with this Court, *see* [40] Ex. K) explains that EOIR withheld "Alien names, Alien numbers, phone numbers and information of third parties." [39] at 12–

13. The Court credits EOIR's explanation in good faith and concludes that the new explanation for the redacted information is sufficient.

Stevens also maintains that ICE unnecessarily withheld recipient email addresses because the names of public officials are a matter of public record. Stevens is correct that, under 5 C.F.R. § 293.311, the names and titles of federal employees must be available to the public. But based on the record before this Court, the names and titles of public employees here do not appear in isolation. Instead, ICE contends (and Stevens does not dispute) that the redacted information ties the names of individuals to *certain actions*—a form of information not deemed public by federal regulation. [39] at 13.

In any case, it is difficult for the Court to assess whether ICE's redactions were appropriate where Stevens generally attacks the withholdings without pointing to any specifically problematic redactions. The Court is also not persuaded that, under Supreme Court precedent, the individually identifying information Stevens seeks will contribute "to public understanding of the operations or activities of the government." *Fed. Lab. Rels. Auth.*, 510 U.S. at 495. Based on the information presented before it, the Court concludes ICE properly withheld information pursuant to Exemption 6.

### 5. Exemption 7

Finally, Stevens challenges the agencies' use of Exemption 7, which applies to "records or information compiled for law enforcement purposes" under certain circumstances. 5 U.S.C. § 552(b)(7). Relevant here, Exemption 7(C) protects law enforcement records if their disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Meanwhile, Exemption 7(E) protects information that "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Id.* § 552(b)(7)(E). Here, ICE says it withheld information under Exemption 7(C) to protect the names, identification codes, phone numbers, and signatures of federal law enforcement officers and other government employees. [31] Ex. A ¶ 30. Meanwhile, DOS asserts that it redacted material under Exemption 7(E) that would have disclosed the types of information it considers when investigating passport fraud. *Id.* Ex. G ¶¶ 30–31.

Stevens first challenges ICE's withholdings under Exemption 7 on the grounds that it applied the exemption in "a categorical fashion based on the type of information it was redacting without connecting it [to] a specific incident" or explaining "that it relates to techniques still in use by ICE and/or State Department." [36] at 15. The Court disagrees with Stevens' characterization of ICE's *Vaughn* index. In at least one instance, ICE justifies a withholding under Exemption 7 because the withheld information "contains internal law enforcement planning relating to an *ongoing* criminal investigation," including "surveillance planning and techniques and prosecution strategy and deliberations." [31] Ex. A, Attach. N, Entry 4 (emphasis added). In any case, the Court concludes that ICE's method of disclosure was

reasonable under the circumstances. That ICE provided the same reason, across multiple documents, to justify withholding information under Exemption 7 does not suggest the withholding was invalid. It simply reflects that the withheld information implicated the same set of interests covered by Exemption 7. And other than quibbling over the "categorical" way in which the redactions were made, Stevens does not offer any reason why the information itself was improperly withheld pursuant to § 552(b)(7).

Second, Stevens challenges DOS's withholdings under Exemption 7 on the grounds that DOS is not a law enforcement agency. But § 552(b)(7) only requires that the withheld records be compiled "for law enforcement *purposes*." (emphasis added). Here, DOS withheld a form it used to track and report passport fraud. [31] Ex. G ¶ 30. It also redacted certain information it collected related to Alma Bowman's passport fraud investigation. *Id.* ¶ 31. These documents were clearly collected for "law enforcement purposes" under § 552(b)(7). That DOS may not be a traditional law enforcement agency does not warrant denying summary judgment on Exemption 7.

Third, Stevens challenges DOS's withholdings on the grounds that the agency failed to submit a *Vaughn* index describing the withholdings. But as defendants point out, there is no requirement that an agency submit a *Vaughn* index. *See Int'l Union of Elevator Constructors Loc. 2 v. U.S. Dep't of Lab.*, 747 F. Supp. 2d 976, 980 (N.D. Ill. 2010). Instead, an agency can satisfy its burden by including details about its redactions in an affidavit filed along with its motion for summary judgment. *See Stevens v. BBG*, 2021 U.S. Dist. LEXIS 60846 (N.D. Ill. Mar. 30, 2021) (a "sufficiently

detailed affidavit" can serve the same function as a *Vaughn* index). Here, DOS included information about its withholdings within the Weetman declaration. [31] Ex. G ¶¶ 30–31. Stevens does not contend that this information is insufficiently detailed, and this Court's review suggests the opposite. The declaration describes in detail what was withheld (information about how the agency investigates passport fraud) and why (because disclosure could help individuals circumvent the DOS's passport enforcement efforts). *Id.* The failure to submit a *Vaughn* index alone is not dispositive.

In sum, the Court finds that defendants properly withheld materials pursuant to FOIA Exemptions 3, 4, 5, 6, and 7.

### D. Segregation

Finally, Stevens argues that the agencies failed to meet their segregation obligations. FOIA requires that "[a]ny reasonably segregable portion of a record" be severed and disclosed after redacting the exempt portions of the record. *See* 5 U.S.C. § 552(b); *see also Env't Prot. Agency v. Mink*, 410 U.S. 73, 91 (1973) (agencies are required to segregate out and release any "purely factual material ... in a form that is severable without compromising the private remainder of the documents"). Here, Stevens broadly contends that defendants did not segregate non-exempt factual material from their withholdings.

Once again, Stevens has not identified any specific agency documents she believes were not reasonably segregated. And, without being directed toward a specific document or set of documents, the Court will not search through each

disclosed withholding on its own to substantiate Stevens' claim. *See Stevens v. U.S. Immigr. & Customs Nef's*, 432 F. Supp. 3d 752, 764 (N.D. Ill. 2020) (dismissing Stevens' segregation argument for failure to point the court toward specific emails).

What is more, even a cursory review of the *Vaughn* indices suggests that the agencies *did* segregate data where possible. For example, ICE's *Vaughn* index describes that the agency only partially redacted certain names, addresses, and telephone numbers from EARM Case Comments instead of withholding the comments altogether. [31] Ex. A, Attach. N, Entry 1. The same goes for the contract details withheld from the order for services and supplies discussed above. *Id.* at Entry 2. Likewise, EOIR's *Vaughn* index describes that the agency redacted certain fields but nonetheless produced the other parts of the spreadsheet responsive to Stevens' request. [31] Ex. D EOIR *Vaughn* index at 1–2. Stevens also maintains that all but one of the agency declarations fails to discuss segregation, *see* [36] at 15, but that contention is plainly incorrect. *See, e.g.*, [31] ¶ 96; [31] Ex. A ¶¶ 17, 18, 32–33; [31] Ex. C ¶¶ 44–47.

Based on the arguments presented, the Court finds the agencies properly met their § 552(b) obligation to segregate.

## CONCLUSION

For the foregoing reasons, the Court grants the agencies' motion for summary judgment as to each of the 14 challenged FOIA requests.

As specifically noted above, to the extent Stevens still contends she does not have access to certain USCIS documents and where USCIS has already agreed to

produce documents, the Court orders the parties to meet and agree on alternative methods of transmitting the responsive documents. *See supra* at 28–29.

ENTERED:  10/7/24

_____

Georgia N. Alexakis

United States District Court Judge